**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LQD BUSINESS FINANCE, LLC <br>                 Plaintiff, <br><br> vs. <br><br> AZIZUDDIN ROSE, an individual, <br> FUNDKITE LLC, a New York limited liability <br> company. <br><br>                 Defendants. | **VERIFIED COMPLAINT** <br><br> **PLAINTIFF DEMANDS A TRIAL** <br> **BY JURY** |

Plaintiff LQD Business Finance, LLC ("LQD" or "Plaintiff"), by and through its attorneys Zane D. Smith & Associates and Graff Silverstein LLP, brings this Complaint against Defendants Azizuddin "Dean" Rose, ("Rose") and Fundkite, LLC, ("Fundkite" and together with Rose, the "Defendants"), and alleges as follows:

## INTRODUCTION

1.     This matter arises from the Defendants' misappropriation of LQD's proprietary and confidential customer and potential customer data, documents and data files, and LQD systems, (collectively the "Trade Secrets"), for the purpose of profiting at LQD's expense.

2.     For approximately one year, Defendant Fundkite conspired with Defendant Rose, a former business development officer of LQD, to misappropriate and convert LQD's Trade Secrets. Fundkite paid Rose tens of thousands of dollars to misappropriate and convert LQD's Trade Secrets, and Rose, using his protected access to LQD's systems, did unlawfully misappropriate and convert LQD's Trade Secrets to the benefit of Defendants and to the detriment of LQD.

3.    Rose did not merely divert generic customer lists or loan leads that he independently developed, rather Rose unlawfully misappropriated and diverted proprietary data on existing LQD customers and prospective customers, which was developed and maintained by LQD's proprietary systems and included non-public contact, financial, operational, and performance data that was exclusively owned by LQD. The Trade Secrets are further protected by a confidentiality agreement between LQD and Rose.

4.    Defendants have used, and continue to use, the misappropriated Trade Secrets to divert LQD's business opportunities to the benefit of Defendants and to the detriment of LQD.

## JURISDICTION

5.    This Court has jurisdiction over Plaintiff's Defense of Trade Secrets Act claim pursuant to 28 U.S.C. § 1331

6.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the remainder of Plaintiff's claims because these claims closely relate to the Plaintiff's Defense of Trade Secrets Act claim, having arisen from a common nucleus of operative facts, such that all claims form part of the same case or controversy

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because (i) Fundkite does business in and has issued loans in Illinois, (ii) Rose is a resident of Illinois, (iii) Fundkite hired, retained or otherwise employed the services of Rose for the purpose of obtaining LQD trade secrets, confidential information, and proprietary data, as discussed herein, (iv) the use of the misappropriated trade secrets, proprietary data, and confidential information originated in Chicago, Illinois, and (v) substantial economic benefits have been conferred upon the Defendants because of the misappropriation, conversion, and other misuses, of LQD's trade secrets from

transactions within the State of Illinois which economic benefits would otherwise have been conferred upon LQD.

## PARTIES

8.    Plaintiff LQD Business Finance, LLC is a Delaware limited liability company, with its principal place of business in Chicago, Illinois. LQD is a commercial finance company that provides flexible financing to growing commercial enterprises. LQD employs an underwriting sophistication that permits it to execute a broader range of loans with varying requirements. In addition to traditional asset-based loans, LQD offers contract lending, purchase order financing, acquisition financing, cash flow lending, and over-advance lending, all custom tailored to enterprises specific financing needs. Thus, LQD provides one-comprehensive financing solution to businesses throughout the United States.

9.    Defendant Fundkite is a New York limited liability company and is a commercial finance company operating in the merchant cash advance business.

10.    Defendant Rose is a resident of Chicago, Illinois and a former business development officer for LQD.

## FACTS COMMON TO ALL COUNTS

**A.    LQD'S Trade Secrets, Proprietary Information, and Confidential Information**

11.    LQD provides a wide range of commercial lending services to businesses throughout the continental United States. LQD's revenues come exclusively from interest and fees earned as a result of customer relationships. The value of potential loan customers and ongoing lending relationships is, therefore, central to LQD's business and viability.

12.    LQD has developed, at significant cost, a proprietary list of customers, and potential customers through proprietary technology, marketing channels, and data mining systems. The

3

developed leads contain confidential contact information and performance data about customers and potential customers that is non-public and subject to strict confidentiality under LQD's policies.

13. In addition to proprietary customer leads, LQD develops confidential loan files in the evaluation of a loan, as well as ongoing financial and performance data with respect to loans LQD issues.

14. In addition to an initial loan, LQD customers often also refinance loans, and take out additional loans with LQD to support their growth. These ongoing customer relationships represent significant economic value to LQD in the form of interest and fee revenue.

15. As discussed *infra*, LQD maintains all customer, and potential customer, data on its proprietary platform LQD Central and in secure data storage systems, (together "LQDC"). LQDC is user restricted and subject to password protection and encryption.

16. LQD maintains strict confidentiality and data protection policies and treats all customer and loan data as secret. Employees are required to sign confidentiality agreements and acknowledge LQD's data integrity policies.

**B.     Plaintiff LQD's Protection of Confidential Information and Trade Secrets**

17.    LQD takes great care to protect its Trade Secrets. LQD's security measures include password protection, multi-factor authentication, and encryption, as well as requiring all employees and contractors to enter into confidentiality agreements.

18.    First, LQD provides access to confidential information only to those that need the information to perform their jobs. LQD Central has defined roles, and roles are only given access to specific data.

19.   Second, the Trade Secrets are protected by FINRA compliant data storage systems to which only authorized users can gain access via user ID and password protection.

20.   Third, the Trade Secrets are protected by workstation level unique user names and password. In other words, authorized staff members in the LQD office can only access the LQD computers through the use of unique usernames and passwords.

21.   Fourth, the Trade Secrets are protected by software-level registered user names and password. After signing into their computer, LQD employees must also sign on to LQDC. Again, usernames and passwords are unique to each user and only provided to authorized staff members.

22.   Finally, supervisors oversee the staff at all times during business hours, and the office is not accessible during non-office hours.

23.   In essence, LQD's Trade Secrets are protected by several layers of password and other protections and can only be accessed by authorized individuals for the sole purpose of conducting LQD business.

**C.   Defendant's Access to Plaintiff Proprietary and Confidential Information and Trade Secrets**

24.   Rose worked as a business development officer at LQD from August of 2015 to June 19, 2019.

25.   As a business development officer, Rose was given access to LQDC, and could access LQD's Trade Secrets.

26.   On August 17, 2015, Rose signed an independent contractor employment agreement with LQD, (the "IC Agreement"), under which Rose was hired to work as a business development officer for LQD. *See Exhibit A.*

27.    Under Section 4 of the IC Agreement, Rose is obligated to "treat the Confidential Information as confidential and [Rose] will not disclose it to any third-party or use it for any purpose but to fulfill [Rose's] obligations" under the IC Agreement. *Id.* "Confidential Information" includes, without limitation, "customer identifying information, potential and intended customers...". *Id.* The IC Agreement provides that the confidentiality provision "shall survive the termination of [the IC Agreement] and be in force in perpetuity." *Id.*

28.    Under Section 5 of the IC Agreement, Rose agreed not to "accept work, enter into contracts, or accept obligations inconsistent with, competitive to, or incompatible with [Rose's] obligations or the scope of work to be performed for [LQD]...". *Id.*


**D.    Defendants' Misappropriation and Conversion**

29.    In his position with LQD, Rose had access to LQD's trade secrets, proprietary documents and confidential information.

30.    Over the course of at least one year, while still working for LQD, Rose engaged in a course of unlawful conduct to misappropriate LQD's trade secrets, proprietary documents and confidential information in order to bring such material to use in the marketplace without consent from LQD. Rose's actions were in contravention of the IC Agreement, his duty of loyalty, and applicable law, and caused significant harm to LQD.

31.    As evidenced by numerous emails, commencing on or about May of 2018, and for more than one year thereafter, Rose knowingly breached the IC Agreement and started misappropriating Trade Secrets from LQD's proprietary system, LQDC, to Fundkite, without permission or consent of LQD, and without first attempting to execute a transaction between such customers, or potential customers, and LQD. *See Exhibit H.*

32.   LQD is not aware of the full extent of Defendants' misappropriation of LQD's Trade Secrets, but on information and belief, such misappropriation was extensive.

33.   Upon information and belief, Rose and Fundkite agreed to perpetrate a scheme whereby Fundkite would pay Rose tens of thousands of dollars, and Rose would abuse his substantial access to LQD's proprietary systems to misappropriate LQD's Trade Secrets for the benefit of the Defendants and to the detriment of LQD.

34.   Using his LQD email, LQD's proprietary management software LQDC, and LQD's file storage systems, Rose sent LQD's Trade Secrets, including without limitation, confidential loan files and loan applications intended for LQD, to Fundkite for his own benefit to the detriment of LQD.

35.   Particularly, Rose accessed and converted, with Fundkite, several LQD opportunities using Trade Secrets, so as to unlawfully profit. Such access and taking had been unauthorized and expressly forbidden for the purpose for which Rose and Fundkite converted the information.

36.   Fundkite knew or should have known that Rose was working as a business development officer for LQD and that Rose had a duty to LQD because Rose used his LQD email, which listed his position and credentials as an agent of LQD. *See Exhibit B*. Indeed, Fundkite explicitly acknowledged that Rose was an agent for LQD in an email dated June 8, 2018, and assigned deals to "LQD Business Finance" in their internal systems. *See Exhibit C.*

37.   Fundkite knew or should have known that Rose's possession of the customer, or potential customer, information LQD owned had been illicit and unauthorized by LQD.

38.   Indeed, despite having knowledge that Rose was working for LQD, Fundkite knowingly established a contract with Rose that directed all payments to Rose's personal bank account to the explicit exclusion of LQD. *See Exhibit D.*

39.    Today's Growth Consultant, Inc., ("TGC"), was an LQD customer that was assigned to Rose as account manager.

40.    On or about June 4, 2019, TGC contacted Rose requesting an additional loan. Rather than apprise LQD of TGC's request, Rose misappropriated the TGC loan request to Fundkite. *See Exhibit E.*

41.    Fundkite, acting in concert with Rose, provided TGC with $1.3 million of financing, on which Rose earned $78,000.00 in commissions to the detriment of LQD. *See Exhibit F.*

42.    On information and belief, between May of 2018 and June of 2019, Rose misappropriated and diverted Trade Secrets regarding numerous other customers and potential customers to Fundkite, and Fundkite accepted and used the misappropriated Trade Secrets to the benefit of the Defendants.

43.    Because of Defendants' unlawful actions and misappropriation, LQD suffered potentially millions of dollars in lost revenue.

## COUNT ONE
## ALL DEFENDANTS
### (Federal Misappropriation of Trade Secrets)
### (18 U.S.C. § 1839)

44.    Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

45.    The actions of Defendants, as set forth herein, constitute misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1839.

46.    Plaintiff possessed confidential information, including but not limited to, customer lists, and potential customer lists, as well as proprietary and confidential financial and operational information on such customers and potential customers that constituted trade secrets.

47. Such information is used in connection with LQD's products and services which are offered across the country and is central to LQD's business viability.

48. Plaintiff took reasonable measures to maintain the secrecy and confidentiality of the Trade Secrets by instituting technology systems and policies to safeguard against conversion, unauthorized access, use, duplication, or reverse engineering. Such information cannot be publicly acquired or duplicated because of the limited number of individuals who can access the information, and the contractual limitations imposed on such individuals.

49. The trade secrets were not generic lists or compilations of publicly available data, but rather proprietary data developed by LQD's data mining systems and proprietary channels. As such, this information is extremely valuable to LQD, critical to the operation of LQD's business, and, if available to others, would enable them to compete with LQD to LQD's detriment.

50. Defendant Rose knowingly and improperly obtained and disclosed the Trade Secrets in violation of the IC Agreement, his duties to LQD, and under the applicable laws, rules and regulations.

51. Defendant Fundkite knew or should have known that it improperly acquired (and continues to be aware that it acquired) LQD's Trade Secrets from Rose. Fundkite knowingly misappropriated LQD's Trade Secrets to their own benefit and at the expense of LQD.

52. Defendant Fundkite used improper means to acquire knowledge of LQD's Trade Secrets. Fundkite knew or had reason to know, at the time the Trade Secrets were used, that the Trade Secrets were derived from someone who acquired the Trade Secrets by improper means, acquired subject to a duty to maintain secrecy or limit use, or derive from a person who owed such a duty.

53. Defendants' conduct constitutes knowing, willful, and malicious misappropriation.

54.   As a direct and proximate result of Defendants' wrongful conduct, LQD has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Defendants will cause further irreparable injury to LQD.

55.   LQD is entitled to injunctive relief enjoining Defendants, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further use of LQD's proprietary and confidential information and trade secrets.

56.   As a result of Defendants' actions, Plaintiff has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs and enhanced damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.    Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.    Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.    Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.    Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.    Awarding costs and counsel fees incurred in this action as required;

F.    Awarding treble damages as allowed by law;

G.    Ordering expedited discovery; and

H.    Granting such other and further relief as this Court deems equitable and just.

## COUNT TWO
## ALL DEFENDANTS
### (Illinois Trade Secrets Act 765 ILCS 1065)

57.    Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

58.    Without LQD's consent and in violation of the Illinios Trade Secret Act, 765 Ill. Comp. Stat 1065/1, et. seq., Defendants have misappropriated LQD's Trade Secrets, although Rose had been obligated to maintain the secrecy of this information.

59.    As part of his position at LQD, Rose was exposed to, had knowledge concerning and compiled information about LQD and LQD's customers from which LQD derived significant economic and competitive advantages.  These Trade Secrets have independent economic value.

60.    By virtue of Rose's position, Rose acquired access to LQD's Trade Secrets under circumstances giving rise to a duty to maintain the secrecy of such information.

61.    By virtue of his position, and his contracts, Rose owed a duty to refrain from using the Trade Secrets in a manner adverse to the interests of LQD.

62.    In spite of this duty, Rose has misappropriated and/or used the Trade Secrets including, but not limited to, customer lists, and proprietary customer information, and further misappropriated such Trade Secrets by sending such information to Fundkite, as well as retaining and using such Trade Secrets.

63.    Such misappropriation by Rose occurred during the time that he had been employed by LQD, and done, upon information and belief, for the express benefit of Fundkite and Rose.

64. Such misappropriation of the Trade Secrets was done without LQD's consent, or permission.

65. Fundkite knew, or should have known, that Rose's retention by Fundkite would induce Rose to rely on LQD Trade Secrets, in violation of the Illinois Trade Secrets Act (the "Act") pursuant to the inevitable disclosure doctrine.

66. In violation of the Act, Rose has disclosed and/or used (for the benefit of Fundkite and himself), LQD's Trade Secrets in order to contact, broker, solicit, and/or submit financing proposals for LQD customers, and for customers he worked with or had knowledge of while at LQD specifically.

67. By soliciting LQD's customers and using LQD's Trade Secrets for the economic benefit of himself and Fundkite, Rose used the Trade Secrets in the manner adverse to the best interests of LQD, all in violation of the Act.

68. Rose willfully and maliciously misappropriated LQD's Trade Secrets in violation of the Act.

69. As a direct, proximate, and intended and/or inevitable result of the actions of the Defendants, LQD will suffer irreparable harm if Defendants are not enjoined from continued use of LQD's trade secrets.

70. Because of the irreparable nature of the harm to LQD, the most adequate remedy is a Court Order (i) enjoining Defendants from further soliciting, interfering, or entering into any contracts with any of LQD's customers for a period of two years, and (ii) enjoining from using any of LQD's Trade Secrets for any reason.

71. As a direct, proximate, and intended and/or inevitable result of Defendants' ongoing actions in violation of the Act, LQD has suffered lost future and past profits, lost corporate

opportunities, and past, present, and future injury to its goodwill and has been damaged in an amount to be determined at trial.

72.     Thus, LQD is also entitled to all other damages or remedies available to it, including but not limited to, exemplary damages in twice the amount of the award and attorney's fees to the full extent of the law as a result of Defendants' knowing, willful, malicious and intentional conduct.

73.     LQD is also entitled to damages reflecting the amount that Defendants have been unjustly enriched by the misappropriation of LQD's confidential information and Trade Secrets.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.      Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.      Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.      Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.      Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.      Awarding costs and counsel fees incurred in this action as required;

F.      Awarding treble damages as allowed by law;

G.      Ordering expedited discovery; and

H.    Granting such other and further relief as this Court deems equitable and just.

## COUNT THREE
## ALL DEFENDANTS
### (Unfair Competition)

74.    Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

75.    The Defendants' conduct, as set forth herein, constitutes unfair competition.

76.    Defendants misappropriated LQD's Trade Secrets, in whole or in part, by obtaining access to them through fraud or deception and/or abuse of a confidential relationship.

77.    Defendants' use of LQD's misappropriated Trade Secrets confused the marketplace of potential borrowers for LQD's services, and products, as well as the public at large.

78.    Such confusion is particularly troublesome because the cash advance industry in New York operates in a manner that LQD does not countenance, and, upon information and belief, is at odds with LQD's business objectives: i.e., to facilitate successful business operations of its customers.

79.    As a result of Defendants' actions, LQD has suffered direct and consequential damages, including in the of actual, economic harm to their businesses, and are entitled to recover compensatory damages, including opportunity costs and punitive damages in an amount to be proven at trial.

80.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Defendants will cause further irreparable injury to LQD.

81. LQD is entitled to injunctive relief enjoining Defendants, their agents and employees, and all persons acting in concert or participation with Defendants, from engaging in any further use of LQD's proprietary and confidential information and trade secrets.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A. Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B. Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C. Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D. Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E. Awarding costs and counsel fees incurred in this action as required;

F. Awarding treble damages as allowed by law;

G. Ordering expedited discovery; and

H. Granting such other and further relief as this Court deems equitable and just.

### COUNT FOUR
### ALL DEFENDANTS
#### (Tortious Interference with Prospective Business Relations)

82. Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein.

83. Plaintiff has a reasonable expectation that it would have consummated a substantial number of transactions with existing and potential customers that were misappropriated by the Defendants. Thus, Plaintiff reasonably expected to obtain economic advantages from its relationships with its customers and potential customers but for Defendants' actions.

84. Upon information and belief, a substantial number of customers and potential customers who had previously been contacted by Plaintiff, or imminently would have been contacted by Plaintiff, have been contacted and diverted by the Defendants.

85. The Defendants intentionally, improperly, with malice and without lawful justification or excuse, interfered with, and continue to interfere with, Plaintiff's existing and prospective business relationships, including, without limitation, by directly and/or indirectly soliciting them and/or diverting them to Fundkite.

86. As a result, Plaintiff has suffered and will continue to suffer injury and damages.

87. As a result of Defendants' actions, Plaintiff has suffered and will continue to suffer injury and damages, including opportunity costs and punitive damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.   Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.   Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.   Directing Defendants to allow Plaintiff, or its agent, access to

Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.  Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.  Awarding costs and counsel fees incurred in this action as required;

F.  Awarding treble damages as allowed by law;

G.  Ordering expedited discovery; and

H.  Granting such other and further relief as this Court deems equitable and just.

## COUNT FIVE
## ALL DEFENDANTS
### (Unjust Enrichment)

88.  Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein.

89.  Through their unauthorized use, disclosure, and retention of the Plaintiff's Trade Secrets, Defendants received significant benefits at the expense of Plaintiff.

90.  Because Defendants did not bargain for or otherwise compensate Plaintiff for the Trade Secrets, which were developed by Plaintiff at its expense, Defendants have been unjustly enriched. It would be unjust for Defendants to retain the benefit of the Trade Secrets without paying to Plaintiff the value of the benefit conferred.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.  Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B. Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C. Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D. Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E. Awarding costs and counsel fees incurred in this action as required;

F. Awarding treble damages as allowed by law;

G. Ordering expedited discovery; and

H. Granting such other and further relief as this Court deems equitable and just.

## COUNT SIX
## ALL DEFENDANTS
### (Injunctive Relief)

91. Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein.

92. Plaintiff seeks a preliminary and permanent injunction barring Defendants from using and disclosing Plaintiff's Trade Secrets to any third-party.

93. Defendants' unauthorized use and disclosure of Plaintiff's Trade Secrets, among other things, constitutes misappropriation of trade secrets under the Defense of Trade Secrets Act.

94. Defendants' activities threaten Plaintiff with immediate and irreparable harm in that Defendants' continued use and disclosure of trade secrets will diminish the value of this

information and Plaintiff's investment therein, and cause Plaintiff to suffer a loss of business. For Plaintiff to be made whole, Plaintiff must regain the exclusive use of its trade secrets, proprietary documents and confidential information, which form the basis of its competitive edge in the marketplace.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A. Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B. Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C. Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D. Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E. Awarding costs and counsel fees incurred in this action as required;

F. Awarding treble damages as allowed by law;

G. Ordering expedited discovery; and

H. Granting such other and further relief as this Court deems equitable and just.

**COUNT SEVEN**
**ALL DEFENDANTS**
**(Conversion)**

95.   Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein.

LQD was the owner of the Trade Secrets and did not authorize either of the Defendants to use or otherwise distribute the trade secrets.

96.   Defendants insidiously and unlawfully misappropriated and used the Trade Secrets in a manner that was inconsistent with LQD's interests and in a manner that benefited Defendants to the detriment of LQD.

97.   As a result of Defendants' actions, LQD has suffered material harm.

**WHEREFORE,** Plaintiff demands judgment against the Defendants as follows:

A.   Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.   Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.   Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.   Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.   Awarding costs and counsel fees incurred in this action as required;

F.   Awarding treble damages as allowed by law;

G.   Ordering expedited discovery; and

H.    Granting such other and further relief as this Court deems equitable and just.

## COUNT EIGHT
## DEFENDANT ROSE
### (Breach of Fiduciary Duty and Duty of Loyalty)

98.    Plaintiff repeats and re-alleges each and every factual allegation set forth in this Complaint as if set forth herein.

99.    During his tenure with Plaintiff, Defendant Rose acquired knowledge of Plaintiff's Trade Secrets, which Plaintiff communicated in confidence to Rose for sole use in his position with LQD.

100.    Rose, under the IC Agreement and by virtue of his position with LQD, owed Plaintiff a duty of loyalty and was obligated to act with the utmost good faith, and in the best interest of Plaintiff.

101.    Plaintiff was entitled to place its trust and confidence in Rose, and Plaintiff did rely on Rose faithfully performing his obligations consistently with his duties.

102.    Rose knowingly and willingly breached his duty of loyalty to Plaintiff by misappropriating Plaintiff's Trade Secrets and engaging in acts that undermined Plaintiff's business operations.

103.    Rose acted in a manner inconsistent with agency and trust by conspiring with Fundkite to misappropriate Plaintiff's Trade Secrets to the injury of Plaintiff and for the benefit of Defendants, and by acting against Plaintiff's interests while still in a contractual relationship with Plaintiff.

104.    As a direct and proximate cause of Rose's breach of his duties, Plaintiff has been and is being harmed, and faces risk of irreparable harm.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.    Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.    Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.    Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.    Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.    Awarding costs and counsel fees incurred in this action as required;

F.    Awarding treble damages as allowed by law;

G.    Ordering expedited discovery; and

H.    Granting such other and further relief as this Court deems equitable and just.

## COUNT NINE
## ALL DEFENDANTS
### (Violation of the Federal Computer Fraud and Abuse Act 18 U.S.C. § 1030)

105.  Plaintiff hereby restates and re-alleges each of the allegations contained in the foregoing paragraphs as if set forth fully herein.

106.  Defendants intentionally accessed a computer;

107.  Defendants lacked authority to access the computer or exceeded granted authority to access the computer;

108.  Defendants obtained data from the computer; and

109. Defendants' conduct caused a loss of $5,000 or more during a one-year span.

110. Under the Federal Computer Fraud and Abuse Act, Plaintiff is entitled to an award of all reasonable costs incurred in responding to Defendants' offenses, as well as compensatory and punitive damages and the cost of the suit, including attorney's fees.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.   Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.   Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.   Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.   Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.   Awarding costs and counsel fees incurred in this action as required;

F.   Awarding treble damages as allowed by law;

G.   Ordering expedited discovery; and

H.   Granting such other and further relief as this Court deems equitable and just.

**COUNT TEN**
**DEFENDANT ROSE**
**(Breach of Contract)**

111. Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein.

112. Defendant Rose, as discussed *supra*, had an enforceable agreement with LQD.

113. Defendant Rose, as discussed *supra*, breached his contract with LQD.

114. As a result of such breach of contract, Defendant Rose has caused LQD an amount of damages to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.    Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.    Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.    Directing Defendants to allow Plaintiff, or its agent, access to Defendant' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendant' cost;

D.    Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.    Awarding costs and reasonable counsel fees incurred in this action as required;

F.    Awarding treble damages as allowed by law;

G.    Ordering expedited discovery; and

H.    Granting such other and further relief as this Court deems equitable and just.

**COUNT ELEVEN**
**DEFENDANT FUNDKITE**

**(Aiding and Abetting Breach of Fiduciary Duty)**

115.    Plaintiff repeats and realleges the allegations contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

116.    Defendant Fundkite had actual knowledge of the violations of fiduciary duty discussed *supra*.

117.    Notwithstanding this knowledge, Fundkite substantially assisted in the breach of fiduciary, as discussed, in detail within.

118.    As a direct and proximate result of Fundkite's conduct, Plaintiff was damaged at an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Fundkite as follows:

A.    Enjoining and restraining Fundkite and its agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.    Requiring that Fundkite return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.    Directing Fundkite to allow Plaintiff, or its agent, access to Fundkite's business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Fundkite's cost;

D.    Awarding compensatory, consequential and punitive damages arising out of the Fundkite's willful, wanton and malicious conduct;

E.    Awarding costs and counsel fees incurred in this action as required;

F.    Awarding treble damages as allowed by law;

G.    Ordering expedited discovery; and

H.    Granting such other and further relief as this Court deems equitable and just.

## COUNT TWELVE
## DEFENDANT FUNDKITE
### (Aiding and Abetting Conversion)

119.    Plaintiff repeats and realleges the allegations contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

120.    Defendant Fundkite had actual knowledge of the conversion of Plaintiff's trade secrets, confidential information, and proprietary data.

121.    Notwithstanding this knowledge, Defendant Fundkite substantially assisted in the conversion, as discussed, in detail within.

122.    As a direct and proximate result of Defendant Fundkite's conduct, Plaintiff has been damaged at an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Fundkite as follows:

A.    Enjoining and restraining Fundkite and its agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.    Requiring that Fundkite return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.    Directing Defendants to allow Plaintiff, or its agent, access to Fundkite's business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendant' cost;

D.    Awarding compensatory, consequential and punitive damages arising out of the Fundkite's willful, wanton and malicious conduct;

E.      Awarding costs and counsel fees incurred in this action as required;

F.      Awarding treble damages as allowed by law;

G.      Ordering expedited discovery; and

H.      Granting such other and further relief as this Court deems equitable and just.

## COUNT THIRTEEN
## DEFENDANT ROSE
### (Breach of the Covenant of Good Faith and Fair Dealing)

123.    Plaintiff repeats and realleges all the factual allegations of the Complaint as if set forth at length herein.

124.    Plaintiff entered into contracts with Rose.

125.    The parties to the contract entered into a covenant of good faith and fair dealing.

126.    By his acts and omissions, Rose has breached the covenant of good faith and fair dealing.

127.    Plaintiff has been harmed by such breach in an amount to be proven at trial.

**WHEREFORE,** Plaintiff demands judgment against Rose as follows:

A.      Enjoining and restraining Rose and his agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.      Requiring that Rose return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.      Directing Rose to allow Plaintiff, or his agent, access to Defendant' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Rose's cost;

D.      Awarding compensatory, consequential and punitive damages

arising out of the Defendants' willful, wanton and malicious conduct;

E.  Awarding costs and counsel fees incurred in this action as required;

F.  Awarding treble damages as allowed by law;

G.  Ordering expedited discovery; and

H.  Granting such other and further relief as this Court deems equitable and just.

## VERIFICATION

I, GEORGE SOURI, declare as follows:

1.  I am the managing member of LQD Business Finance, LLC.

2.  I have personal knowledge of each and every fact alleged in this Complaint and stated herein in this Verification, and could competently testify thereto if called as a witness, except for the facts alleged upon information and belief.

3.  I declare, under penalty of perjury under the laws of the United States of America that the foregoing factual allegations are true and correct, except for the allegations made upon information and belief.

Executed this 1st day of July 2019 at Chicago, Illinois.

George Souri, CEO
LQD Business Finance, LLC

## DEMAND FOR JURY DEMAND

Pursuant to the Rule 38 of the Federal Rules of Civil Procedure, Plaintiff LQD hereby demands trial by jury on all issues so triable.

Dated: July 1, 2019

LQD Business Finance, LLC, *Plaintiff*

/s/ Zane D. Smith
Zane D. Smith, one of its Attorneys
Zane D. Smith – ARDC #6184814
ZANE D. SMITH & ASSOCIATES, LTD.
221 North LaSalle Street – Suite 1320
Chicago, Illinois 60601
(312) 245-0031
zane@zanesmith.com

/s/ Boris G. Samovalov
Boris G. Samovalov, one of its Attorneys
Boris G. Samovalov – ARDC #6305036
ZANE D. SMITH & ASSOCIATES, LTD.
221 N. LaSalle Street – Suite 1320
Chicago, Illinois 60601
(312) 245-0031
boris@zanesmith.com

## INDEPENDENT CONTRACTOR AGREEMENT

This independent contractor agreement is between LQD Business Finance, a Delaware Corporation, (the "**Company**"), and Azizuddin Rose _____, (the "**Contractor**").

1.    **ENGAGEMENT.** The Company retains the Contractor to provide, and the Contractor shall provide business development services to the Company as a Business Finance Consultant, which shall include, without limitation, contacting prospective customers on behalf of the Company and selling the Company's financial products to prospective customers, (the "**Services**").

2.    **TERM.** This agreement will become effective as of August 17, 2015, and will terminate on November 15, 2015, unless it is terminated earlier in accordance with subsection 2(b) of this agreement, (the "**Term**"). This agreement may be terminated: (i) by the Company at any time, with or without cause, and without notice, or (ii) by the Contractor upon one week's written notice to the Company, with or without cause;

3.    **COMPENSATION.** The Company shall pay the Contractor as follows:

    (a) **Training Period.** During the Training Period, which shall begin on August 17, 2016 and end on the earlier of (i) September 4, 2016, and (ii) such date as the Company deems appropriate, the Company shall pay the Contractor a salary of $800.00 per week.

    (b) **Work Compensation.** After the completion of the Training Period, the Company shall pay the Contractor as follows:

      i.   For each call made and connected, the Company shall pay the Contractor $ .50;

      ii.   For each Application completed, the Company shall pay the Contractor $60.00;

      iii. For each set of loan documents completed, the Company shall pay the Contractor $125.00;

      iv. In addition to the foregoing compensation, the Company shall pay the Contractor a Commission as follows:

| Loan APR % | Commission Rate |
|---|---|
| 18-21.99 | 1.50% |
| 22-25.99 | 2.00% |
| 26-29.99 | 2.25% |
| 30-33.99 | 2.50% |
| 34-37.99 | 3.00% |
| 38 + | 3.50% |

    **(c) No Other Compensation**. The compensation set out above will be the Contractor's sole compensation under this agreement.

    **(d) Expenses**. The Company shall reimburse the Contractor for any ordinary and necessary expenses incurred on behalf of the Company, provided that (i) the Contractor shall submit a written expense report, including all receipts to the Company, and (ii) the Company approves the expenses enumerated on the Contractor's expense report.

    **(e) Taxes**. The Contractor is solely responsible for the payment of all income, social security, employment-related, or other taxes incurred as a result of the performance of the Services by the Contractor under this agreement, and for all obligations, reports, and timely notifications relating to those taxes. The Company has no obligation to pay or withhold any sums for those taxes.

    **(f) Other Benefits**. The Contractor has no claim against the Company under this agreement or otherwise for vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability benefits, unemployment insurance benefits, or employee benefits of any kind.

**4.**     **CONFIDENTIALITY.** During the Term, the Contractor may have access to or receive certain information of or about the Company that the Company designates as confidential or that, under the circumstances surrounding disclosure, ought to be treated as confidential by the Contractor ("**Confidential Information**"). Confidential Information includes information relating to the Company or its current or proposed business, financial statements, budgets and projections, customer identifying information, potential and intended customers, employers, products, computer programs, specifications, manuals, software, analyses, strategies, marketing plans, business plans, and other confidential information, provided orally, in writing, by drawings, or by any other media. The Contractor will treat the Confidential Information as confidential and will not disclose it to any third party or use it for any purpose but to fulfill

[his][her][its] obligations in this agreement. In addition, the Contractor shall use due care and diligence to prevent the unauthorized use or disclosure of such information. This Section 4 shall survive the termination of this Agreement and be in force in perpetuity.

    (a) **Exceptions.** The obligations and restrictions in this Section 6 do not apply to that part of the Confidential Information the Contractor demonstrates:

        i.   was or becomes generally publically available other than as a result of a disclosure by the Contractor in violation of this agreement;

        ii.  was or becomes available to the Contractor on a nonconfidential basis before its disclosure to the Contractor by the Company, but only if: (i) the source of such information is not bound by a confidentiality agreement with the Company or is not otherwise prohibited from transmitting the information to the Contractor by a contractual, legal, fiduciary, or other obligation; and (ii) the Contractor provides the Company with written notice of [his][her][its] prior possession either (i) before the effective date of this agreement or (ii) if the Contractor later becomes aware (through disclosure to the Contractor) of any aspect of the Confidential Information as to which the Contractor had prior possession, promptly on the Contractor so becoming aware;

        iii. is requested or legally compelled (by oral questions, interrogatories, requests for information or documents, subpoena, civil or criminal investigative demand, or similar processes), or is required by a regulatory body, to be disclosed. However, the Contractor shall: (i) provide the Company with prompt notice of these requests or requirements before making a disclosure so that the Company may seek an appropriate protective order or other appropriate remedy; and (ii) provide reasonable assistance to the Company in obtaining any protective order.

    (b) **Remedy**. Money damages may not be a sufficient remedy for any breach of this section by the Contractor and, in addition to all other remedies, the Company may seek (and may be entitled to) as a result of such breach, specific performance and injunctive or other equitable relief as a remedy.

**5.**     **NON-COMPETE.**   During the Term, the Contractor is free to engage in other independent contracting activities, except that the Contractor may not accept work, enter into contracts, or accept obligations inconsistent with, competitive to, or incompatible with the Contractor's obligations or the scope of work to be performed for the Company under this agreement.

6. **CHOICE OF LAW.** The laws of the state of Illinois govern this agreement (without giving effect to its conflicts of law principles).

7. **CHOICE OF FORUM.** Both parties consent to the personal jurisdiction of the state and federal courts in Cook County, Illinois.

8. **AMENDMENTS.** No amendment to this agreement will be effective unless it is in writing and signed by a party or its authorized representative.

9. **SEVERABILITY.** If any one or more of the provisions contained in this agreement is, for any reason, held to be invalid, illegal, or unenforceable in any respect, that invalidity, illegality, or unenforceability will not affect any other provisions of this agreement, but this agreement will be construed as if those invalid, illegal, or unenforceable provisions had never been contained in it, unless the deletion of those provisions would result in such a material change so as to cause completion of the transactions contemplated by this agreement to be unreasonable.

10. **WAIVER.** No waiver of a breach, failure of any condition, or any right or remedy contained in or granted by the provisions of this agreement will be effective unless it is in writing and signed by the party waiving the breach, failure, right, or remedy. No waiver of any breach, failure, right, or remedy will be deemed a waiver of any other breach, failure, right, or remedy, whether or not similar, and no waiver will constitute a continuing waiver, unless the writing so specifies.

11. **ENTIRE AGREEMENT.** This agreement constitutes the final agreement of the parties. It is the complete and exclusive expression of the parties' agreement about the subject matter of this agreement. All prior and contemporaneous communications, negotiations, and agreements between the parties relating to the subject matter of this agreement are expressly merged into and superseded by this agreement. The provisions of this agreement may not be explained, supplemented, or qualified by evidence of trade usage or a prior course of dealings. Neither party was induced to enter this agreement by, and neither party is relying on, any statement, representation, warranty, or agreement of the other party except those set forth expressly in this agreement. Except as set forth expressly in this agreement, there are no conditions precedent to this agreement's effectiveness.

12. **NECESSARY ACTS; FURTHER ASSURANCES.** Each party shall use all reasonable efforts to take, or cause to be taken, all actions necessary or desirable to consummate and make effective the transactions this agreement contemplates or to evidence or carry out the intent and purposes of this agreement.

**Contractor**

Signed: _Azizuddin Rose_

Name: _Azizuddin Rose_

Date: _August 17, 2015_

**LQD Business Finance, LLC**

Signed: _____

George Souri, not individually, but solely on
behalf of LQD Business Finance, LLC

Date: _8/17/2015_

# EXHIBIT B

| | |
|---|---|
| **From:** | Dean Rose |
| **Sent:** | Monday, April 1, 2019 4:31 PM |
| **To:** | Anna Andryeyeva |
| **Subject:** | Re: Funding Offer for BUFFALO BIODIESEL INC - Submission: 70044642 |
| **Attachments:** | 2019 03 21 Buffalo Biodiesel Inc Debt Schedule.xlsx |

I will request the exact balances as of today. In the meantime, I have attached their debt schedule, which is as of 3.21.19

Dean Rose | Business Finance Consultant
**LQD Business Finance**
Structured, Transparent, and Affordable Business Financing
| d. (312) 444-0557 | o. (855) 402-2077 | f. (855) 491-0797
| a. 329 West 18th Street, Suite 601, Chicago, IL 60616
| w. lqdfinance.com

The information contained in this transmission is intended only for the party to which it is addressed and may contain sensitive information or privileged material. If you are not the intended recipient of this information, please do not review, retransmit, disclose, disseminate, use, or take any action in reliance upon this information, and contact the sender and destroy all digital and printed copies. The information contained herein is not intended to provide investment, legal, or tax advice, nor a basis for any investment recommendation by LQD Business Finance or any of its affiliates (LQD). LQD assumes no liability for any reliance herein or for losses incurred as a result of investment actions based on materials contained herein.

**From:** Anna Andryeyeva <anna.a@fundkite.com>
**Sent:** Monday, April 1, 2019 3:57 PM
**To:** Dean Rose
**Subject:** RE: Funding Offer for BUFFALO BIODIESEL INC - Submission: 70044642

Can you give us the exact balances for mulligan and pay pal please

**Anna Andreyeva**
**Business Development**
**FundKite**
Iso Boarding Link : https://fundkite.com/iso2

Download Submission Guidelines Here



**Wall Street Plaza**
**88 Pine Street, 17th floor, New York, NY 10005**
Direct: **929-999-5400**
Cell: **718-902-9127**
Office: **212-952-0001 Ext 1004**
Web: **www.FundKite.com**

 

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, viewing, altering, or disclosing the contents of this message. FundKite accepts no responsibility for loss or damage arising from the use of the information contained by this email including damage from computer viruses.

**From:** Dean Rose <deanrose@lqdfinance.com>
**Sent:** Monday, April 1, 2019 3:31 PM
**To:** Anna Andryeyeva <anna.a@fundkite.com>
**Subject:** Re: Funding Offer for BUFFALO BIODIESEL INC - Submission: 70044642

Okay thanks. And CONGRATS on the new promotion.

Dean Rose | Business Finance Consultant
**LQD Business Finance**
Structured, Transparent, and Affordable Business Financing
| d. (312) 444-0557 | o. (855) 402-2077 | f. (855) 491-0797
| a. 329 West 18th Street, Suite 601, Chicago, IL 60616
| w. lqdfinance.com

The information contained in this transmission is intended only for the party to which it is addressed and may contain sensitive information or privileged material. If you are not the intended recipient of this information, please do not review, retransmit, disclose, disseminate, use, or take any action in reliance upon this information, and contact the sender and destroy all digital and printed copies. The information contained herein is not intended to provide investment, legal, or tax advice, nor a basis for any investment recommendation by LQD Business Finance or any of its affiliates (LQD). LQD assumes no liability for any reliance herein or for losses incurred as a result of investment actions based on materials contained herein.

**From:** Anna Andryeyeva <anna.a@fundkite.com>
**Sent:** Monday, April 1, 2019 2:18 PM
**To:** Dean Rose
**Subject:** RE: Funding Offer for BUFFALO BIODIESEL INC - Submission: 70044642

Im trying to reprice for either a consolidation or more money.

**Anna Andreyeva**
**Business Development**
**FundKite**
Iso Boarding Link : https://fundkite.com/iso2

Download Submission Guidelines Here



**Wall Street Plaza**
**88 Pine Street, 17th floor, New York, NY 10005**
Direct: **929-999-5400**
Cell: **718-902-9127**
Office: **212-952-0001 Ext 1004**
Web: **www.FundKite.com**



DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On Fundkite accepts no responsibility for loss or damage arising from the use of the information transferred by this email including damage from computer viruses.

**From:** Dean Rose <deanrose@lqdfinance.com>
**Sent:** Monday, April 1, 2019 2:37 PM
**To:** Anna Andryeyeva <anna.a@fundkite.com>
**Subject:** Re: Funding Offer for BUFFALO BIODIESEL INC - Submission: 70044642

Whats the most you think you guys could do?

Dean Rose | Business Finance Consultant
**LQD Business Finance**
Structured, Transparent, and Affordable Business Financing
| d. (312) 444-0557 | o. (855) 402-2077 | f. (855) 491-0797
| a. 329 West 18th Street, Suite 601, Chicago, IL 60616
| w. lqdfinance.com

The information contained in this transmission is intended only for the party to which it is addressed and may contain sensitive information or privileged material. If you are not the intended recipient of this information, please do not review, retransmit, disclose, disseminate, use, or take any action in reliance upon this information, and contact the sender and destroy all digital and printed copies. The information contained herein is not intended to provide investment, legal, or tax advice, nor a basis for any investment recommendation by LQD Business Finance or any of its affiliates (LQD). LQD assumes no liability for any reliance herein or for losses incurred as a result of investment actions based on materials contained herein.

**From:** Anna Andryeyeva <anna.a@fundkite.com>
**Sent:** Monday, April 1, 2019 1:29 PM
**To:** Dean Rose
**Subject:** RE: Funding Offer for BUFFALO BIODIESEL INC - Submission: 70044642

Wont be able to beat $500.

**Anna Andreyeva**
**Business Development**
**FundKite**
Iso Boarding Link : https://fundkite.com/iso2

Download Submission Guidelines Here



**Wall Street Plaza**
**88 Pine Street, 17th floor, New York, NY 10005**
Direct: **929-999-5400**
Cell: **718-902-9127**
Office: **212-952-0001 Ext 1004**
Web: **www.FundKite.com**

  

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed...

**From:** Dean Rose <deanrose@lqdfinance.com>
**Sent:** Monday, April 1, 2019 2:06 PM
**To:** Anna Andryeyeva <anna.a@fundkite.com>; FundKite Offers <offers@fundkite.com>
**Subject:** Re: Funding Offer for BUFFALO BIODIESEL INC - Submission: 70044642

Merchant asked is you are able to offer a higher funding amount. He claims to have a $500k offer already.

Please advise.

Dean Rose | Business Finance Consultant
**LQD Business Finance**
Structured, Transparent, and Affordable Business Financing
| d. (312) 444-0557 | o. (855) 402-2077 | f. (855) 491-0797
| a. 329 West 18th Street, Suite 601, Chicago, IL 60616
| w. lqdfinance.com

The information contained in this transmission is intended only for the party to which it is addressed and may contain sensitive information or privileged material. If you are not the intended recipient of this information, please do not review, retransmit, disclose, disseminate, use, or take any action in reliance upon this information, and contact the sender and destroy all digital and printed copies. The information contained herein is not intended to provide investment, legal, or tax advice, nor a basis for any investment recommendation by LQD Business Finance or any of its affiliates (LQD). LQD assumes no liability for any reliance herein or for losses incurred as a result of investment actions based on materials contained herein.

**From:** FundKite Offers <offers@fundkite.com>
**Sent:** Monday, April 1, 2019 9:41 AM
**To:** workingcapfunder@gmail.com

**Cc:** Dean Rose; anna.a
**Subject:** Funding Offer for BUFFALO BIODIESEL INC - Submission: 70044642

## Funding Offer

| | |
|---|---|
| Merchant Name: | **BUFFALO BIODIESEL INC** |
| DBA: | |
| Submission Number: | **70044642** |
| Funding Amount: | **$ 163,000.00** |
| Receipts Purchased: | **$ 237,980.00** |
| Term In Months | **6** |
| Approximate Number Of Payments | **120** |
| Buy Rate: | **1.36** |
| Max Sell Rate: | **1.46** |
| Max Commission Rate: | **.10** |
| Max Commissions Amount: | **$ 16,300.00** |
| Approximate Daily Payment: | **$ 1,983.17** |
| Specified Percentage: | **6** |
| Offer Expires: | **2019-04-08** |
| Offer Conditions: | **3rd Position Offer.** |
| Program: | |

Reply to this email notification to accept this offer.
When requesting contracts please send
**Voided Check**
**Drivers License**
**Owner Cell Phone**
**Owner Email**



**Anna Andreyeva**
**Direct Line: 929-999-5400**



DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

EXHIBIT C

RE: Commission Statement **LIFE** ENHANCEMENT SERVICES LLC - Submission: 70024140

1 OF 2

 **Anna Andryeyeva**
Fri 6/8/2018 3:47 PM
To: ● Dean Rose ⊗

Life Enhancement Services

You forwarded this message on 6/8/2018 4:11 PM

Yes all set wire going out. Sorry for the delay. Also just as a verification is your company still named LQD cap or no?

**Anna Andreyeva**
**Business Development**
**FundKite**
Iso Boarding Link : https://fundkite.com/iso2

**Download Submission Guidelines Here**

**Wall Street Plaza**
**88 Pine Street, 17th floor, New York, NY 10005**
/direct line: **929.999.5400** /tel. **212.952.0001** ext: **1004**/ cell: **718.902.0127** fax: 212-409-8426 / web: **https://FundKite.com**

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

**From:** Dean Rose <deanrose@lqdfinance.com>
**Sent:** Friday, June 8, 2018 4:44 PM
**To:** Anna Andryeyeva <anna.a@fundkite.com>
**Cc:** Steve Kamhi <steve.k@fundkite.com>
**Subject:** Re: Commission Statement LIFE ENHANCEMENT SERVICES LLC - Submission: 70024140

Did your underwriter get the docusign, and wire the commission?

EXHIBIT C

2 OF 2

Submission Received for  ENHANCEMENT SERVICES LLC

FS  FundKite Submissions
    Thu 5/24/2018 10:34 AM
    To: workingcapfunder@gmail.com ⊗

Life Enhancement Services

## Submission Received

The following Submissions has been received.

| | |
|---|---|
| Assigned To: | **LQD Business Finance** |
| Submission Number: | **70024140** |
| Merchant Name: | **LIFE ENHANCEMENT SERVICES LLC** |
| DBA: | |

Download Submission Guidelines Here



**Submissions**

/tel: **929-999-7500** /fax: 212-409-8426 / web: **https://FundKite.com**

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

EXHIBIT D

| From: | Alex Shvarts <alex.s@fundkite.com> |
|-------|-----------------------------------|
| Sent: | Thursday, June 20, 2019 5:44 PM |
| To: | George Souri |
| Cc: | FundKite Accounting; Egor Gagarin; Steve Kamhi; Oleg Mistechkin |
| Subject: | Re: Commission Statement TODAYS GROWTH CONSULTANT INC - Submission: 70049851 |

George,

Actually the ISO agreement is setup, signed with a voided check, W9 and all with Deans information and not yours.

I suggest you get with Dean and resolve the matter amicably and stop looking for us to get in the middle.

We are quiet firm on our position.

Until we get a full release and indemnification we will not release any funds to anyone.

As a formality all rights reserved.

**FundKite**
**Alex Shvarts**
**88 Pine Street, 17th FL, New York 10005**
/direct: 347-788-8900 /tel: **212.952.0001** ext: **1002** /fax: 212-409-8426

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

On Jun 20, 2019, at 6:34 PM, George Souri <georgesouri@lqdfinance.com> wrote:

Alex,

We have no intention of settling anything with Dean Rose. We have a history of deals being submitted to Fundkite from Dean's LQD email dating back to August of 2018. Furthermore, when the relationship was set up, according to Steve and Igor when I spoke to them earlier this week, the ISO relationship was set up as LQD. Therefore, it is our position that not only is the commission for Today's Growth due to LQD, but that these back commissions are also due. In addition, as Today's Growth was an LQD borrower that was unlawfully coopted, we feel that we would be entitled to additional damages for lost revenues.

As I said before, if you want to resolve this thing amicably, then we are willing to be reasonable and also indemnify you from any claims that Dean Rose might raise so you are covered with respect to any liability there. I can tell you now that he has no claims and we have a documented history of Dean Rose acting in an unlawful manner. I welcome a conversation, but if you are not

willing to discuss the matter, then we will have no choice but to pursue legal claims against Fundkite. Again, my intent is not to threaten you or pound my chest, but rather to be transparent as to the situation and our intentions. We simply cannot let a BDO act in this way and not send an absolute signal to the market that such behavior will not be tolerated by LQD and that we will absolutely pursue all legal remedies available to us, and I expect you would act in a similar manner. I hope we are able to speak and avoid litigation.

George Souri | CEO
**LQD Business Finance**
Structured, Transparent, and Affordable Business Financing
| d. 312-929-0979 | o. (855) 402-2077 | f. (855) 491-0797
| a. 329 West 18th Street, Suite 601, Chicago, IL 60616
| w. lqdfinance.com

DISCLAIMER: Nothing in this email shall be construed as financial, operational, legal, business, or tax advice. Nothing in this email is an offer or binding agreement. Nothing in this email is a waiver or release and LQD reserves all rights.
CONFIDENTIALITY: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

**From:** Alex Shvarts <alex.s@fundkite.com>
**Sent:** Thursday, June 20, 2019 12:08 PM
**To:** Dean Rose <dean@securecapp.com>; George Souri <georgesouri@lqdfinance.com>
**Cc:** FundKite Accounting <accounting@fundkite.com>; Egor Gagarin <egor.g@fundkite.com>; Steve Kamhi <steve.k@fundkite.com>
**Subject:** Re: 📧 Commission Statement TODAYS GROWTH CONSULTANT INC - Submission: 70049851
**Importance:** High

Gentlemen,

At this point, in order for us to release the funds that we currently hold, please discuss resolution of this matter between yourselves and provide our for our review a proposed draft of the General Release and Indemnity agreement, fully releasing us from any liability with respect to the released funds.

Very truly yours,

**FundKite**
**Alex Shvarts**
**88 Pine Street, 17fl, New York, NY 10005**
/direct: 347-788-8900 /tel: **212.952.0001** ext: **1002** /fax: 212-409-8426 / web: https://fundkite.com

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have

received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

# EXHIBIT E

| | |
|---|---|
| **From:** | Egor Gagarin <egor.g@fundkite.com> |
| **Sent:** | Wednesday, June 5, 2019 4:16 PM |
| **To:** | Dean Rose |
| **Subject:** | Re: New Submission - Today's Growth |

If you want to cut commission more we can. I already brought it down by paying you 6 points rather than 10.

Is this the merchants request?

**Egor Gagarin**
**Business Development**
**FundKite**

**Download Submission Guidelines Here**
**ISO Boarding Link Here: https://fundkite.com/iso2/**

**Wall Street Plaza**
**88 Pine Street, 17th floor, New York, NY 10005**
Direct: **929-443-3300**
Office: **212-952-0001 Ext 10023**
Web: **www.FundKite.com**

  

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

**From:** Dean Rose <deanrose@lqdfinance.com>
**Sent:** Wednesday, June 5, 2019 5:05:47 PM
**To:** Egor Gagarin
**Subject:** Re: New Submission - Today's Growth

Anyway to come down on buy rate?

Dean Rose | Business Finance Consultant
LQD Business Finance
Structured, Transparent, and Affordable Business Financing
| d. 312-444-0557 | o. (855) 402-2077 | f. (855) 491-0797
| a. 329 West 18th Street, Suite 601, Chicago, IL 60616
| w. lqdfinance.com

DISCLAIMER: Nothing in this email shall be construed as financial, operational, legal, business, or tax advice. Nothing in this email is an offer or binding agreement. Nothing in this email is a waiver or release and LQD reserves all rights.

CONFIDENTIALITY: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from

disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

---

**From:** Egor Gagarin <egor.g@fundkite.com>
**Sent:** Wednesday, June 5, 2019 9:26:19 AM
**To:** Dean Rose; FundKite Submission
**Subject:** Re: New Submission - Today's Growth

Good morning Dean,

I want to push this to pricing but I need to know what they do, whats the industry.

**Egor Gagarin**
**Business Development**
**FundKite**

**Download Submission Guidelines Here**
ISO Boarding Link Here: **https://fundkite.com/iso2/**

**Wall Street Plaza**
**88 Pine Street, 17th floor, New York, NY 10005**
Direct: **929-443-3300**
Office: **212-952-0001 Ext 10023**
Web: **www.FundKite.com**

  

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

---

**From:** Dean Rose <deanrose@lqdfinance.com>
**Sent:** Tuesday, June 4, 2019 1:30:28 PM
**To:** Egor Gagarin; FundKite Submission
**Cc:** Steve Kamhi
**Subject:** Re: New Submission - Today's Growth

Egor,

I am submitting a new deal for consideration, called Today's Growth. This is the deal we spoke about last week. The company is looking for $1,700,000 (in one or more positions) and is looking to close and fund before Friday of this week.

The company is 100% debt free.

Please advise

Dean Rose

Dean Rose | Business Finance Consultant
**LQD Business Finance**
Structured, Transparent, and Affordable Business Financing
| d. 312-444-0557 | o. (855) 402-2077 | f. (855) 491-0797
| a. 329 West 18th Street, Suite 601, Chicago, IL 60616
| w. lqdfinance.com

DISCLAIMER: Nothing in this email shall be construed as financial, operational, legal, business, or tax advice. Nothing in this email is an offer or binding agreement. Nothing in this email is a waiver or release and LQD reserves all rights.

CONFIDENTIALITY: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

| From: | DO NOT REPLY - FundKite <accounting@fundkite.com> |
|---|---|
| Sent: | Thursday, June 13, 2019 3:22 PM |
| To: | dean@securecapp.com; Dean Rose |
| Cc: | egor.g |
| Subject: | Commission Statement TODAYS GROWTH CONSULTANT INC. - Submission: 70049684 |

## Congratulations Your Deal Funded!!!

## Here is Your Commission Statement.

| Merchant Name: | **TODAYS GROWTH CONSULTANT INC.** |
|---|---|
| DBA: | **INCOME STORE** |
| Submission Number: | **70049684** |
| Funding Amount: | **$300,000.00** |
| Commissions Amount: | **$18,000.00** |

You will receive a separate email when we initiate commission payment.

**Commissions on Reverse Consolidations are paid weekly based on deployment amounts.



**FundKite**

**88 Pine St, 17th Floor, New York, NY 10005**

/tel: **212.952.0001** /fax: 212-409-8426 / web: **https://FundKite.com**

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

| | |
|---|---|
| **From:** | DO NOT REPLY - FundKite <accounting@fundkite.com> |
| **Sent:** | Wednesday, June 12, 2019 6:12 PM |
| **To:** | dean@securecapp.com; Dean Rose |
| **Cc:** | egor.g |
| **Subject:** | Commission Statement TODAYS GROWTH CONSULTANT INC - Submission: 70049851 |

## Congratulations Your Deal Funded!!!

## Here is Your Commission Statement.

| | |
|---|---|
| Merchant Name: | **TODAYS GROWTH CONSULTANT INC** |
| DBA: | |
| Submission Number: | **70049851** |
| Funding Amount: | **$1,000,000.00** |
| Commissions Amount: | **$60,000.00** |

You will receive a separate email when we initiate commission payment.

**Commissions on Reverse Consolidations are paid weekly based on deployment amounts.



**FundKite**

**88 Pine St, 17th Floor, New York, NY 10005**

/tel: **212.952.0001** /fax: 212-409-8426 / web: **https://FundKite.com**

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

| | |
|---|---|
| **From:** | FundKite Collections <collections@fundkite.com> |
| **Sent:** | Wednesday, October 24, 2018 3:18 PM |
| **To:** | workingcapfunder@gmail.com; Dean Rose |
| **Subject:** | ▧ Commission Statement LIFE ENHANCEMENT SERVICES LLC - Submission: 70032842 |

## Commission Paid.

| | |
|---|---|
| Merchant Name: | **LIFE ENHANCEMENT SERVICES LLC** |
| DBA: | |
| Submission Number: | **70032842** |
| Funding Amount: | **$170,000.00** |
| Commissions Amount: | **$11,900.00** |
| Account Number: | **135518238** |

Commissions have been sent via ACH credit to your registered bank account. You should receive your commission within 1 business days.



**FundKite**

**88 Pine St, 17th Floor, New York, NY 10005**

/tel: **212.952.0001** /fax: 212-409-8426 / web: **https://FundKite.com**

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

Commission Statement  ENHANCEMENT SERVICES LLC - Submission: 70024140

FC   FundKite Collections
     Fri 6/8/2018 4:03 PM
     To: workingcapfunder@gmail.com;  Dean Rose  A

Life Enhancement Services

You forwarded this message on 6/8/2018 4:10 PM

## Commission Paid.

| | |
|---|---|
| Merchant Name: | LIFE ENHANCEMENT SERVICES LLC |
| DBA: | |
| Submission Number: | 70024140 |
| Funding Amount: | $140,000.00 |
| Commissions Amount: | $12,600.00 |
| Account Number: | 135518238 |

Commissions have been sent via ACH credit to your registered bank account. You should receive your commission within 1 business days.



**FundKite**

**88 Pine St, 17th Floor, New York, NY 10005**

/tel: 212.952.0001 /fax: 212-409-8426 / web: https://FundKite.com

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.