**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LQD BUSINESS FINANCE, LLC<br><br>Plaintiff,<br><br>vs.<br><br>AZIZUDDIN ROSE, an individual, FUNDKITE LLC, a New York limited liability company, AKF, INC. d/b/a FUNDKITE, a New York Corporation<br><br>Defendants. | **VERIFIED AMENDED COMPLAINT**<br><br>**PLAINTIFF DEMANDS A TRIAL BY JURY** |

Plaintiff LQD Business Finance, LLC ("LQD" or "Plaintiff"), by and through its attorneys Zane D. Smith & Associates and Graff Silverstein LLP, brings this Complaint against Defendants Azizuddin "Dean" Rose, ("Rose"), Fundkite, LLC, ("Fundkite") and AKF, Inc. d/b/a FUNDKITE ("AKF" and together with Rose, and Fundkite, the "Defendants"), and alleges as follows:

## INTRODUCTION

1.    This matter arises from the Defendants' misappropriation of LQD's proprietary and confidential customer and potential customer data, documents and data files, and LQD systems, (collectively the "Trade Secrets"), for the purpose of profiting at LQD's expense.

2.    For approximately one year, Defendants Fundkite and/or AKF conspired with Defendant Rose, a former business development officer of LQD, to misappropriate and convert LQD's Trade Secrets. Fundkite and/or AKF paid Rose tens of thousands of dollars to misappropriate and convert LQD's Trade Secrets, and Rose, using his protected access to LQD's systems, did unlawfully misappropriate and convert LQD's Trade Secrets to the benefit of Defendants and to the detriment of LQD.

1

3. Rose did not merely divert generic customer lists or loan leads that he independently developed, rather Rose unlawfully misappropriated and diverted proprietary data on existing LQD customers and prospective customers, which was developed and maintained by LQD's proprietary systems and included non-public contact, financial, operational, and performance data that was exclusively owned by LQD. The Trade Secrets are further protected by a confidentiality agreement between LQD and Rose.

4. Defendants have used, and continue to use, the misappropriated Trade Secrets to divert LQD's business opportunities to the benefit of Defendants and to the detriment of LQD.

## JURISDICTION

5. This Court has jurisdiction over Plaintiff's Defense of Trade Secrets Act claim pursuant to 28 U.S.C. § 1331

6. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the remainder of Plaintiff's claims because these claims closely relate to the Plaintiff's Defense of Trade Secrets Act claim, having arisen from a common nucleus of operative facts, such that all claims form part of the same case or controversy

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because (i) Fundkite and AKF do business in and has issued loans in Illinois, (ii) Rose is a resident of Illinois, (iii) Fundkite and/or AKF hired, retained or otherwise employed the services of Rose for the purpose of obtaining LQD trade secrets, confidential information, and proprietary data, as discussed herein, (iv) the use of the misappropriated trade secrets, proprietary data, and confidential information originated in Chicago, Illinois, and (v) substantial economic benefits have been conferred upon the Defendants because of the misappropriation, conversion, and other misuses,

of LQD's trade secrets from transactions within the State of Illinois which economic benefits would otherwise have been conferred upon LQD.

## PARTIES

8.     Plaintiff LQD Business Finance, LLC is a Delaware limited liability company, with its principal place of business in Chicago, Illinois. LQD is a commercial finance company that provides flexible financing to growing commercial enterprises. LQD employs an underwriting sophistication that permits it to execute a broader range of loans with varying requirements. In addition to traditional asset-based loans, LQD offers contract lending, purchase order financing, acquisition financing, cash flow lending, and over-advance lending, all custom tailored to enterprises specific financing needs. Thus, LQD provides one-comprehensive financing solution to businesses throughout the United States.

9.     Defendant Fundkite is a New York limited liability company and is a commercial finance company operating in the merchant cash advance business.

10.     Defendant Rose is a resident of Chicago, Illinois and a former business development officer for LQD.

11.     Defendant AKF is a New York corporation and is a commercial finance company operating in the merchant cash advance business.

12.     Upon information and belief, AKF and Fundkite are the same, or related entities, and both benefitted from the scheme discussed within this Amended Verified Complaint.

## FACTS COMMON TO ALL COUNTS

### A.     LQD'S Trade Secrets, Proprietary Information, and Confidential Information

13.     LQD provides a wide range of commercial lending services to businesses throughout the continental United States. LQD's revenues come exclusively from interest and fees earned as a

result of customer relationships. The value of potential loan customers and ongoing lending relationships is, therefore, central to LQD's business and viability.

14. LQD has developed, at significant cost, a proprietary list of customers, and potential customers through proprietary technology, marketing channels, and data mining systems. The developed leads contain confidential contact information and performance data about customers and potential customers that is non-public and subject to strict confidentiality under LQD's policies.

15. In addition to proprietary customer leads, LQD develops confidential loan files in the evaluation of a loan, as well as ongoing financial and performance data with respect to loans LQD issues.

16. In addition to an initial loan, LQD customers often also refinance loans, and take out additional loans with LQD to support their growth. These ongoing customer relationships represent significant economic value to LQD in the form of interest and fee revenue.

17. As discussed *infra*, LQD maintains all customer, and potential customer, data on its proprietary platform LQD Central and in secure data storage systems, (together "LQDC"). LQDC is user restricted and subject to password protection and encryption.

18. LQD maintains strict confidentiality and data protection policies and treats all customer and loan data as secret. Employees are required to sign confidentiality agreements and acknowledge LQD's data integrity policies.

**B.     Plaintiff LQD's Protection of Confidential Information and Trade Secrets**

19.   LQD takes great care to protect its Trade Secrets. LQD's security measures include password protection, multi-factor authentication, and encryption, as well as requiring all employees and contractors to enter into confidentiality agreements.

20.   First, LQD provides access to confidential information only to those that need the information to perform their jobs. LQD Central has defined roles, and roles are only given access to specific data.

21.   Second, the Trade Secrets are protected by FINRA compliant data storage systems to which only authorized users can gain access via user ID and password protection.

22.   Third, the Trade Secrets are protected by workstation level unique user names and password. In other words, authorized staff members in the LQD office can only access the LQD computers through the use of unique usernames and passwords.

23.   Fourth, the Trade Secrets are protected by software-level registered user names and password. After signing into their computer, LQD employees must also sign on to LQDC. Again, usernames and passwords are unique to each user and only provided to authorized staff members.

24.   Finally, supervisors oversee the staff at all times during business hours, and the office is not accessible during non-office hours.

25.   In essence, LQD's Trade Secrets are protected by several layers of password and other protections and can only be accessed by authorized individuals for the sole purpose of conducting LQD business.

**C.   Defendants' Access to Plaintiff Proprietary and Confidential Information and Trade Secrets**

26.    Rose worked as a business development officer at LQD from August of 2015 to June 19, 2019.

27.    As a business development officer, Rose was given access to LQDC, and could access LQD's Trade Secrets.

28.    On August 17, 2015, Rose signed an independent contractor employment agreement with LQD, (the "IC Agreement"), under which Rose was hired to work as a business development officer for LQD. *See Exhibit A.*

29.    Under Section 4 of the IC Agreement, Rose is obligated to "treat the Confidential Information as confidential and [Rose] will not disclose it to any third-party or use it for any purpose but to fulfill [Rose's] obligations" under the IC Agreement. *Id.* "Confidential Information" includes, without limitation, "customer identifying information, potential and intended customers...". *Id.* The IC Agreement provides that the confidentiality provision "shall survive the termination of [the IC Agreement] and be in force in perpetuity." *Id.*

30.    Under Section 5 of the IC Agreement, Rose agreed not to "accept work, enter into contracts, or accept obligations inconsistent with, competitive to, or incompatible with [Rose's] obligations or the scope of work to be performed for [LQD]...". *Id.*


**D.    Defendants' Misappropriation and Conversion**

31.    In his position with LQD, Rose had access to LQD's trade secrets, proprietary documents and confidential information.

32.    Over the course of at least one year, while still working for LQD, Rose engaged in a course of unlawful conduct to misappropriate LQD's trade secrets, proprietary documents and confidential information in order to bring such material to use in the marketplace without consent

from LQD. Rose's actions were in contravention of the IC Agreement, his duty of loyalty, and applicable law, and caused significant harm to LQD.

33.    As evidenced by numerous emails, commencing on or about May of 2018, and for more than one year thereafter, Rose knowingly breached the IC Agreement and started misappropriating Trade Secrets from LQD's proprietary system, LQDC, to Fundkite and/or AKF, without permission or consent of LQD, and without first attempting to execute a transaction between such customers, or potential customers, and LQD. *See Exhibit H.*

34.    LQD is not aware of the full extent of Defendants' misappropriation of LQD's Trade Secrets, but on information and belief, such misappropriation was extensive.

35.    Upon information and belief, Rose and Fundkite and/or AKF agreed to perpetrate a scheme whereby Fundkite and/or AKF would pay Rose tens of thousands of dollars, and Rose would abuse his substantial access to LQD's proprietary systems to misappropriate LQD's Trade Secrets for the benefit of the Defendants and to the detriment of LQD.

36.    Using his LQD email, LQD's proprietary management software LQDC, and LQD's file storage systems, Rose sent LQD's Trade Secrets, including without limitation, confidential loan files and loan applications intended for LQD, to Fundkite and/or AKF for his own benefit to the detriment of LQD.

37.    Particularly, Rose accessed and converted, with Fundkite and/or AKF, several LQD opportunities using Trade Secrets, so as to unlawfully profit. Such access and taking had been unauthorized and expressly forbidden for the purpose for which Rose and Fundkite and/or AKF converted the information.

38.    Fundkite and/or AKF knew or should have known that Rose was working as a business development officer for LQD and that Rose had a duty to LQD because Rose used his LQD

email, which listed his position and credentials as an agent of LQD. *See Exhibit B*. Indeed, Fundkite and/or AKF explicitly acknowledged that Rose was an agent for LQD in an email dated June 8, 2018, and assigned deals to "LQD Business Finance" in their internal systems. *See Exhibit C*.

39.     Fundkite and/or AKF knew or should have known that Rose's possession of the customer, or potential customer, information LQD owned had been illicit and unauthorized by LQD.

40.     Indeed, despite having knowledge that Rose was working for LQD, Fundkite knowingly established a contract with Rose that directed all payments to Rose's personal bank account to the explicit exclusion of LQD. *See Exhibit D*.

41.     Today's Growth Consultant, Inc., ("TGC"), was an LQD customer that was assigned to Rose as account manager.

42.     On or about June 4, 2019, TGC contacted Rose requesting an additional loan. Rather than apprise LQD of TGC's request, Rose misappropriated the TGC loan request to Fundkite and/or AKF. *See Exhibit E*.

43.     Fundkite and/or AKF, acting in concert with Rose, provided TGC with $1.3 million of financing, on which Rose earned $78,000.00 in commissions to the detriment of LQD. *See Exhibit F*.

44.     On information and belief, between May of 2018 and June of 2019, Rose misappropriated and diverted Trade Secrets regarding numerous other customers and potential customers to Fundkite and/or AKF, and Fundkite and/or AKF accepted and used the misappropriated Trade Secrets to the benefit of the Defendants.

45.     Because of Defendants' unlawful actions and misappropriation, LQD suffered potentially millions of dollars in lost revenue.

### COUNT ONE
### ALL DEFENDANTS
#### (Federal Misappropriation of Trade Secrets)
#### (18 U.S.C. § 1839)

46.     Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

47.     The actions of Defendants, as set forth herein, constitute misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1839.

48.     Plaintiff possessed confidential information, including but not limited to, customer lists, and potential customer lists, as well as proprietary and confidential financial and operational information on such customers and potential customers that constituted trade secrets.

49.     Such information is used in connection with LQD's products and services which are offered across the country and is central to LQD's business viability.

50.     Plaintiff took reasonable measures to maintain the secrecy and confidentiality of the Trade Secrets by instituting technology systems and policies to safeguard against conversion, unauthorized access, use, duplication, or reverse engineering. Such information cannot be publicly acquired or duplicated because of the limited number of individuals who can access the information, and the contractual limitations imposed on such individuals.

51.     The trade secrets were not generic lists or compilations of publicly available data, but rather proprietary data developed by LQD's data mining systems and proprietary channels. As such, this information is extremely valuable to LQD, critical to the operation of LQD's business, and, if available to others, would enable them to compete with LQD to LQD's detriment.

52.     Defendant Rose knowingly and improperly obtained and disclosed the Trade Secrets in violation of the IC Agreement, his duties to LQD, and under the applicable laws, rules and regulations.

53.     Defendant Fundkite and/or AKF knew or should have known that it improperly acquired (and continues to be aware that it acquired) LQD's Trade Secrets from Rose. Fundkite and/or AKF knowingly misappropriated LQD's Trade Secrets to their own benefit and at the expense of LQD.

54.     Defendant Fundkite and/or AKF used improper means to acquire knowledge of LQD's Trade Secrets. Fundkite and/or AKF knew or had reason to know, at the time the Trade Secrets were used, that the Trade Secrets were derived from someone who acquired the Trade Secrets by improper means, acquired subject to a duty to maintain secrecy or limit use, or derive from a person who owed such a duty.

55.     Defendants' conduct constitutes knowing, willful, and malicious misappropriation.

56.     As a direct and proximate result of Defendants' wrongful conduct, LQD has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Defendants will cause further irreparable injury to LQD.

57.     LQD is entitled to injunctive relief enjoining Defendants, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further use of LQD's proprietary and confidential information and trade secrets.

58.     As a result of Defendants' actions, Plaintiff has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs and enhanced damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.   Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.   Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.   Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.   Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.   Awarding costs and counsel fees incurred in this action as required;

F.   Awarding treble damages as allowed by law;

G.   Ordering expedited discovery; and

H.   Granting such other and further relief as this Court deems equitable and just.

## COUNT TWO
## ALL DEFENDANTS
### (Illinois Trade Secrets Act 765 ILCS 1065)

59.   Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

60.   Without LQD's consent and in violation of the Illinios Trade Secret Act, 765 Ill. Comp. Stat 1065/1, et. seq., Defendants have misappropriated LQD's Trade Secrets, although Rose had been obligated to maintain the secrecy of this information.

11

61. As part of his position at LQD, Rose was exposed to, had knowledge concerning and compiled information about LQD and LQD's customers from which LQD derived significant economic and competitive advantages. These Trade Secrets have independent economic value.

62. By virtue of Rose's position, Rose acquired access to LQD's Trade Secrets under circumstances giving rise to a duty to maintain the secrecy of such information.

63. By virtue of his position, and his contracts, Rose owed a duty to refrain from using the Trade Secrets in a manner adverse to the interests of LQD.

64. In spite of this duty, Rose has misappropriated and/or used the Trade Secrets including, but not limited to, customer lists, and proprietary customer information, and further misappropriated such Trade Secrets by sending such information to Fundkite and/or AKF, as well as retaining and using such Trade Secrets.

65. Such misappropriation by Rose occurred during the time that he had been employed by LQD, and done, upon information and belief, for the express benefit of Fundkite and/or AKF and Rose.

66. Such misappropriation of the Trade Secrets was done without LQD's consent, or permission.

67. Fundkite and/or AKF knew, or should have known, that Rose's retention by Fundkite and/or AKF would induce Rose to rely on LQD Trade Secrets, in violation of the Illinois Trade Secrets Act (the "Act") pursuant to the inevitable disclosure doctrine.

68. In violation of the Act, Rose has disclosed and/or used (for the benefit of Fundkite and/or AKF and himself), LQD's Trade Secrets in order to contact, broker, solicit, and/or submit financing proposals for LQD customers, and for customers he worked with or had knowledge of while at LQD specifically.

69.    By soliciting LQD's customers and using LQD's Trade Secrets for the economic benefit of himself and Fundkite and/or AKF, Rose used the Trade Secrets in the manner adverse to the best interests of LQD, all in violation of the Act.

70.    Rose willfully and maliciously misappropriated LQD's Trade Secrets in violation of the Act.

71.    As a direct, proximate, and intended and/or inevitable result of the actions of the Defendants, LQD will suffer irreparable harm if Defendants are not enjoined from continued use of LQD's trade secrets.

72.    Because of the irreparable nature of the harm to LQD, the most adequate remedy is a Court Order (i) enjoining Defendants from further soliciting, interfering, or entering into any contracts with any of LQD's customers for a period of two years, and (ii) enjoining from using any of LQD's Trade Secrets for any reason.

73.    As a direct, proximate, and intended and/or inevitable result of Defendants' ongoing actions in violation of the Act, LQD has suffered lost future and past profits, lost corporate opportunities, and past, present, and future injury to its goodwill and has been damaged in an amount to be determined at trial.

74.    Thus, LQD is also entitled to all other damages or remedies available to it, including but not limited to, exemplary damages in twice the amount of the award and attorney's fees to the full extent of the law as a result of Defendants' knowing, willful, malicious and intentional conduct.

75.    LQD is also entitled to damages reflecting the amount that Defendants have been unjustly enriched by the misappropriation of LQD's confidential information and Trade Secrets.

    **WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.     Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.     Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.     Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.     Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.     Awarding costs and counsel fees incurred in this action as required;

F.     Awarding treble damages as allowed by law;

G.     Ordering expedited discovery; and

H.     Granting such other and further relief as this Court deems equitable and just.

### COUNT THREE
### ALL DEFENDANTS
### (Unfair Competition)

76.    Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

77.    The Defendants' conduct, as set forth herein, constitutes unfair competition.

78.    Defendants misappropriated LQD's Trade Secrets, in whole or in part, by obtaining access to them through fraud or deception and/or abuse of a confidential relationship.

79. Defendants' use of LQD's misappropriated Trade Secrets confused the marketplace of potential borrowers for LQD's services, and products, as well as the public at large.

80. Such confusion is particularly troublesome because the cash advance industry in New York operates in a manner that LQD does not countenance, and, upon information and belief, is at odds with LQD's business objectives: i.e., to facilitate successful business operations of its customers.

81. As a result of Defendants' actions, LQD has suffered direct and consequential damages, including in the of actual, economic harm to their businesses, and are entitled to recover compensatory damages, including opportunity costs and punitive damages in an amount to be proven at trial.

82. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Defendants will cause further irreparable injury to LQD.

83. LQD is entitled to injunctive relief enjoining Defendants, their agents and employees, and all persons acting in concert or participation with Defendants, from engaging in any further use of LQD's proprietary and confidential information and trade secrets.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A. Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B. Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's

documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C. Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D. Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E. Awarding costs and counsel fees incurred in this action as required;

F. Awarding treble damages as allowed by law;

G. Ordering expedited discovery; and

H. Granting such other and further relief as this Court deems equitable and just.

## COUNT FOUR
## ALL DEFENDANTS
### (Tortious Interference with Prospective Business Relations)

84. Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein.

85. Plaintiff has a reasonable expectation that it would have consummated a substantial number of transactions with existing and potential customers that were misappropriated by the Defendants. Thus, Plaintiff reasonably expected to obtain economic advantages from its relationships with its customers and potential customers but for Defendants' actions.

86. Upon information and belief, a substantial number of customers and potential customers who had previously been contacted by Plaintiff, or imminently would have been contacted by Plaintiff, have been contacted and diverted by the Defendants.

87.   The Defendants intentionally, improperly, with malice and without lawful justification or excuse, interfered with, and continue to interfere with, Plaintiff's existing and prospective business relationships, including, without limitation, by directly and/or indirectly soliciting them and/or diverting them to Fundkite and/or AKF.

88.   As a result, Plaintiff has suffered and will continue to suffer injury and damages.

89.   As a result of Defendants' actions, Plaintiff has suffered and will continue to suffer injury and damages, including opportunity costs and punitive damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.   Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.   Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.   Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.   Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.   Awarding costs and counsel fees incurred in this action as required;

F.   Awarding treble damages as allowed by law;

G.   Ordering expedited discovery; and

H.      Granting such other and further relief as this Court deems equitable and just.


## COUNT FIVE
## ALL DEFENDANTS
### (Unjust Enrichment)

90.   Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein.

91.   Through their unauthorized use, disclosure, and retention of the Plaintiff's Trade Secrets, Defendants received significant benefits at the expense of Plaintiff.

92.   Because Defendants did not bargain for or otherwise compensate Plaintiff for the Trade Secrets, which were developed by Plaintiff at its expense, Defendants have been unjustly enriched. It would be unjust for Defendants to retain the benefit of the Trade Secrets without paying to Plaintiff the value of the benefit conferred.


**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.      Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.      Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.      Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage

devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.    Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.    Awarding costs and counsel fees incurred in this action as required;

F.    Awarding treble damages as allowed by law;

G.    Ordering expedited discovery; and

H.    Granting such other and further relief as this Court deems equitable and just.

## COUNT SIX
## ALL DEFENDANTS
### (Injunctive Relief)

93.    Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein.

94.    Plaintiff seeks a preliminary and permanent injunction barring Defendants from using and disclosing Plaintiff's Trade Secrets to any third-party.

95.    Defendants' unauthorized use and disclosure of Plaintiff's Trade Secrets, among other things, constitutes misappropriation of trade secrets under the Defense of Trade Secrets Act.

96.    Defendants' activities threaten Plaintiff with immediate and irreparable harm in that Defendants' continued use and disclosure of trade secrets will diminish the value of this information and Plaintiff's investment therein, and cause Plaintiff to suffer a loss of business. For Plaintiff to be made whole, Plaintiff must regain the exclusive use of its trade secrets, proprietary documents and confidential information, which form the basis of its competitive edge in the marketplace.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.    Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.    Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.    Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.    Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.    Awarding costs and counsel fees incurred in this action as required;

F.    Awarding treble damages as allowed by law;

G.    Ordering expedited discovery; and

H.    Granting such other and further relief as this Court deems equitable and just.

### COUNT SEVEN
### ALL DEFENDANTS
### (Conversion)

97.   Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein.

 LQD was the owner of the Trade Secrets and did not authorize either of the Defendants to use or otherwise distribute the trade secrets.

98.   Defendants insidiously and unlawfully misappropriated and used the Trade Secrets in a manner that was inconsistent with LQD's interests and in a manner that benefited Defendants to the detriment of LQD.

99.   As a result of Defendants' actions, LQD has suffered material harm.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.   Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.   Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.   Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.   Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.   Awarding costs and counsel fees incurred in this action as required;

F.   Awarding treble damages as allowed by law;

G.   Ordering expedited discovery; and

H.   Granting such other and further relief as this Court deems equitable and just.

**COUNT EIGHT**
**DEFENDANT ROSE**
**(Breach of Fiduciary Duty and Duty of Loyalty)**

100. Plaintiff repeats and re-alleges each and every factual allegation set forth in this Complaint as if set forth herein.

101. During his tenure with Plaintiff, Defendant Rose acquired knowledge of Plaintiff's Trade Secrets, which Plaintiff communicated in confidence to Rose for sole use in his position with LQD.

102. Rose, under the IC Agreement and by virtue of his position with LQD, owed Plaintiff a duty of loyalty and was obligated to act with the utmost good faith, and in the best interest of Plaintiff.

103. Plaintiff was entitled to place its trust and confidence in Rose, and Plaintiff did rely on Rose faithfully performing his obligations consistently with his duties.

104. Rose knowingly and willingly breached his duty of loyalty to Plaintiff by misappropriating Plaintiff's Trade Secrets and engaging in acts that undermined Plaintiff's business operations.

105. Rose acted in a manner inconsistent with agency and trust by conspiring with Fundkite and/or AKF to misappropriate Plaintiff's Trade Secrets to the injury of Plaintiff and for the benefit of Defendants, and by acting against Plaintiff's interests while still in a contractual relationship with Plaintiff.

106. As a direct and proximate cause of Rose's breach of his duties, Plaintiff has been and is being harmed, and faces risk of irreparable harm.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A. Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B. Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not

limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C. Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D. Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E. Awarding costs and counsel fees incurred in this action as required;

F. Awarding treble damages as allowed by law;

G. Ordering expedited discovery; and

H. Granting such other and further relief as this Court deems equitable and just.

**COUNT NINE**
**ALL DEFENDANTS**
**(Violation of the Federal Computer Fraud and Abuse Act 18 U.S.C. § 1030)**

107. Plaintiff hereby restates and re-alleges each of the allegations contained in the foregoing paragraphs as if set forth fully herein.

108. Defendants intentionally accessed a computer;

109. Defendants lacked authority to access the computer or exceeded granted authority to access the computer;

110. Defendants obtained data from the computer; and

111. Defendants' conduct caused a loss of $5,000 or more during a one-year span.

112. Under the Federal Computer Fraud and Abuse Act, Plaintiff is entitled to an award of all reasonable costs incurred in responding to Defendants' offenses, as well as compensatory and punitive damages and the cost of the suit, including attorney's fees.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A. Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B. Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C. Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D. Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E. Awarding costs and counsel fees incurred in this action as required;

F. Awarding treble damages as allowed by law;

G. Ordering expedited discovery; and

H. Granting such other and further relief as this Court deems equitable and just.

## COUNT TEN
## DEFENDANT ROSE
### (Breach of Contract)

113. Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein.

114. Defendant Rose, as discussed *supra*, had an enforceable agreement with LQD.

115. Defendant Rose, as discussed *supra*, breached his contract with LQD.

116. As a result of such breach of contract, Defendant Rose has caused LQD an amount of damages to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.      Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.      Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.      Directing Defendants to allow Plaintiff, or its agent, access to Defendant' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendant' cost;

D.      Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.      Awarding costs and reasonable counsel fees incurred in this action as required;

F.      Awarding treble damages as allowed by law;

G.      Ordering expedited discovery; and

H.      Granting such other and further relief as this Court deems equitable and just.

**COUNT ELEVEN**
**DEFENDANT FUNDKITE AND AKF**

**(Aiding and Abetting Breach of Fiduciary Duty)**

117.    Plaintiff repeats and realleges the allegations contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

118.    Defendant Fundkite and/or AKF had actual knowledge of the violations of fiduciary duty discussed *supra*.

119.    Notwithstanding this knowledge, Fundkite and/or AKF substantially assisted in the breach of fiduciary, as discussed, in detail within.

120.    As a direct and proximate result of Fundkite's and/or AKF's conduct, Plaintiff was damaged at an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Fundkite and/or AKF as follows:

A.    Enjoining and restraining Fundkite and/or AKF and its agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.    Requiring that Fundkite and/or AKF return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.    Directing Fundkite and/or AKF to allow Plaintiff, or its agent, access to Fundkite's and/or AKF's business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Fundkite's and/or AKF's cost;

D.    Awarding compensatory, consequential and punitive damages arising out of the Fundkite's and/or AKF's willful, wanton and malicious conduct;

E.    Awarding costs and counsel fees incurred in this action as required;

F.    Awarding treble damages as allowed by law;

G.   Ordering expedited discovery; and

H.   Granting such other and further relief as this Court deems equitable and just.

## COUNT TWELVE
## DEFENDANT FUNDKITE
### (Aiding and Abetting Conversion)

121.   Plaintiff repeats and realleges the allegations contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

122.   Defendant Fundkite and/or AKF had actual knowledge of the conversion of Plaintiff's trade secrets, confidential information, and proprietary data.

123.   Notwithstanding this knowledge, Defendant Fundkite and/or AKF substantially assisted in the conversion, as discussed, in detail within.

124.   As a direct and proximate result of Defendant Fundkite's and/or AKF's conduct, Plaintiff has been damaged at an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Fundkite and/or AKF as follows:

A.   Enjoining and restraining Fundkite and/or AKF and its agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.   Requiring that Fundkite and/or AKF return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.   Directing Defendants to allow Plaintiff, or its agent, access to Fundkite's and/or AKF's business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendant' cost;

27

D.      Awarding compensatory, consequential and punitive damages arising out of the Fundkite's and/or AKF's willful, wanton and malicious conduct;

E.      Awarding costs and counsel fees incurred in this action as required;

F.      Awarding treble damages as allowed by law;

G.      Ordering expedited discovery; and

H.      Granting such other and further relief as this Court deems equitable and just.

## COUNT THIRTEEN
## DEFENDANT ROSE
### (Breach of the Covenant of Good Faith and Fair Dealing)

125.    Plaintiff repeats and realleges all the factual allegations of the Complaint as if set forth at length herein.

126.    Plaintiff entered into contracts with Rose.

127.    The parties to the contract entered into a covenant of good faith and fair dealing.

128.    By his acts and omissions, Rose has breached the covenant of good faith and fair dealing.

129.    Plaintiff has been harmed by such breach in an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Rose as follows:

A.      Enjoining and restraining Rose and his agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B.      Requiring that Rose return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.      Directing Rose to allow Plaintiff, or his agent, access to Defendant'

business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Rose's cost;

D.    Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.    Awarding costs and counsel fees incurred in this action as required;

F.    Awarding treble damages as allowed by law;

G.    Ordering expedited discovery; and

H.    Granting such other and further relief as this Court deems equitable and just.

## VERIFICATION

I, GEORGE SOURI, declare as follows:

1.      I am the managing member of LQD Business Finance, LLC.

2.      I have personal knowledge of each and every fact alleged in this Complaint and stated herein in this Verification, and could competently testify thereto if called as a witness, except for the facts alleged upon information and belief.

3.      I declare, under penalty of perjury under the laws of the United States of America that the foregoing factual allegations are true and correct, except for the allegations made upon information and belief.

Executed this 1st day of July 2019 at Chicago, Illinois.

George Souri, CEO
LQD Business Finance, LLC

### DEMAND FOR JURY DEMAND

Pursuant to the Rule 38 of the Federal Rules of Civil Procedure, Plaintiff LQD hereby demands trial by jury on all issues so triable.

Dated: July 1, 2019

LQD Business Finance, LLC, *Plaintiff*

/s/ Zane D. Smith
Zane D. Smith, one of its Attorneys
Zane D. Smith – ARDC #6184814
ZANE D. SMITH & ASSOCIATES, LTD.
221 North LaSalle Street – Suite 1320
Chicago, Illinois 60601
(312) 245-0031
zane@zanesmith.com

/s/ Boris G. Samovalov
Boris G. Samovalov, one of its Attorneys
Boris G. Samovalov – ARDC #6305036
ZANE D. SMITH & ASSOCIATES, LTD.
221 N. LaSalle Street – Suite 1320
Chicago, Illinois 60601
(312) 245-0031
boris@zanesmith.com