**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LQD BUSINESS FINANCE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> AZIZUDDIN ROSE, <br><br> Defendant, <br><br> and <br><br> FUNDKITE LLC, and AKF, INC., d/b/a FUNDKITE, <br><br>   Defendants. <br><br> ———————————— <br><br> AZIZUDDIN ROSE, <br><br>   Counter-Plaintiff, <br><br> v. <br><br> LQD BUSNESS FINANCE, LLC, and GEORGE SOURI <br><br>   Counter-Defendants. | Case No. 19-cv-04416 <br><br> Hon. Matthew F. Kennelly <br><br> **SECOND VERIFIED** <br> **AMENDED COMPLAINT** |

Plaintiff LQD Business Finance, LLC ("LQD" or "Plaintiff"), by and through its attorneys Zane D. Smith & Associates and Graff Silverstein LLP, brings its Second Verified Amended Complaint against Defendants Azizuddin "Dean" Rose, ("Rose"), Fundkite, LLC, ("Fundkite") and AKF, Inc. d/b/a FUNDKITE ("AKF" and together with Rose, and Fundkite, the

1

"Defendants"), and alleges as follows:

## INTRODUCTION

1. This matter arises from the Defendants' concerted efforts to misappropriate, and convert, LQD's proprietary and confidential customer and potential customer data, documents and data files, and LQD systems, (collectively the "LQD Assets"), for the purpose of profiting at LQD's expense.

2. For approximately one year, Defendants Fundkite and AKF conspired with Defendant Rose, a former business development officer of LQD, to misappropriate and convert LQD's LQD Assets. Fundkite and/or AKF paid Rose tens of thousands of dollars to misappropriate and convert LQD's LQD Assets, and Rose, using his protected access to LQD's systems, did unlawfully misappropriate and convert LQD's LQD Assets to the benefit of Defendants and to the detriment of LQD.

3. Rose did not merely divert generic customer lists or loan leads that he independently developed, rather Rose unlawfully misappropriated and diverted proprietary data on existing LQD customers and prospective customers, which was developed and maintained by LQD's proprietary systems and included non-public contact, financial, operational, and performance data that was exclusively owned by LQD. The LQD Assets are further protected by a confidentiality agreement between LQD and Rose.

4. As part of Rose's egregious breaches of fiduciary duty (including, but not limited to, his duty of loyalty to LQD), conversions, misappropriations, and violations of his contractual obligations, Defendant Rose usurped and diverted myriad corporate opportunities that had been available to LQD and had been derived from LQD's Assets that had been developed at great cost, and expense, to LQD and through LQD proprietary methods. *Specifically*, Rose – while

working on behalf of LQD – improperly received notice of, accessed, and used, various opportunities that LQD had to provide financing to its potential, and existing customer, base. Nonetheless, Rose failed to disclose (and, concealed) such lucrative opportunities to LQD. Rather, Rose secretly provided such opportunities to AKF *and* Fundkite.

5.      AKF *and* Fundkite, not only benefitted from such Rose's violations, but intentionally and substantially encouraged and assisted Rose in his conversions, misappropriations, and breaches of legal and contractual duties to LQD, and deprived LQD of its prospective business advantages derived from the LQD Assets developed by LQD at extraordinary expense.

6.      Defendants have used, and continue to use, the misappropriated LQD Assets to divert LQD's business opportunities to the benefit of Defendants and to the detriment of LQD.

## JURISDICTION

7.      This Court has jurisdiction over Plaintiff's Defense of Trade Secrets Act claim pursuant to 28 U.S.C. § 1331.

8.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the remainder of Plaintiff's claims because these claims closely relate to the Plaintiff's Defense of Trade Secrets Act claim, having arisen from a common nucleus of operative facts, such that all claims form part of the same case or controversy.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because (i) Fundkite and AKF do business in and has issued loans in Illinois, (ii) Rose is a resident of Illinois, (iii) Fundkite and/or AKF hired, retained or otherwise employed the services of Rose for the purpose of obtaining LQD's LQD Assets, confidential information, and proprietary data, as discussed herein, (iv) the use of the misappropriated LQD Assets, proprietary data, and confidential information originated in Chicago, Illinois, and (v) substantial economic benefits have been

conferred upon the Defendants because of the misappropriation, conversion, and other misuses, of LQD's LQD Assets from transactions within the State of Illinois which economic benefits would otherwise have been conferred upon LQD.

## PARTIES

10.   Plaintiff LQD Business Finance, LLC is a Delaware limited liability company, with its principal place of business in Chicago, Illinois. LQD is a commercial finance company that provides flexible financing to growing commercial enterprises. LQD employs an underwriting sophistication that permits it to execute a broader range of loans with varying requirements. In addition to traditional asset-based loans, LQD offers contract lending, purchase order financing, acquisition financing, cash flow lending, and over-advance lending, all custom tailored to enterprises specific financing needs. Thus, LQD provides one-comprehensive financing solution to businesses throughout the United States.

11.   Defendant Fundkite is a New York limited liability company and is a commercial finance company operating in the merchant cash advance business. Fundkite maintains the same business address as Defendant AKF, operates out of the same office as AKF, provides liquidity (i.e., money) to finance the same merchant cash advances / financing transactions as AKF, and operates under the same name as AKF (i.e., AKF, Inc. does business as Fundkite).

12.   Defendant Rose is a resident of Chicago, Illinois and a former business development officer for LQD.

13.   Defendant AKF is a New York corporation and is a commercial finance company operating in the merchant cash advance business.

14.   Upon information and belief, AKF and Fundkite are the same, or related entities, and both benefitted from the scheme discussed within this Second Verified Amended Complaint.

## FACTS COMMON TO ALL COUNTS

**A.    LQD'S LQD Assets, Proprietary Information, and Confidential Information**

15.  LQD provides a wide range of commercial lending services to businesses throughout the continental United States. LQD's revenues come exclusively from interest and fees earned as a result of customer relationships. The value of potential loan customers and ongoing lending relationships is, therefore, central to LQD's business and viability.

16.  LQD has developed, at significant cost, a proprietary list of customers, and potential customers through proprietary technology, marketing channels, and data mining systems. The developed leads contain confidential contact information and performance data about customers and potential customers that is non-public and subject to strict confidentiality under LQD's policies.

17.  In addition to proprietary customer leads, LQD develops confidential loan files in the evaluation of a loan, as well as ongoing financial and performance data with respect to loans LQD issues.

18.  During the loan underwriting, and servicing, processes that LQD performs regarding <u>all</u> borrowers and potential borrowers of LQD, it not only extracts a substantial amount of financial and operational information from the borrower, or potential borrower, but performs significant statistical, financial and mathematical analytics concerning such data. Such statistical, financial and mathematical analytics are done, among other reasons, to assess the creditworthiness of a borrower, or potential borrower. Such a determination is critical to LQD's decisioning on the viability of a loan to a particular borrower (<u>i.e.</u>, whether to issue a loan to a particular borrower, or potential borrower, and the loan terms).

19. *Among other things,* the financial and operational data extracted from LQD borrowers, and potential borrowers, include: existing business development plans; plans relating existing to LQD's existing clients; plans relating to their pricing and marketing strategies; plans for the disposition of their inventory; the borrower's, or potential borrower's, lead sources, client lists, position in the market, research dossiers; and, significant operational and financial information (including, but not limited to, the borrowers cash flow, balance sheets, income statements, receivables, inventory, cash flow projections, existing proposed debt and debt service).

20. LQD borrowers maintain such information in strict confidence, and only provide LQD with such information for its underwriting and servicing after the execution of an appropriate Non-Disclosure Agreements between LQD and the borrower.

21. As discussed, after the significant extraction of such financial and operational data from its borrower, or potential borrower, LQD performs proprietary financial, statistical, mathematical, and numerical analyses on such financial and operational data.

22. The financial, statistical, and mathematical analytics are captured, in some part, within proprietary LQD systems, including, but not limited to, LQD Synthesis and LQD Matrix.

23. After <u>all</u> the specifically extracted financial, and operational, data from each borrower is assessed through LQD Synthesis, and LQD Matrix, along with LQD's other proprietary statistical, mathematical, and financial modeling, LQD produces an output file memorializing such analytics performed for each borrower, and potential borrower, and renders decisions concerning the viability of a potential borrower, and if acceptable to LQD, the terms offered to such borrower. Such output files are kept in strict confidence at LQD.

24. In addition to an initial loan, LQD customers often also refinance loans, and take out additional loans with LQD to support their growth. These ongoing customer relationships represent significant economic value to LQD in the form of interest and fee revenue.

25. As discussed *infra*, LQD maintains all customer, and potential customer, data on its proprietary platform LQD Central and in secure data storage systems, (together "LQDC"). LQDC is user restricted and subject to password protection and encryption.

26. LQD maintains strict confidentiality and data protection policies and treats all customer and loan data as secret. Employees are required to sign confidentiality agreements and acknowledge LQD's data integrity policies.

**B.    Plaintiff LQD's Protection of Confidential Information and LQD Assets**

27. LQD takes great care to protect its LQD Assets. LQD's security measures include password protection, multi-factor authentication, and encryption, as well as requiring all employees and contractors to enter into confidentiality agreements.

28. First, LQD provides access to confidential information only to those that need the information to perform their jobs. LQD Central has defined roles, and roles are only given access to specific data.

29. Second, the LQD Assets are protected by FINRA compliant data storage systems to which only authorized users can gain access via user ID and password protection.

30. Third, the LQD Assets are protected by workstation level unique user names and password. In other words, authorized staff members in the LQD office can only access the LQD computers through the use of unique usernames and passwords.

31. Fourth, the LQD Assets are protected by software-level registered user names and password.  After signing into their computer, LQD employees must also sign on to LQDC.

Again, usernames and passwords are unique to each user and only provided to authorized staff members.

32.    Finally, supervisors oversee the staff at all times during business hours, and the office is not accessible during non-office hours.

33.    In essence, LQD's LQD Assets are protected by several layers of password and other protections and can only be accessed by authorized individuals for the sole purpose of conducting LQD business.

**C.    Defendants' Access to Plaintiff Proprietary and Confidential Information and LQD Assets**

34.    Rose worked as a business development officer at LQD from August of 2015 to June 19, 2019.

35.    As a business development officer, Rose was given access to LQDC, and could access LQD's LQD Assets, including its output files.

36.    As a business development officer, Rose, too, had access to LQD's proprietary assets, including, but not limited to, borrowers, and potential borrowers. Among other things, Rose had access to LQD systems, but also had an LQD issued telephone, email address, and other electronic forms of communication issued from LQD, that enabled him to communicate with borrowers, and potential borrowers, exploring financing options with LQD. Ultimately, Rose abused and exploited such access for his pecuniary benefit to the detriment of LQD and the benefit of AKF and Fundkite.

37.    Because of the substantial access to LQD systems, and assets, that Rose had while working on behalf of LQD, Rose had a duty of trust and loyalty to LQD throughout his tenure at LQD, and, *in no circumstance*, did Rose have authority to convert and misappropriate LQD Assets for his own benefit to the detriment of LQD.

38.   Additionally, on August 17, 2015, Rose signed an independent contractor employment agreement with LQD, (the "IC Agreement"), under which Rose was hired to work as a business development officer for LQD. *See Exhibit A.*

39.   Under Section 4 of the IC Agreement, Rose is obligated to "treat the Confidential Information as confidential and [Rose] will not disclose it to any third-party or use it for any purpose but to fulfill [Rose's] obligations" under the IC Agreement. *Id.* "Confidential Information" includes, without limitation, "customer identifying information, potential and intended customers…". *Id.* The IC Agreement provides that the confidentiality provision "shall survive the termination of [the IC Agreement] and be in force in perpetuity." *Id.*

40.   Under Section 5 of the IC Agreement, Rose agreed not to "accept work, enter into contracts, or accept obligations inconsistent with, competitive to, or incompatible with [Rose's] obligations or the scope of work to be performed for [LQD]…". *Id.*

41.   Accordingly, Rose had obligations of loyalty to LQD, *particularly* in his use of LQD assets, and LQD Assets. Such duties, included, but had not been limited to, the duty to present <u>all</u> business and commercial opportunities (<u>i.e.</u>, potential customers of LQD loans) that Rose extracted from the marketplace through LQD systems, or channels (<u>e.g.</u>, received through LQD communication systems) to LQD, and not to convert such opportunities for his benefit, and the benefit of AKF and Fundkite.

42.   Independent of such duties, and contractual obligations, Rose had been legally prohibited from misappropriation and conversion of LQD Assets for his own benefit, or the benefit of other financiers in the marketplace (<u>e.g.</u>, Fundkite and AKF).

**D.    Defendants' Misappropriation and Conversion**

43.    In his position with LQD, Rose had access to LQD's LQD Assets, proprietary documents, assets, and confidential information.

44.    Over the course of at least one year, while still working for LQD, Rose engaged in a course of unlawful conduct to misappropriate and convert LQD's LQD Assets, proprietary documents and assets, as well as confidential information in order to bring such material to use in the marketplace without consent from LQD. Rose's actions were in contravention of the IC Agreement, his duty of loyalty, and applicable laws against conversion and misappropriation, and caused significant harm to LQD.

45.    Commencing on or about May of 2018, and for more than one year thereafter, Rose knowingly breached the IC Agreement and started misappropriating LQD Assets from LQD's proprietary system, LQDC, and LQD assets, to Fundkite and AKF, without permission or consent of LQD, and without first attempting to execute a transaction between such customers, or potential customers, and LQD. *See, Exhibits B-G.*

46.    Upon information and belief, Rose, Fundkite and AKF agreed to perpetrate a scheme whereby Fundkite and AKF would pay Rose tens of thousands of dollars, and Rose would abuse his substantial access to LQD's proprietary systems to misappropriate LQD's LQD Assets, and proprietary assets, for the benefit of the Defendants and to the detriment of LQD.

47.    Upon information and belief, during such a scheme, Fundkite and AKF communicated with Rose concerning the LQD Assets, and LQD's proprietary assets and data, that had been available on LQDC, among other LQD systems, and instructed Rose on the information that AKF and Fundkite needed to effectively market, and sell, its products to LQD customers, and potential customers.

48. LQD is not aware of the full extent of Defendants' misappropriation and conversion of LQD's LQD Assets, and proprietary assets, but on information and belief, such misappropriation and conversion was extensive.

49. Rose on myriad occasions downloaded LQD output files from LQDC, and upon information and belief, shared such output files with the marketplace, including AKF and Fundkite.

50. Rose on myriad occasions received corporate opportunities by virtue of his use, and access, to LQD electronic and communications systems that Rose failed to present to LQD, and instead presented to the marketplace, including AKF and Fundkite.

51. Using his LQD email, LQD's proprietary management software LQDC, and LQD's file storage systems, Rose sent LQD's LQD Assets, including without limitation, confidential loan files and loan applications intended for LQD, to Fundkite and AKF for his own benefit to the detriment of LQD.

52. Particularly, Rose accessed and converted, with Fundkite and AKF, several LQD opportunities using LQD Assets, and proprietary assets, so as to unlawfully profit. Such access and taking had been unauthorized and expressly forbidden for the purpose for which Rose, Fundkite and AKF converted the information.

53. Rose's deceptive conversions and misappropriations, included but are not limited to, copying, and previewing, LQD Assets, concerning various LQD borrowers that, in many instances, had not been in the process of servicing, or underwriting, and accordingly, no legitimate reason existed for such illicit conduct. Upon information and belief, Rose had an agreement with AKF and Fundkite to engage in such illicit conduct, and provide them LQD

Assets, such that all Defendants could profit – i.e., Fundkite and AKF through origination and interest charges, and Rose through the attendant brokerage fees.

54.     Fundkite and AKF knew or should have known that Rose was working as a business development officer for LQD and that Rose had a duty to LQD because Rose used his LQD email, which listed his position and credentials as an agent of LQD. *See Exhibit B*. Indeed, Fundkite and AKF explicitly acknowledged that Rose was an agent for LQD in an email dated June 8, 2018, and assigned deals to "LQD Business Finance" in their internal systems. *See Exhibit C*.

55.     Fundkite and AKF knew or should have known that Rose's possession of the customer, or potential customer, information (including the output files) LQD owned had been illicit and unauthorized by LQD.

56.     Indeed, despite having knowledge that Rose was working for LQD, Fundkite and/or AKF knowingly established a contract with Rose that directed all payments to Rose's personal bank account to the explicit exclusion of LQD. *See Exhibit D*.

57.     Today's Growth Consultant, Inc., ("TGC"), was an LQD customer that was assigned to Rose as account manager.

58.     On or about June 4, 2019, TGC contacted Rose requesting an additional loan. Rather than apprise LQD of TGC's request, Rose misappropriated the TGC loan request to Fundkite and/or AKF. *See Exhibit E.*

59.     Fundkite and AKF, acting in concert with Rose, provided TGC with approximately $1.7 million of financing, on which Rose earned $78,000.00 in commissions to the detriment of LQD. *See Exhibit F*.

60.   On information and belief, between May of 2018 and June of 2019, Rose misappropriated and diverted LQD Assets, and proprietary assets, regarding numerous other customers, including but not limited to, TGC, Buffalo Biodiesel, Inc. and Life Enhancement Services, LLC, and potential customers to Fundkite and AKF, and Fundkite and AKF accepted and used the misappropriated LQD Assets to the benefit of the Defendants.

61.   On information and belief, among others customers and potential customers wrongfully diverted from LQD to AKF and Fundkite by Rose, AKF and Fundkite knew or should have known that TGC, Life Enhancements Services, LLC, and Buffalo Biodiesel, Inc. had been existing customers of LQD, and had communicated with Rose because of that preexisting relationship with LQD.

62.   Because of Defendants' unlawful actions and misappropriation, LQD suffered potentially millions of dollars in lost revenue.

### E.   Facts Supporting Fundkite, LLC Involvement in the Scheme to Convert LQD Proprietary Assets, and Misappropriate LQD LQD Assets

63.  Fundkite and AKF, Inc. are represented by the same counsel.

64. Fundkite and AKF, Inc. share the same office in New York, New York: specifically, 88 Pine Street, 17th Floor, New York, New York 10001, as listed on Fundkite, LLC's future receivable sale and purchase agreement, as filed on the New York State Court System. *See, Ex. H.*

65. Fundkite and AKF both operated under the same entity name: Fundkite.

66. Fundkite provides working capital for loans and merchant cash advances that are issued by AKF. Upon information and belief, AKF, Inc., too, provides working capital for loans and merchant cash advances that are issued by Fundkite.

67. Fundkite does certain due diligence prior to providing such working capital.

68. Fundkite did such due diligence prior to providing such working capital for the financing transaction to TGC.

69. Upon information and belief, during such due diligence, Fundkite reviews all information that had been transmitted and/or provided and/or maintained by AKF, along with its agents, third parties, among others, prior to providing working capital.

70. Upon information and belief, Fundkite accessed and maintained all the same information that AKF accessed and maintained prior to engaging in any financing transaction.

71. Such information available to Fundkite would, thus – as it relates to the various LQD borrowers that had been converted for its benefit, including TGC, Buffalo Biodisel, Inc. and Life Enhancement Services, LLC – access, and review, LQD output files, LQD proprietary information, and LQD LQD Assets (i.e., the same information accessed and used by AKF, as provided to them by Rose).

### COUNT ONE
### ALL DEFENDANTS
#### (Federal Misappropriation of Trade Secrets)
#### (18 U.S.C. § 1839)

72.  Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

73.  The actions of Defendants, as set forth herein, constitute misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1839.

74.  Plaintiff possessed confidential information, including but not limited to, customer lists, and potential customer lists, as well as proprietary and confidential financial and operational information on such customers and potential customers that constituted trade secrets.

75.  Such information is used in connection with LQD's products and services which are offered across the country and is central to LQD's business viability.

76.     Plaintiff took reasonable measures to maintain the secrecy and confidentiality of the LQD Assets by instituting technology systems and policies to safeguard against conversion, unauthorized access, use, duplication, or reverse engineering. Such information cannot be publicly acquired or duplicated because of the limited number of individuals who can access the information, and the contractual limitations imposed on such individuals.

77.     The LQD Assets were not generic lists or compilations of publicly available data, but rather proprietary data developed by LQD's data mining systems and proprietary channels. As such, this information is extremely valuable to LQD, critical to the operation of LQD's business, and, if available to others, would enable them to compete with LQD to LQD's detriment.

78.     Defendant Rose knowingly and improperly obtained and disclosed the LQD Assets in violation of the IC Agreement, his duties to LQD, and under the applicable laws, rules and regulations.

79.     Defendant Fundkite and/or AKF knew or should have known that it improperly acquired (and continues to be aware that it acquired) LQD's LQD Assets from Rose. Fundkite and/or AKF knowingly misappropriated LQD's LQD Assets to their own benefit and at the expense of LQD.

80.     Defendant Fundkite and/or AKF used improper means to acquire knowledge of LQD's LQD Assets. Fundkite and/or AKF knew or had reason to know, at the time the LQD Assets were used, that the LQD Assets were derived from someone who acquired the LQD Assets by improper means, acquired subject to a duty to maintain secrecy or limit use, or derive from a person who owed such a duty.

81.     Defendants' conduct constitutes knowing, willful, and malicious misappropriation.

82. As a direct and proximate result of Defendants' wrongful conduct, LQD has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Defendants will cause further irreparable injury to LQD.

83. LQD is entitled to injunctive relief enjoining Defendants, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further use of LQD's proprietary and confidential information and trade secrets.

84. As a result of Defendants' actions, Plaintiff has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs and enhanced damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A. Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any trade secrets or confidential, private or proprietary information of Plaintiff;

B. Requiring that Defendants return to Plaintiff all trade secrets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C. Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D. Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E. Awarding costs and counsel fees incurred in this action as required;

F. Awarding treble damages as allowed by law;

G.    Ordering expedited discovery; and

H.    Granting such other and further relief as this Court deems equitable and just.

## COUNT TWO
## ALL DEFENDANTS
### (Illinois Trade Secrets Act 765 ILCS 1065)

85.   Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

86.   Without LQD's consent and in violation of the Illinois Trade Secret Act, 765 Ill. Comp. Stat 1065/1, et. seq., Defendants have misappropriated LQD's LQD Assets, although Rose had been obligated to maintain the secrecy of this information.

87.   As part of his position at LQD, Rose was exposed to, had knowledge concerning and compiled information about LQD and LQD's customers from which LQD derived significant economic and competitive advantages. These LQD Assets have independent economic value.

88.   By virtue of Rose's position, Rose acquired access to LQD's LQD Assets under circumstances giving rise to a duty to maintain the secrecy of such information.

89.   By virtue of his position, and his contracts, Rose owed a duty to refrain from using the LQD Assets in a manner adverse to the interests of LQD.

90.   In spite of this duty, Rose has misappropriated and/or used the LQD Assets including, but not limited to, customer lists, and proprietary customer information, and further misappropriated such LQD Assets by sending such information to Fundkite and/or AKF, as well as retaining and using such LQD Assets.

91.   Such misappropriation by Rose occurred during the time that he had been employed by LQD, and done, upon information and belief, for the express benefit of Fundkite and/or AKF

and Rose.

92.   Such misappropriation of the LQD Assets was done without LQD's consent, or permission.

93.   Fundkite and/or AKF knew, or should have known, that Rose's retention by Fundkite and/or AKF would induce Rose to rely on LQD LQD Assets, in violation of the Illinois Trade Secrets Act (the "Act") pursuant to the inevitable disclosure doctrine.

94.   In violation of the Act, Rose has disclosed and/or used (for the benefit of Fundkite and/or AKF and himself), LQD's LQD Assets in order to contact, broker, solicit, and/or submit financing proposals for LQD customers, and for customers he worked with or had knowledge of while at LQD specifically.

95.   By soliciting LQD's customers and using LQD's LQD Assets for the economic benefit of himself and Fundkite and/or AKF, Rose used the LQD Assets in the manner adverse to the best interests of LQD, all in violation of the Act.

96.   Rose willfully and maliciously misappropriated LQD's LQD Assets in violation of the Act.

97.   As a direct, proximate, and intended and/or inevitable result of the actions of the Defendants, LQD will suffer irreparable harm if Defendants are not enjoined from continued use of LQD's LQD Assets.

98.   Because of the irreparable nature of the harm to LQD, the most adequate remedy is a Court Order (i) enjoining Defendants from further soliciting, interfering, or entering into any contracts with any of LQD's customers for a period of two years, and (ii) enjoining from using any of LQD's LQD Assets for any reason.

99.   As a direct, proximate, and intended and/or inevitable result of Defendants' ongoing actions in violation of the Act, LQD has suffered lost future and past profits, lost corporate opportunities, and past, present, and future injury to its goodwill and has been damaged in an

amount to be determined at trial.

100.  Thus, LQD is also entitled to all other damages or remedies available to it, including but not limited to, exemplary damages in twice the amount of the award and attorney's fees to the full extent of the law as a result of Defendants' knowing, willful, malicious and intentional conduct.

101.  LQD is also entitled to damages reflecting the amount that Defendants have been unjustly enriched by the misappropriation of LQD's confidential information and LQD Assets.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.  Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any LQD Assets or confidential, private or proprietary information of Plaintiff;

B.  Requiring that Defendants return to Plaintiff all LQD Assets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.  Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.  Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.  Awarding costs and counsel fees incurred in this action as required;

F.  Awarding treble damages as allowed by law;

G.  Ordering expedited discovery; and

H.  Granting such other and further relief as this Court deems equitable and just.

**COUNT THREE**
**ALL DEFENDANTS**
**(Unfair Competition)**

102.  Plaintiff repeats and realleges each and every allegation contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

103.  The Defendants' conduct, as set forth herein, constitutes unfair competition.

104.  Defendants misappropriated LQD's proprietary assets, in whole or in part, by obtaining access to them through fraud or deception and/or abuse of a confidential relationship.

105.  Defendants' use of LQD's misappropriated proprietary assets confused the marketplace of potential borrowers for LQD's services, and products, as well as the public at large.

106.  Such confusion is particularly troublesome because the cash advance industry in New York operates in a manner that LQD does not countenance, and, upon information and belief, is at odds with LQD's business objectives: i.e., to facilitate successful business operations of its customers.

107.  As a result of Defendants' actions, LQD has suffered direct and consequential damages, including in the of actual, economic harm to their businesses, and are entitled to recover compensatory damages, including opportunity costs and punitive damages in an amount to be proven at trial.

108.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Defendants will cause further irreparable injury to LQD.

109.  LQD is entitled to injunctive relief enjoining Defendants, their agents and employees, and all persons acting in concert or participation with Defendants, from engaging in any further use of LQD's proprietary assets, and confidential information.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.    Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any LQD Assets or confidential, private or proprietary information of Plaintiff;

B.    Requiring that Defendants return to Plaintiff all LQD Assets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.    Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.    Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.    Awarding costs and counsel fees incurred in this action as required;

F.    Awarding treble damages as allowed by law;

G.    Ordering expedited discovery; and

H.    Granting such other and further relief as this Court deems equitable and just.

**COUNT FOUR**
**ALL DEFENDANTS**
**(Tortious Interference with Prospective Business Relations)**

110.  Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein.

111.  Plaintiff has a reasonable expectation that it would have consummated a substantial number of transactions with existing and potential customers that were misappropriated by the

Defendants. Thus, Plaintiff reasonably expected to obtain economic advantages from its relationships with its customers and potential customers but for Defendants' actions.

112. Upon information and belief, a substantial number of customers and potential customers who had previously been contacted by Plaintiff, or imminently would have been contacted by Plaintiff, have been contacted and diverted by the Defendants.

113. The Defendants intentionally, improperly, with malice and without lawful justification or excuse, interfered with, and continue to interfere with, Plaintiff's existing and prospective business relationships, including, without limitation, by directly and/or indirectly soliciting them and/or diverting them to Fundkite and/or AKF.

114. As a result, Plaintiff has suffered and will continue to suffer injury and damages.

115. As a result of Defendants' actions, Plaintiff has suffered and will continue to suffer injury and damages, including opportunity costs and punitive damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.   Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any LQD Assets or confidential, private or proprietary information of Plaintiff;

B.   Requiring that Defendants return to Plaintiff all LQD Assets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.   Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of

such information on a confidential basis at Defendants' cost;

D.    Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.    Awarding costs and counsel fees incurred in this action as required;

F.    Awarding treble damages as allowed by law;

G.    Ordering expedited discovery; and

H.    Granting such other and further relief as this Court deems equitable and just.

## COUNT FIVE
## ALL DEFENDANTS
### (Unjust Enrichment)

116.  Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein.

117.  Through their unauthorized use, disclosure, and retention of the Plaintiff's proprietary assets, Defendants received significant benefits at the expense of Plaintiff.

118.  Because Defendants did not bargain for or otherwise compensate Plaintiff for the proprietary assets, which were developed by Plaintiff at its expense, Defendants have been unjustly enriched. It would be unjust for Defendants to retain the benefit of the proprietary assets without paying to Plaintiff the value of the benefit conferred.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.    Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any LQD Assets or confidential, private or proprietary information of Plaintiff;

B.    Requiring that Defendants return to Plaintiff all LQD Assets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents,    e-mails,    customer    lists,    contact    information,

spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.    Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.    Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.    Awarding costs and counsel fees incurred in this action as required;

F.    Awarding treble damages as allowed by law;

G.    Ordering expedited discovery; and

H.    Granting such other and further relief as this Court deems equitable and just.

**COUNT SIX**
**ALL DEFENDANTS**
**(Injunctive Relief)**

119.  Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein.

120.  Plaintiff seeks a preliminary and permanent injunction barring Defendants from using and disclosing Plaintiff's LQD Assets to any third-party.

121.  Defendants' unauthorized use and disclosure of Plaintiff's LQD Assets, among other things, constitutes misappropriation of trade secrets under the Defense of Trade Secrets Act.

122.  Defendants' activities threaten Plaintiff with immediate and irreparable harm in that Defendants' continued use and disclosure of LQD Assets will diminish the value of this information and Plaintiff's investment therein, and cause Plaintiff to suffer a loss of business. For Plaintiff to be made whole, Plaintiff must regain the exclusive use of its LQD Assets,

proprietary documents and confidential information, which form the basis of its competitive edge in the marketplace.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.  Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any LQD Assets or confidential, private or proprietary information of Plaintiff;

B.  Requiring that Defendants return to Plaintiff all LQD Assets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.  Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.  Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.  Awarding costs and counsel fees incurred in this action as required;

F.  Awarding treble damages as allowed by law;

G.  Ordering expedited discovery; and

H.  Granting such other and further relief as this Court deems equitable and just.

## COUNT SEVEN
## DEFENDANT ROSE
### (Conversion)

123.  Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein.

124. LQD was the owner of the proprietary assets and did not authorize either of the Defendants to use or otherwise distribute the proprietary assets.

125. In other words, LQD has a right to its proprietary assets, and has an absolute and unconditional right to the immediate possession of its proprietary assets.

126. Defendants insidiously and unlawfully converted and used the proprietary assets in a manner that was inconsistent with LQD's interests and in a manner that benefited Defendants to the detriment of LQD.

127. Defendants wrongfully and without authorization assumed control and dominion, or ownership over LQD's proprietary assets.

128. LQD has demanded the return, and destruction on all Defendants systems, of such proprietary assets, yet Defendants have not done so.

129. As a result of Defendants' actions, LQD has suffered material harm.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.  Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any LQD Assets or confidential, private or proprietary information of Plaintiff;

B.  Requiring that Defendants return to Plaintiff all LQD Assets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.  Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.  Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.  Awarding costs and counsel fees incurred in this action as required;

F.  Awarding treble damages as allowed by law;

G.  Ordering expedited discovery; and

H.  Granting such other and further relief as this Court deems equitable and just.

**COUNT EIGHT**
**DEFENDANT ROSE**
**(Breach of Fiduciary Duty and Duty of Loyalty)**

130.  Plaintiff repeats and re-alleges each and every factual allegation set forth in this Complaint as if set forth herein.

131.  During his tenure with Plaintiff, Defendant Rose acquired knowledge of Plaintiff's proprietary assets, which Plaintiff communicated in confidence to Rose for sole use in his position with LQD.

132.  Rose, by virtue of his position with LQD, at all times, owed Plaintiff a duty of loyalty and was obligated to act with the utmost good faith, and in the best interest of Plaintiff.

133.  Plaintiff was entitled to place its trust and confidence in Rose, and Plaintiff did rely on Rose faithfully performing his obligations consistently with his duties.

134.  Rose's duty of loyalty included the obligation to disavow any corporate opportunity where his private interest conflicted with that of LQD. Rose could not usurp a business opportunity which was developed through the use of LQD's assets.

135.  Rose knowingly, willingly, and with malice, breached his duty of loyalty to Plaintiff by using Plaintiff's proprietary assets in a disloyal manner to LQD and engaging in acts that undermined Plaintiff's business operations. By way of illustration, only, Rose breached his fiduciary duties by, *among other actions and opportunities*, usurping and disrupting LQD's

business relation and opportunities with TGC, Life Enhancement Services, and Buffalo Biodiesel Inc.

136. Rose acted in a manner inconsistent with agency and trust by conspiring with Fundkite and/or AKF to misappropriate Plaintiff's proprietary assets to the injury of Plaintiff and for the benefit of Defendants, and by acting against Plaintiff's interests while still in a contractual relationship with Plaintiff.

137. As a direct and proximate cause of Rose's breach of his duties, Plaintiff has been and is being harmed, and faces risk of irreparable harm.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.  Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any LQD Assets or confidential, private or proprietary information of Plaintiff;

B.  Requiring that Defendants return to Plaintiff all LQD Assets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.  Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.  Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.  Awarding costs and counsel fees incurred in this action as required;

F.  Awarding treble damages as allowed by law;

G.  Ordering expedited discovery; and

H.      Granting such other and further relief as this Court deems equitable and just.


## COUNT NINE
## ALL DEFENDANTS
### (Violation of the Federal Computer Fraud and Abuse Act 18 U.S.C. § 1030)

138.  Plaintiff hereby restates and re-alleges each of the allegations contained in the foregoing

paragraphs as if set forth fully herein.

139.  Defendant Rose intentionally accessed a computer.

140.  Defendant Rose lacked authority to access the computer or exceeded granted authority to

access the computer.

141.  Defendant Rose obtained data from the computer.

142.  Upon information and belief, Defendant Rose damaged or caused loss of such data, in

that, after Defendant Rose's misconduct LQD did not have access to such data.

143.  Defendant's Rose conduct caused a loss of $5,000 or more during a one-year span.

144.  Under the Federal Computer Fraud and Abuse Act, Plaintiff is entitled to an award of all

reasonable costs incurred in responding to Defendants' offenses, as well as compensatory and

punitive damages and the cost of the suit, including attorney's fees.


   **WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.      Enjoining and restraining Defendants and their agents (and requiring
        the Defendant to not permit any parties acting on their behalf) from
        publishing, releasing, disclosing or using any LQD Assets or
        confidential, private or proprietary information of Plaintiff;

B.      Requiring that Defendants return to Plaintiff all LQD Assets or
        confidential, private or proprietary information (including but not
        limited to customer lists and customer contact information) and
        copies thereof to Plaintiff, including but not limited to, Plaintiff's
        documents, e-mails, customer lists, contact information,
        spreadsheets, computer files, financial information and all other
        information concerning Plaintiff;

29

C.  Directing Defendants to allow Plaintiff, or its agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.  Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.  Awarding costs and counsel fees incurred in this action as required;

F.  Awarding treble damages as allowed by law;

G.  Ordering expedited discovery; and

H.  Granting such other and further relief as this Court deems equitable and just.

**COUNT TEN**
**DEFENDANT ROSE**
**(Breach of Contract)**

145.  Plaintiff repeats and re-alleges each of the factual allegations set forth in this Complaint as if set forth herein.

146.  Defendant Rose, as discussed *supra*, had an enforceable agreement with LQD.

147.  Defendant Rose, as discussed *supra*, breached his contract with LQD.

148.  As a result of such breach of contract, Defendant Rose has caused LQD an amount of damages to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

A.  Enjoining and restraining Defendants and their agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any LQD Assets or confidential, private or proprietary information of Plaintiff;

B.  Requiring that Defendants return to Plaintiff all LQD Assets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's

documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.   Directing Defendants to allow Plaintiff, or its agent, access to Defendant' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D.   Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.   Awarding costs and reasonable counsel fees incurred in this action as required;

F.   Awarding treble damages as allowed by law;

G.   Ordering expedited discovery; and

H.   Granting such other and further relief as this Court deems equitable and just.

**COUNT ELEVEN**
**DEFENDANTS FUNDKITE AND AKF**
**(Aiding and Abetting Breach of Fiduciary Duty)**

149.   Plaintiff repeats and realleges the allegations contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

150.   Defendants Fundkite and AKF had actual knowledge of the violations of fiduciary duty discussed *supra.*

151.   Notwithstanding this knowledge, Defendants Fundkite and AKF each committed acts in furtherance of the breaches of fiduciary duty discussed *supra.*

152.   Notwithstanding this knowledge, Fundkite and AKF substantially assisted in the breach of fiduciary, and induced such breach of fiduciary duty, as discussed *supra*.

153.   As a direct and proximate result of Fundkite's and AKF's conduct, Plaintiff was damaged at an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Fundkite and/or AKF as follows:

A.      Enjoining and restraining Fundkite and/or AKF and its agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any LQD Assets or confidential, private or proprietary information of Plaintiff;

B.      Requiring that Fundkite and/or AKF return to Plaintiff all LQD Assets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.      Directing Fundkite and/or AKF to allow Plaintiff, or its agent, access to Fundkite's and/or AKF's business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Fundkite's and/or AKF's cost;

D.      Awarding compensatory, consequential and punitive damages arising out of the Fundkite's and/or AKF's willful, wanton and malicious conduct;

F.      Awarding costs and counsel fees incurred in this action as required;

F.      Awarding treble damages as allowed by law;

G.      Ordering expedited discovery; and

H.      Granting such other and further relief as this Court deems equitable and just.

## COUNT TWELVE
## DEFENDANTD FUNDKITE AND AKF
### (Aiding and Abetting Conversion)

154.    Plaintiff repeats and realleges the allegations contained in the prior paragraphs of this Complaint as if fully set forth at length herein.

155.    Defendant Fundkite and AKF had actual knowledge of the conversion of Plaintiff's confidential information, and proprietary data.

156. Notwithstanding this knowledge, Defendants Fundkite and AKF each committed acts in furtherance of the breaches of conversion discussed *supra.*

157. Notwithstanding this knowledge, Defendants Fundkite and AKF substantially assisted in the conversion, and induced such conversion, as discussed *supra*.

158. As a direct and proximate result of Defendant Fundkite's and AKF's conduct, Plaintiff has been damaged at an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Fundkite and/or AKF as follows:

A. Enjoining and restraining Fundkite and/or AKF and its agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any LQD Assets or confidential, private or proprietary information of Plaintiff;

B. Requiring that Fundkite and/or AKF return to Plaintiff all LQD Assets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C. Directing Defendants to allow Plaintiff, or its agent, access to Fundkite's and/or AKF's business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D. Awarding compensatory, consequential and punitive damages arising out of the Fundkite's and/or AKF's willful, wanton and malicious conduct;

E. Awarding costs and counsel fees incurred in this action as required;

F. Awarding treble damages as allowed by law;

G. Ordering expedited discovery; and

H. Granting such other and further relief as this Court deems equitable and just.

## COUNT THIRTEEN
## DEFENDANT ROSE
### (Breach of the Covenant of Good Faith and Fair Dealing)

159.    Plaintiff repeats and realleges all the factual allegations of the Complaint as if set forth at length herein.

160.    Plaintiff entered into contracts with Rose.

161.    The parties to the contract entered into a covenant of good faith and fair dealing.

162.    By his acts and omissions, Rose has breached the covenant of good faith and fair dealing.

163.    Plaintiff has been harmed by such breach in an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Rose as follows:

A.      Enjoining and restraining Rose and his agents (and requiring the Defendant to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any LQD Assets or confidential, private or proprietary information of Plaintiff;

B.      Requiring that Rose return to Plaintiff all LQD Assets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C.      Directing Rose to allow Plaintiff, or his agent, access to Defendant' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Rose's cost;

D.      Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.      Awarding costs and counsel fees incurred in this action as required;

F.      Awarding treble damages as allowed by law;

G.      Ordering expedited discovery; and

H.     Granting such other and further relief as this Court deems equitable and just.

**COUNT FOURTEEN**
**DEFENDANTS AKF AND FUNDKITE**
**(Tortious Inducement of a Breach of Fiduciary Duty)**

164. Plaintiff repeats and realleges all the factual allegations of the Complaint as if set forth at length herein.

165. At all relevant times, AKF and Fundkite knew that Rose performed work on behalf of LQD as a business development officer, and was entrusted with various business relationships formed between LQD and its borrowers, and prospective borrowers. AKF and Fundkite also knew that Rose owed duties and loyalty and good faith to LQD, and that he was prohibited from usurping business opportunities that were developed through the use of LQD's assets.

166. AKF and Fundkite unlawfully colluded with Rose and induced his breach of fiduciary duties by encouraging him to divert and usurp opportunities that should have, legally, been presented to LQD prior to others in the marketplace.

167. AKF and Fundkite knowingly induced and participated in such breach, and they have knowingly accepted the benefits of such breach.

168. LQD has been damaged by such conduct.

**WHEREFORE**, Plaintiff demands judgment against AFK and Fundkite as follows:

A.     Enjoining and restraining AKF and Fundkite and their agents (and requiring the Defendants to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any LQD Assets or confidential, private or proprietary information of Plaintiff;

B.     Requiring that AKF and Fundkite and their agents return to Plaintiff all LQD Assets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and

all other information concerning Plaintiff;

C.     Directing AKF and Fundkite to allow Plaintiff, or his agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at AKF's and Fundkite's cost;

D.     Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E.     Awarding costs and counsel fees incurred in this action as required;

F.     Awarding treble damages as allowed by law;

G.     Ordering expedited discovery; and

H.     Granting such other and further relief as this Court deems equitable and just.

## COUNT FIFTEEN
## ALL DEFENDANTS
### (Civil Conspiracy)

169. Plaintiff repeats and realleges all the factual allegations of the Complaint as if set forth at length herein.

170. LQD made substantial investments in their proprietary assets, including the LQD Assets.

171. Defendants all agreed and conspired to commit acts with regard to the conversion and misappropriation of LQD's property, proprietary assets, and LQD Assets.

172. Each Defendant individually conspired with all of the other Defendants (i.e., the members of the conspiracy) to accomplish such misappropriations and conversions in furtherance of their common scheme.

173. By their individual and collective actions, Defendants knowingly and substantially assisted in the conspiracy to convert and misappropriate LQD's LQD Assets, LQD's proprietary information, data, and property as discussed *supra* in furtherance of their

common scheme to convert and misappropriate such rights and interests in such assets and property.

174. As a direct and proximate result of Defendants and each of the Defendants' tortious conduct, LQD suffered, and continues to suffer, damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Enjoining and restraining all Defendants and their agents (and requiring the Defendants to not permit any parties acting on their behalf) from publishing, releasing, disclosing or using any LQD Assets or confidential, private or proprietary information of Plaintiff;

B. Requiring that Defendants return to Plaintiff all LQD Assets or confidential, private or proprietary information (including but not limited to customer lists and customer contact information) and copies thereof to Plaintiff, including but not limited to, Plaintiff's documents, e-mails, customer lists, contact information, spreadsheets, computer files, financial information and all other information concerning Plaintiff;

C. Directing Defendants to allow Plaintiff, or his agent, access to Defendants' business and personal computers and electronic storage devices to determine the extent of information and Plaintiff's corporate property that was copied from the computer network(s) of Plaintiff, which can be accomplished through third-party review of such information on a confidential basis at Defendants' cost;

D. Awarding compensatory, consequential and punitive damages arising out of the Defendants' willful, wanton and malicious conduct;

E. Awarding costs and counsel fees incurred in this action as required;

F. Awarding treble damages as allowed by law;

G. Ordering expedited discovery; and

H. Granting such other and further relief as this Court deems equitable and just.

Respectfully submitted,

By: LQD Business Finance, LLC, *Plaintiff*

/s/ Zane D. Smith
Zane D. Smith, one of its Attorneys
Zane D. Smith – ARDC #6184814
ZANE D. SMITH & ASSOCIATES, LTD.
221 North LaSalle Street – Suite 1320
Chicago, Illinois 60601
(312) 245-0031
zane@zanesmith.com

David Graff, Esq.-Admitted *Pro Hac Vice*
Graff Silverstein LLP
60 Hawthorne Way
Hartsdale, New York 10530
(212)-381-6055
dgraff@graffsilversteinllp.com
*Attorneys for Plaintiff LQD Business Finance, LLC*

## DEMAND FOR JURY DEMAND

Pursuant to the Rule 38 of the Federal Rules of Civil Procedure, Plaintiff LQD hereby demands trial by jury on all issues so triable.

Dated: November 15, 2019

LQD Business Finance, LLC, *Plaintiff*

/s/ Zane D. Smith
Zane D. Smith, one of its Attorneys
Zane D. Smith – ARDC #6184814
ZANE D. SMITH & ASSOCIATES, LTD.
221 North LaSalle Street – Suite 1320
Chicago, Illinois 60601
(312) 245-0031
zane@zanesmith.com

David Graff, Esq.-Admitted *Pro Hac Vice*
Graff Silverstein LLP
60 Hawthorne Way
Hartsdale, New York 10530
(212)-381-6055
dgraff@graffsilversteinllp.com
*Attorneys for Plaintiff LQD Business Finance, LLC*

<u>**VERIFICATION**</u>

I, GEORGE SOURI, declare as follows:

    1.      I am the managing member of LQD Business Finance, LLC.

    2.      I have personal knowledge of each and every fact alleged in this Complaint and stated herein in this Verification, and could competently testify thereto if called as a witness, except for the facts alleged upon information and belief.

    3.      I declare, under penalty of perjury under the laws of the United States of America that the foregoing factual allegations are true and correct, except for the allegations made upon information and belief.

    Executed this 15th day of November 2019 at Chicago, Illinois.


                                   *George Souri*
                                   George Souri, CEO
                                   LQD Business Finance, LLC

Ex. A



# INDEPENDENT CONTRACTOR AGREEMENT

This independent contractor agreement is between LQD Business Finance, a Delaware Corporation, (the "**Company**"), and Azizuddin Rose _____, (the "**Contractor**").

1.    **ENGAGEMENT.** The Company retains the Contractor to provide, and the Contractor shall provide business development services to the Company as a Business Finance Consultant, which shall include, without limitation, contacting prospective customers on behalf of the Company and selling the Company's financial products to prospective customers, (the "**Services**").

2.    **TERM.** This agreement will become effective as of August 17, 2015, and will terminate on November 15, 2015, unless it is terminated earlier in accordance with subsection 2(b) of this agreement, (the "**Term**"). This agreement may be terminated: (i) by the Company at any time, with or without cause, and without notice, or (ii) by the Contractor upon one week's written notice to the Company, with or without cause;

3.    **COMPENSATION.** The Company shall pay the Contractor as follows:

    (a) **Training Period.** During the Training Period, which shall begin on August 17, 2016 and end on the earlier of (i) September 4, 2016, and (ii) such date as the Company deems appropriate, the Company shall pay the Contractor a salary of $800.00 per week.

    (b) **Work Compensation.** After the completion of the Training Period, the Company shall pay the Contractor as follows:

       i.   For each call made and connected, the Company shall pay the Contractor $ .50;

       ii.   For each Application completed, the Company shall pay the Contractor $60.00;

       iii.  For each set of loan documents completed, the Company shall pay the Contractor $125.00;

       iv.  In addition to the foregoing compensation, the Company shall pay the Contractor a Commission as follows:

| Loan APR % | Commission Rate |
|---|---|
| 18-21.99 | 1.50% |
| 22-25.99 | 2.00% |
| 26-29.99 | 2.25% |
| 30-33.99 | 2.50% |
| 34-37.99 | 3.00% |
| 38 + | 3.50% |

(c) **No Other Compensation**. The compensation set out above will be the Contractor's sole compensation under this agreement.

(d) **Expenses**. The Company shall reimburse the Contractor for any ordinary and necessary expenses incurred on behalf of the Company, provided that (i) the Contractor shall submit a written expense report, including all receipts to the Company, and (ii) the Company approves the expenses enumerated on the Contractor's expense report.

(e) **Taxes**. The Contractor is solely responsible for the payment of all income, social security, employment-related, or other taxes incurred as a result of the performance of the Services by the Contractor under this agreement, and for all obligations, reports, and timely notifications relating to those taxes. The Company has no obligation to pay or withhold any sums for those taxes.

(f) **Other Benefits.** The Contractor has no claim against the Company under this agreement or otherwise for vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability benefits, unemployment insurance benefits, or employee benefits of any kind.

4.     **CONFIDENTIALITY.**   During the Term, the Contractor may have access to or receive certain information of or about the Company that the Company designates as confidential or that, under the circumstances surrounding disclosure, ought to be treated as confidential by the Contractor ("**Confidential Information**"). Confidential Information includes information relating to the Company or its current or proposed business, financial statements, budgets and projections, customer identifying information, potential and intended customers, employers, products, computer programs, specifications, manuals, software, analyses, strategies, marketing plans, business plans, and other confidential information, provided orally, in writing, by drawings, or by any other media. The Contractor will treat the Confidential Information as confidential and will not disclose it to any third party or use it for any purpose but to fulfill

[his][her][its] obligations in this agreement. In addition, the Contractor shall use due care and diligence to prevent the unauthorized use or disclosure of such information. This Section 4 shall survive the termination of this Agreement and be in force in perpetuity.

(a) **Exceptions.** The obligations and restrictions in this Section 6 do not apply to that part of the Confidential Information the Contractor demonstrates:

    i. was or becomes generally publically available other than as a result of a disclosure by the Contractor in violation of this agreement;

    ii. was or becomes available to the Contractor on a nonconfidential basis before its disclosure to the Contractor by the Company, but only if: (i) the source of such information is not bound by a confidentiality agreement with the Company or is not otherwise prohibited from transmitting the information to the Contractor by a contractual, legal, fiduciary, or other obligation; and (ii) the Contractor provides the Company with written notice of [his][her][its] prior possession either (i) before the effective date of this agreement or (ii) if the Contractor later becomes aware (through disclosure to the Contractor) of any aspect of the Confidential Information as to which the Contractor had prior possession, promptly on the Contractor so becoming aware;

    iii. is requested or legally compelled (by oral questions, interrogatories, requests for information or documents, subpoena, civil or criminal investigative demand, or similar processes), or is required by a regulatory body, to be disclosed. However, the Contractor shall: (i) provide the Company with prompt notice of these requests or requirements before making a disclosure so that the Company may seek an appropriate protective order or other appropriate remedy; and (ii) provide reasonable assistance to the Company in obtaining any protective order.

(b) **Remedy.** Money damages may not be a sufficient remedy for any breach of this section by the Contractor and, in addition to all other remedies, the Company may seek (and may be entitled to) as a result of such breach, specific performance and injunctive or other equitable relief as a remedy.

5.     **NON-COMPETE.** During the Term, the Contractor is free to engage in other independent contracting activities, except that the Contractor may not accept work, enter into contracts, or accept obligations inconsistent with, competitive to, or incompatible with the Contractor's obligations or the scope of work to be performed for the Company under this agreement.

**6.      CHOICE OF LAW.**  The laws of the state of Illinois govern this agreement (without giving effect to its conflicts of law principles).

**7.      CHOICE OF FORUM.**  Both parties consent to the personal jurisdiction of the state and federal courts in Cook County, Illinois.

**8.      AMENDMENTS.**  No amendment to this agreement will be effective unless it is in writing and signed by a party or its authorized representative.

**9.      SEVERABILITY.**  If any one or more of the provisions contained in this agreement is, for any reason, held to be invalid, illegal, or unenforceable in any respect, that invalidity, illegality, or unenforceability will not affect any other provisions of this agreement, but this agreement will be construed as if those invalid, illegal, or unenforceable provisions had never been contained in it, unless the deletion of those provisions would result in such a material change so as to cause completion of the transactions contemplated by this agreement to be unreasonable.

**10.     WAIVER.**  No waiver of a breach, failure of any condition, or any right or remedy contained in or granted by the provisions of this agreement will be effective unless it is in writing and signed by the party waiving the breach, failure, right, or remedy. No waiver of any breach, failure, right, or remedy will be deemed a waiver of any other breach, failure, right, or remedy, whether or not similar, and no waiver will constitute a continuing waiver, unless the writing so specifies.

**11.     ENTIRE AGREEMENT.**  This agreement constitutes the final agreement of the parties. It is the complete and exclusive expression of the parties' agreement about the subject matter of this agreement. All prior and contemporaneous communications, negotiations, and agreements between the parties relating to the subject matter of this agreement are expressly merged into and superseded by this agreement. The provisions of this agreement may not be explained, supplemented, or qualified by evidence of trade usage or a prior course of dealings. Neither party was induced to enter this agreement by, and neither party is relying on, any statement, representation, warranty, or agreement of the other party except those set forth expressly in this agreement. Except as set forth expressly in this agreement, there are no conditions precedent to this agreement's effectiveness.

**12.     NECESSARY ACTS; FURTHER ASSURANCES.**  Each party shall use all reasonable efforts to take, or cause to be taken, all actions necessary or desirable to consummate and make effective the transactions this agreement contemplates or to evidence or carry out the intent and purposes of this agreement.

**Contractor**

Signed: _Azizuddin Rose_

Name: _Azizuddin Rose_

Date: _August 17, 2015_

**LQD Business Finance, LLC**

Signed: _____

George Souri, not individually, but solely on
behalf of LQD Business Finance, LLC

Date: _8/17/2015_

# Ex. B



| | |
|---|---|
| **From:** | Dean Rose |
| **Sent:** | Monday, April 1, 2019 4:31 PM |
| **To:** | Anna Andryeyeva |
| **Subject:** | Re: Funding Offer for BUFFALO BIODIESEL INC - Submission: 70044642 |
| **Attachments:** | 2019 03 21 Buffalo Biodiesel Inc Debt Schedule.xlsx |

I will request the exact balances as of today. In the meantime, I have attached their debt schedule, which is as of 3.21.19

Dean Rose | Business Finance Consultant
**LQD Business Finance**
Structured, Transparent, and Affordable Business Financing
| d. (312) 444-0557 | o. (855) 402-2077 | f. (855) 491-0797
| a. 329 West 18th Street, Suite 601, Chicago, IL 60616
| w. lqdfinance.com

The information contained in this transmission is intended only for the party to which it is addressed and may contain sensitive information or privileged material. If you are not the intended recipient of this information, please do not review, retransmit, disclose, disseminate, use, or take any action in reliance upon this information, and contact the sender and destroy all digital and printed copies. The information contained herein is not intended to provide investment, legal, or tax advice, nor a basis for any investment recommendation by LQD Business Finance or any of its affiliates (LQD). LQD assumes no liability for any reliance herein or for losses incurred as a result of investment actions based on materials contained herein.

**From:** Anna Andryeyeva <anna.a@fundkite.com>
**Sent:** Monday, April 1, 2019 3:57 PM
**To:** Dean Rose
**Subject:** RE: Funding Offer for BUFFALO BIODIESEL INC - Submission: 70044642

Can you give us the exact balances for mulligan and pay pal please

**Anna Andreyeva**
**Business Development**
**FundKite**
Iso Boarding Link : https://fundkite.com/iso2

**Download Submission Guidelines Here**



**Wall Street Plaza**
**88 Pine Street, 17th floor, New York, NY 10005**
Direct: **929-999-5400**
Cell: **718-902-9127**
Office: **212-952-0001 Ext 1004**
Web: **www.FundKite.com**

  

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damages arising from the use of the information contained herein by the email including damage from computer viruses.

**From:** Dean Rose <deanrose@lqdfinance.com>
**Sent:** Monday, April 1, 2019 3:31 PM
**To:** Anna Andryeyeva <anna.a@fundkite.com>
**Subject:** Re: Funding Offer for BUFFALO BIODIESEL INC - Submission: 70044642

Okay thanks. And CONGRATS on the new promotion.

Dean Rose | Business Finance Consultant
**LQD Business Finance**
Structured, Transparent, and Affordable Business Financing
| d. (312) 444-0557 | o. (855) 402-2077 | f. (855) 491-0797
| a. 329 West 18th Street, Suite 601, Chicago, IL 60616
| w. lqdfinance.com

The information contained in this transmission is intended only for the party to which it is addressed and may contain sensitive information or privileged material. If you are not the intended recipient of this information, please do not review, retransmit, disclose, disseminate, use, or take any action in reliance upon this information, and contact the sender and destroy all digital and printed copies. The information contained herein is not intended to provide investment, legal, or tax advice, nor a basis for any investment recommendation by LQD Business Finance or any of its affiliates (LQD). LQD assumes no liability for any reliance herein or for losses incurred as a result of investment actions based on materials contained herein.

**From:** Anna Andryeyeva <anna.a@fundkite.com>
**Sent:** Monday, April 1, 2019 2:18 PM
**To:** Dean Rose
**Subject:** RE: Funding Offer for BUFFALO BIODIESEL INC - Submission: 70044642

Im trying to reprice for either a consolidation or more money.

**Anna Andreyeva**
**Business Development**
**FundKite**
Iso Boarding Link : https://fundkite.com/iso2

Download Submission Guidelines Here



**Wall Street Plaza**
**88 Pine Street, 17th floor, New York, NY 10005**
Direct: **929-999-5400**
Cell: **718-902-9127**
Office: **212-952-0001 Ext 1004**
Web: **www.FundKite.com**



DISCLAIMER: This message is private to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be construed or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, viewing, altering, or disclosing this contents of this message. On FundKite accepts no responsibility for loss or damages arising from the use of the information contained by this email including damage from computer viruses.

**From:** Dean Rose <deanrose@lqdfinance.com>
**Sent:** Monday, April 1, 2019 2:37 PM
**To:** Anna Andryeyeva <anna.a@fundkite.com>
**Subject:** Re: Funding Offer for BUFFALO BIODIESEL INC - Submission: 70044642

Whats the most you think you guys could do?

Dean Rose | Business Finance Consultant
**LQD Business Finance**
Structured, Transparent, and Affordable Business Financing
| d. (312) 444-0557 | o. (855) 402-2077 | f. (855) 491-0797
| a. 329 West 18th Street, Suite 601, Chicago, IL 60616
| w. lqdfinance.com

The information contained in this transmission is intended only for the party to which it is addressed and may contain sensitive information or privileged material. If you are not the intended recipient of this information, please do not review, retransmit, disclose, disseminate, use, or take any action in reliance upon this information, and contact the sender and destroy all digital and printed copies. The information contained herein is not intended to provide investment, legal, or tax advice, nor a basis for any investment recommendation by LQD Business Finance or any of its affiliates (LQD). LQD assumes no liability for any reliance herein or for losses incurred as a result of investment actions based on materials contained herein.

**From:** Anna Andryeyeva <anna.a@fundkite.com>
**Sent:** Monday, April 1, 2019 1:29 PM
**To:** Dean Rose
**Subject:** RE: Funding Offer for BUFFALO BIODIESEL INC - Submission: 70044642

Wont be able to beat $500.

**Anna Andreyeva**
**Business Development**
**FundKite**
Iso Boarding Link : https://fundkite.com/iso2

**Download Submission Guidelines Here**



**Wall Street Plaza**
**88 Pine Street, 17th floor, New York, NY 10005**
Direct: **929-999-5400**
Cell: **718-902-9127**
Office: **212-952-0001 Ext 1004**
Web: **www.FundKite.com**

  

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual or entity to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. FundKite accepts no responsibility for loss or damages arising from the use of the information contained by this email including damages from viruses or malware.

**From:** Dean Rose <deanrose@lqdfinance.com>
**Sent:** Monday, April 1, 2019 2:06 PM
**To:** Anna Andryeyeva <anna.a@fundkite.com>; FundKite Offers <offers@fundkite.com>
**Subject:** Re: Funding Offer for BUFFALO BIODIESEL INC - Submission: 70044642

Merchant asked is you are able to offer a higher funding amount. He claims to have a $500k offer already.

Please advise.

Dean Rose | Business Finance Consultant
**LQD Business Finance**
Structured, Transparent, and Affordable Business Financing
| d. (312) 444-0557 | o. (855) 402-2077 | f. (855) 491-0797
| a. 329 West 18th Street, Suite 601, Chicago, IL 60616
| w. lqdfinance.com

The information contained in this transmission is intended only for the party to which it is addressed and may contain sensitive information or privileged material. If you are not the intended recipient of this information, please do not review, retransmit, disclose, disseminate, use, or take any action in reliance upon this information, and contact the sender and destroy all digital and printed copies. The information contained herein is not intended to provide investment, legal, or tax advice, nor a basis for any investment recommendation by LQD Business Finance or any of its affiliates (LQD). LQD assumes no liability for any reliance herein or for losses incurred as a result of investment actions based on materials contained herein.

**From:** FundKite Offers <offers@fundkite.com>
**Sent:** Monday, April 1, 2019 9:41 AM
**To:** workingcapfunder@gmail.com

**Cc:** Dean Rose; anna.a
**Subject:** Funding Offer for BUFFALO BIODIESEL INC - Submission: 70044642

## Funding Offer

| | |
|---|---|
| Merchant Name: | **BUFFALO BIODIESEL INC** |
| DBA: | |
| Submission Number: | **70044642** |
| Funding Amount: | **$ 163,000.00** |
| Receipts Purchased: | **$ 237,980.00** |
| Term In Months | **6** |
| Approximate Number Of Payments | **120** |
| Buy Rate: | **1.36** |
| Max Sell Rate: | **1.46** |
| Max Commission Rate: | **.10** |
| Max Commissions Amount: | **$ 16,300.00** |
| Approximate Daily Payment: | **$ 1,983.17** |
| Specified Percentage: | **6** |
| Offer Expires: | **2019-04-08** |
| Offer Conditions: | **3rd Position Offer.** |
| Program: | |

Reply to this email notification to accept this offer.
When requesting contracts please send
**Voided Check**
**Drivers License**
**Owner Cell Phone**
**Owner Email**



**Anna Andreyeva**
**Direct Line: 929-999-5400**



DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

Ex. C

*Ex C          10*

RE: Commission Statement LIFE ENHANCEMENT SERVICES LLC - Submission: 70024140



**Anna Andryeyeva**
Fri 6/8/2018 3:47 PM
To: ⬤ Dean Rose »

*1 of 2*          ◀ Reply | ⌄

Life Enhancement Services

| You forwarded this message on 6/8/2018 4:11 PM

Yes all set wire going out. Sorry for the delay. Also just as a verification is your company still named LQD cap or no?

**Anna Andreyeva**
**Business Development**
**FundKite**
Iso Boarding Link. : https://fundkite.com/iso2

Download Submission Guidelines Here

Wall Street Plaza
88 Pine Street, 17th floor, New York, NY 10005
/direct line: 929.999.5400 /tel. 212.952.0001 ext: 1004/ cell: 718.902.0127 fax: 212-409-8426 / web: https://FundKite.com

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be disclosed or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

**From:** Dean Rose <deanrose@lqdfinance.com>
**Sent:** Friday, June 8, 2018 4:44 PM
**To:** Anna Andryeyeva <anna.a@fundkite.com>
**Cc:** Steve Kamhi <steve.k@fundkite.com>
**Subject:** Re: Commission Statement LIFE ENHANCEMENT SERVICES LLC - Submission: 70024140

Did your underwriter get the docusign, and wire the commission?

Ex C

Submission Received for  ENHANCEMENT SERVICES LLC

2 of 2

FS    FundKite Submissions
      Thu 5/24/2018 10:34 AM
      To: workingcapfunder@gmail.com

Life Enhancement Services

## Submission Received

The following Submissions has been received.

| | |
|---|---|
| Assigned To: | **LQD Business Finance** |
| Submission Number: | **70024140** |
| Merchant Name: | **LIFE ENHANCEMENT SERVICES LLC** |
| DBA: | |

Download Submission Guidelines Here



**Submissions**

/tel: **929-999-7500** /fax: 212-409-8426 / web: **https://FundKite.com**

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

Ex. D

ExD

| | |
|---|---|
| **From:** | Alex Shvarts <alex.s@fundkite.com> |
| **Sent:** | Thursday, June 20, 2019 5:44 PM |
| **To:** | George Souri |
| **Cc:** | FundKite Accounting; Egor Gagarin; Steve Kamhi; Oleg Mistechkin |
| **Subject:** | Re: 🏴 Commission Statement TODAYS GROWTH CONSULTANT INC - Submission: 70049851 |

George,

Actually the ISO agreement is setup, signed with a voided check, W9 and all with Deans information and not yours.

I suggest you get with Dean and resolve the matter amicably and stop looking for us to get in the middle.

We are quiet firm on our position.

Until we get a full release and indemnification we will not release any funds to anyone.

As a formality all rights reserved.

**FundKite**
**Alex Shvarts**
**88 Pine Street, 17th FL, New York 10005**
/direct: 347-788-8900 /tel: **212.952.0001** ext: **1002** /fax: 212-409-8426

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

On Jun 20, 2019, at 6:34 PM, George Souri <georgesouri@lqdfinance.com> wrote:

Alex,

We have no intention of settling anything with Dean Rose. We have a history of deals being submitted to Fundkite from Dean's LQD email dating back to August of 2018. Furthermore, when the relationship was set up, according to Steve and Igor when I spoke to them earlier this week, the ISO relationship was set up as LQD. Therefore, it is our position that not only is the commission for Today's Growth due to LQD, but that these back commissions are also due. In addition, as Today's Growth was an LQD borrower that was unlawfully coopted, we feel that we would be entitled to additional damages for lost revenues.

As I said before, if you want to resolve this thing amicably, then we are willing to be reasonable and also indemnify you from any claims that Dean Rose might raise so you are covered with respect to any liability there. I can tell you now that he has no claims and we have a documented history of Dean Rose acting in an unlawful manner. I welcome a conversation, but if you are not

willing to discuss the matter, then we will have no choice but to pursue legal claims against Fundkite. Again, my intent is not to threaten you or pound my chest, but rather to be transparent as to the situation and our intentions. We simply cannot let a BDO act in this way and not send an absolute signal to the market that such behavior will not be tolerated by LQD and that we will absolutely pursue all legal remedies available to us, and I expect you would act in a similar manner. I hope we are able to speak and avoid litigation.

George Souri | CEO
**LQD Business Finance**
Structured, Transparent, and Affordable Business Financing
| d. 312-929-0979 | o. (855) 402-2077 | f. (855) 491-0797
| a. 329 West 18th Street, Suite 601, Chicago, IL 60616
| w. lqdfinance.com

DISCLAIMER: Nothing in this email shall be construed as financial, operational, legal, business, or tax advice. Nothing in this email is an offer or binding agreement. Nothing in this email is a waiver or release and LQD reserves all rights.
CONFIDENTIALITY: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

**From:** Alex Shvarts <alex.s@fundkite.com>
**Sent:** Thursday, June 20, 2019 12:08 PM
**To:** Dean Rose <dean@securecapp.com>; George Souri <georgesouri@lqdfinance.com>
**Cc:** FundKite Accounting <accounting@fundkite.com>; Egor Gagarin <egor.g@fundkite.com>; Steve Kamhi <steve.k@fundkite.com>
**Subject:** Re: 📄 Commission Statement TODAYS GROWTH CONSULTANT INC - Submission: 70049851
**Importance:** High

Gentlemen,

At this point, in order for us to release the funds that we currently hold, please discuss resolution of this matter between yourselves and provide our for our review a proposed draft of the General Release and Indemnity agreement, fully releasing us from any liability with respect to the released funds.

Very truly yours,

**FundKite**
**Alex Shvarts**
**88 Pine Street, 17fl, New York, NY 10005**
/direct: 347-788-8900 /tel: 212.952.0001 ext: 1002 /fax: 212-409-8426 / web: https://fundkite.com

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have

received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

Ex. E

**From:**      Egor Gagarin <egor.g@fundkite.com>
**Sent:**      Wednesday, June 5, 2019 4:16 PM
**To:**        Dean Rose
**Subject:**    Re: New Submission - Today's Growth

If you want to cut commission more we can. I already brought it down by paying you 6 points rather than 10.

Is this the merchants request?

**Egor Gagarin**
**Business Development**
**FundKite**

**Download Submission Guidelines Here**
ISO Boarding Link Here: **https://fundkite.com/iso2/**

**Wall Street Plaza**
**88 Pine Street, 17th floor, New York, NY 10005**
Direct: **929-443-3300**
Office: **212-952-0001 Ext 10023**
Web: **www.FundKite.com**

  

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

**From:** Dean Rose <deanrose@lqdfinance.com>
**Sent:** Wednesday, June 5, 2019 5:05:47 PM
**To:** Egor Gagarin
**Subject:** Re: New Submission - Today's Growth

Anyway to come down on buy rate?

Dean Rose | Business Finance Consultant
LQD Business Finance
Structured, Transparent, and Affordable Business Financing
| d. 312-444-0557 | o. (855) 402-2077 | f. (855) 491-0797
| a. 329 West 18th Street, Suite 601, Chicago, IL 60616
| w. lqdfinance.com

DISCLAIMER: Nothing in this email shall be construed as financial, operational, legal, business, or tax advice. Nothing in this email is an offer or binding agreement. Nothing in this email is a waiver or release and LQD reserves all rights.

CONFIDENTIALITY: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from

disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

---

**From:** Egor Gagarin <egor.g@fundkite.com>
**Sent:** Wednesday, June 5, 2019 9:26:19 AM
**To:** Dean Rose; FundKite Submission
**Subject:** Re: New Submission - Today's Growth

Good morning Dean,

I want to push this to pricing but I need to know what they do, whats the industry.

**Egor Gagarin**
**Business Development**
**FundKite**

**Download Submission Guidelines Here**
ISO Boarding Link Here: **https://fundkite.com/iso2/**

**Wall Street Plaza**
**88 Pine Street, 17th floor, New York, NY 10005**
Direct: **929-443-3300**
Office: **212-952-0001 Ext 10023**
Web: **www.FundKite.com**

  

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

---

**From:** Dean Rose <deanrose@lqdfinance.com>
**Sent:** Tuesday, June 4, 2019 1:30:28 PM
**To:** Egor Gagarin; FundKite Submission
**Cc:** Steve Kamhi
**Subject:** Re: New Submission - Today's Growth

Egor,

I am submitting a new deal for consideration, called Today's Growth. This is the deal we spoke about last week. The company is looking for $1,700,000 (in one or more positions) and is looking to close and fund before Friday of this week.

The company is 100% debt free.

Please advise

Dean Rose

Dean Rose | Business Finance Consultant
**LQD Business Finance**
Structured, Transparent, and Affordable Business Financing
| d. 312-444-0557 | o. (855) 402-2077 | f. (855) 491-0797
| a. 329 West 18th Street, Suite 601, Chicago, IL 60616
| w. lqdfinance.com

DISCLAIMER:  Nothing in this email shall be construed as financial, operational, legal, business, or tax advice. Nothing in this email is an offer or binding agreement. Nothing in this email is a waiver or release and LQD reserves all rights.

CONFIDENTIALITY: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

Ex. F

| From: | DO NOT REPLY - FundKite <accounting@fundkite.com> |
| Sent: | Thursday, June 13, 2019 3:22 PM |
| To: | dean@securecapp.com; Dean Rose |
| Cc: | egor.g |
| Subject: | Commission Statement TODAYS GROWTH CONSULTANT INC. - Submission: 70049684 |

## Congratulations Your Deal Funded!!!

## Here is Your Commission Statement.

| Merchant Name: | **TODAYS GROWTH CONSULTANT INC.** |
| DBA: | **INCOME STORE** |
| Submission Number: | **70049684** |
| Funding Amount: | **$300,000.00** |
| Commissions Amount: | **$18,000.00** |

You will receive a separate email when we initiate commission payment.

**Commissions on Reverse Consolidations are paid weekly based on deployment amounts.



**FundKite**

**88 Pine St, 17th Floor, New York, NY 10005**

/tel: **212.952.0001** /fax: 212-409-8426 / web: **https://FundKite.com**

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

| | |
|---|---|
| **From:** | DO NOT REPLY - FundKite <accounting@fundkite.com> |
| **Sent:** | Wednesday, June 12, 2019 6:12 PM |
| **To:** | dean@securecapp.com; Dean Rose |
| **Cc:** | egor.g |
| **Subject:** | Commission Statement TODAYS GROWTH CONSULTANT INC - Submission: 70049851 |

## Congratulations Your Deal Funded!!!

## Here is Your Commission Statement.

| | |
|---|---|
| Merchant Name: | **TODAYS GROWTH CONSULTANT INC** |
| DBA: | |
| Submission Number: | **70049851** |
| Funding Amount: | **$1,000,000.00** |
| Commissions Amount: | **$60,000.00** |

You will receive a separate email when we initiate commission payment.

\*\*Commissions on Reverse Consolidations are paid weekly based on deployment amounts.



**FundKite**

**88 Pine St, 17th Floor, New York, NY 10005**

/tel: **212.952.0001** /fax: 212-409-8426 / web: **https://FundKite.com**

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

# Ex. G

| **From:** | FundKite Collections <collections@fundkite.com> |
| **Sent:** | Wednesday, October 24, 2018 3:18 PM |
| **To:** | workingcapfunder@gmail.com; Dean Rose |
| **Subject:** | 🏴 Commission Statement LIFE ENHANCEMENT SERVICES LLC - Submission: 70032842 |

## Commission Paid.

| | |
|---|---|
| Merchant Name: | **LIFE ENHANCEMENT SERVICES LLC** |
| DBA: | |
| Submission Number: | **70032842** |
| Funding Amount: | **$170,000.00** |
| Commissions Amount: | **$11,900.00** |
| Account Number: | **135518238** |

Commissions have been sent via ACH credit to your registered bank account. You should receive your commission within 1 business days.



**FundKite**

**88 Pine St, 17th Floor, New York, NY 10005**

/tel: **212.952.0001** /fax: 212-409-8426 / web: **https://FundKite.com**

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

📢 Commission Statement  ENHANCEMENT SERVICES LLC - Submission: 70024140

FC  **FundKite Collections**
    Fri 6/8/2018 4:03 PM
    To: workingcapfunder@gmail.com;  ● Dean Rose  A

 ↩ Reply | ∨

Life Enhancement Services

You forwarded this message on 6/8/2018 4:10 PM

## Commission Paid.

| | |
|---|---|
| Merchant Name: | **LIFE ENHANCEMENT SERVICES LLC** |
| DBA: | |
| Submission Number: | 70024140 |
| Funding Amount: | $140,000.00 |
| Commissions Amount: | $12,600.00 |
| Account Number: | 135518238 |

Commissions have been sent via ACH credit to your registered bank account. You should receive your commission within 1 business days.



**FundKite**

**88 Pine St, 17th Floor, New York, NY 10005**

/tel: **212.952.0001** /fax: 212-409-8426 / web: **https://FundKite.com**

DISCLAIMER: This message is proprietary to FundKite, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. On FundKite accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.

# Ex. H

1676684-133

# FUNDKITE LLC

88 Pine Street 17th FL New York, NY 10001

## FUTURE RECEIVABLES SALE AND PURCHASE AGREEMENT

This agreement (this "Agreement"), dated 5/14/2019, between FUNDKITE LLC ("FKL") and the seller(s) listed herein (collectively, the "Seller") (all capitalized terms shall have the meanings ascribed to them below):

Business Legal Name: GCLEF'S EATERY & CATERING LLC
D/B/A: GCLEF'S EATERY & CATERING
Form of Business Entity: LLC                EIN #██████████
Physical Address: 1970 US HIGHWAY 259 SOUTH, DIANA, TX 75640
Mailing Address: 1970 US HIGHWAY 259 SOUTH, DIANA, TX 75640

| PURCHASE PRICE: | PURCHASED AMOUNT: | SPECIFIED PERCENTAGE: | INITIAL DAILY INSTALLMENT: |
|---|---|---|---|
| $ 8,500.00 | $ 12,665.00 | 25 % | $ 169.00 |

FOR THE SELLER #1                          FOR THE SELLER #2
By: _Shauri Milan Gibson_                   By: _____
Name: SHAURI M GIBSON                       Name: ISMIL R WYNN
Title: Owner/Agent/Manager                  Title: Owner/Agent/Manager
Email:                                      Email:
Business Phone:                             Business Phone:

*Accurate contact information is required to provide the Seller with important information regarding the Agreement.

Concurrently with the execution of this Agreement by Seller, and as condition to the effectiveness hereof, Seller has caused the Personal Guarantee of Performance in the form attached hereto as "Exhibit A" (the "Guaranty") to be signed and delivered to FKL by the following Owner(s)/Guarantor(s) of Seller.

OWNER/GUARANTOR #1                          OWNER/GUARANTOR #2
By: _Shauri Milan Gibson_                   By: _____
Name: SHAURI M GIBSON                       Name: ISMIL R WYNN
SSN: ██████                                 SSN: ██████
Phone: ███████████                          Phone:
Address: ████████ 80 EAST, GLADEWATER,      Address: 3401 US HIGHWAY 259 NORTH APARTMENT
TX 75647                                    #827, LONGVIEW, TX 75605

Furthermore, in the event the Seller and/or Guarantor are comprised of more than one entity and/or individuals, then ALL such entities and/or individuals, respectively, shall sign the Addendum to this Agreement in the form attached hereto as Exhibit B (the "Addendum").

WHEREAS, Seller is desirous to sell to FKL, and FKL is desirous to purchase from Seller a Specified Percentage of the Seller's Future Receipts, but only on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, for good and valuable consideration, the mutual receipts and sufficiency of which is hereby acknowledged by both parties, FKL and Seller hereby agree to the foregoing and as follows:

### 1. Basic Terms and Definitions.

a. "Effective Date" shall mean the later of: (i) the date set forth in the preamble to this Agreement, and (ii) the date when FKL paid the Purchase Price to Seller.

b. "Specified Percentage" shall mean TWENTY FIVE PERCENT (25%) of each and every sum from sale made by Seller of Future Receipts.

c. "Future Receipts" shall mean, collectively, all of Seller's receipts of monies for the sale of its goods and services that monies shall be paid and delivered to Seller by Seller's customers and/or other vendees after the Effective Date of this Agreement; which payments or deliveries of monies can be made in the form of cash, check, credit, charge, or debit card, ACH or other electronic transfer or any other form of monetary payment and/or pecuniary benefit received by Seller.

d. "Daily Receipts" shall mean the amount of Future Receipts received by Seller on a daily basis.

e. "Purchased Amount" shall mean the total amount of the Specified Percentage of the Future Receipts that Seller shall be under obligation to deliver and pay over to FKL pursuant to this Agreement. The parties agree that the Purchased Amount shall be $12,665.00.

Page 1 of 19

Scanned with CamScanner