## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LQD BUSINESS FINANCE, LLC,<br>Plaintiff,<br><br>v.<br><br>AZIZUDDIN ROSE,<br>Defendant,<br><br> and<br><br>FUNDKITE LLC, AKF, INC., d/b/a FUNDKITE,<br>World Global Capital, LLC, and Yellowstone<br>Capital, LLC<br>      Defendants. | Case No. 19-cv-04416<br><br>Hon. Matthew F. Kennelly<br><br>**PRE-TRIAL ORDER** |
| AZIZUDDIN ROSE,<br>     Counter-Plaintiff,<br>v.<br>LQD BUSNESS FINANCE, LLC, LQD<br>FINANCIAL CORP. and<br>GEORGE SOURI<br><br>     Counter-Defendants. | |

## FINAL PRETRIAL ORDER

Pursuant to this Court's Final Pretrial Order requirements, each of the following categories of materials is included:

1. Jurisdiction

2. Claims

3. Relief sought

4. Witnesses

5. Exhibits

6. Type and length of trial

7. Proposed voir dire questions

8. Proposed jury instructions

This Order will control the course of the trial and may not be amended except by consent of the parties, or by order of the Court to prevent manifest injustice.

## 1. **JURISDICTION**

This Court has jurisdiction over Plaintiff's Defense of Trade Secrets Act, and Plaintiff's claims under the Computer Fraud and Abuse Act (the "Federal Question Claims") pursuant to 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the remainder of Plaintiff's claims because these claims closely relate to the Federal Question Claims. Plaintiff's claims arise from a common nucleus of operative facts as the Federal Question Claims, such that all claims form part of the same case or controversy.

The parties agree that venue is proper in this District pursuant to 28 U.S.C. § 1391(b). No defendant has objected to venue, and any such objection has been waived.

## 2. **CLAIMS**

**LQD's Proposed Statement**

Plaintiff LQD is a mezzanine term lender who principally offers non-amortizing loans, and provides alternative, non-bank financing solutions to middle market businesses through the United States. Whether funding the borrower, itself, or referring a prospective borrower to a third-party an receiving a commission, LQD's profits, exclusively, come from customer intelligence, such as the fact that customers are seeking its product at certain times (*i.e.*, alternative, non-bank financing), as well as such customers' needs and requirements (*i.e.*, financing needed, timeframe when financing needed, pricing, alternative offers in the marketplace, etc.).

LQD has collected such customer intelligence over a period of many years by, among other things, a direct marketing sales force, as well as, and particularly, development of relationships with channel partners (*i.e.*, individuals or entities working on behalf of LQD to collect customer intelligence). LQD's channels had been developed at great cost, and expense to LQD. At great effort, and expense, LQD, further, culled, and organized voluminous financial, tax, and operational data relative to its borrowers, and prospective borrowers.

LQD jealously guards its customer intelligence (including, but not limited to, names, contact information, current financing needs, financing histories, as well as compilations of financial and operational data) within its proprietary FINRA compliant central data repository, and efficiency management and business intelligence systems. LQD customer databases, and repositories, are organized and searchable by, among other things, customer name, and potential customer name, contact information, as well as certain needs, and requirements. Such customer needs, and requirements, include, but are not limited to, amounts sought, terms sought, other financiers with which the borrower had a relationship, timing when financing is needed, time of year that financing for seasonal businesses are needed, industry, geographic footprint, as well as other salient considerations logged on a borrower-by-borrower basis. Accordingly, LQD's customer database, and repositories, do not just constitute a list of customers (albeit it is a grouping of customers and potential customers for non-bank financing), but a roadmap to LQD customer, and potential customer intelligence.

Rose characterizes himself as a nonexempt commission-eligible employee of LQD since 2015 through June 19, 2019, with an average work week more than 40 hours. Therefore, Rose owed fiduciary obligations that, at a minimum, precluded him from using LQD's most valuable, confidential information for his own exclusive benefit to the detriment of LQD. Rose executed,

and/or had been presented with contracts and employee handbooks that bound him to, among other things, not use LQD potential customers, customers, and customer intelligence, for the benefit of other financiers, and/or himself, to the exclusion of LQD.

Rose concedes the only files he had were sourced from LQD, including LQD's internal customer databases, repositories, and channel partners. On or about the fourth fiscal quarter of 2017, LQD elevated Rose to manage its channel partners and provided him indiscriminate access to all its customer databases and repositories. Immediately, Rose abused that access, seeking a third-party funder that would contract with him personally, and pay him more than LQD did. Similarly, Rose continues to abuse that access by possessing and weaponizing over 200,000 pages of LQD confidential information years after leaving LQD in violation of his contractual obligation to return all LQD property After a short search, Rose found a partner willing to weaponize LQD's confidential customer intelligence – AKF.[1]

AKF, a merchant cash advance company, offers expensive financing to small businesses, by purchasing a large amount of the small business' future receivables in exchange for an immediately paid, but far smaller cash advance. The purchased future receivables of the small business are not due immediately. Rather, AKF, immediately, starts directly debiting the small businesses bank account for a certain amount each business day until the merchant has paid the total purchased receivable amount. These transactions are not considered loans, but purchases of receivables; nonetheless, if viewed as a loan, such financial products constitute criminally usurious interest rates. Sixty-three distinct merchant cash advance transactions (which, Rose, using LQD customer intelligence, referred to AKF, without permission).

---

[1] Broadly, LQD and AKF offer non-bank financial services and products to commercial businesses seeking financing.

AKF, and Rose, joined together to monetize LQD customer intelligence within that merchant cash advance marketplace. AKF offered commissions of 8% - 11% to Rose (which far exceeded the commissions received from LQD) in exchange for Rose providing it access to LQD customer intelligence from LQD channel partners and databases. Over the course of more than two-years (from 2017 through 2019), Rose obtained customer intelligence from LQD channel partners and customer databases and shared details with AKF regarding at least 63 LQD prospective borrowers with AKF, including potential customer names, contact information, immediate needs and requirements, prior financing histories, compilations of financial and tax data, operational details, and plans, as well as, in certain instances, existing current offers from other Funders. Rose submitted such information for his own benefit, to claim the commission for himself not LQD.  Rose, in most instances, failed to share the potential customer, or their needs and requirements, with LQD prior to bringing it to AKF. Defendants valued that information, issuing, at a minimum, making 15 different offers to prospective merchants for millions of dollars in financing, predicated exclusively on customer intelligence converted from LQD's customer databases.

AKF had actual knowledge that source of Rose's 'referrals' had been LQD's customer intelligence, and that LQD, not Rose, should have been entitled to the commission. Remarkably, in their internal Customer Relationship Management ("CRM") system, AKF logged all 63 deals received from Rose as "Assigned to LQD…" which AKF conceded meant the submission had come from LQD, and LQD had been entitled to the commission resulting from that information. Nonetheless, AKF contracted with Rose, whom they knew as an LQD employee, for information it knew to be sourced from LQD, to profit AKF, and Rose; and paid Rose, to the exclusion of LQD. Further, AKF's software identified "LQD Business Finance" as the account specialist on

funding pre-approval letters sent to potential customers, with a pre-existing relationship to LQD, albeit listed Rose's personal cellular phone number and personal Gmail email address. The intent had been to confuse customers into believing that LQD had been part of transactions that had been procured by AKF and Rose by using LQD customer intelligence without LQD's consent.

Defendants contend such behavior is standard practice in the alternative finance industry – *i.e.,* an industry AKF characterizes as a "cowboy industry" – and should be permissible. Defendant Rose, for his part, goes so far as to bring a counterclaim that he is entitled to compensation for his unauthorized marketing, and sale, of LQD's customer intelligence for an existing client of LQD in a million dollar plus financing transaction.

AKF monetized LQD's customer intelligence, in certain instances, by funding merchants, and in other instances, acting as an Independent Sales Organization ("ISO") that referred potential merchants to other merchant cash advance companies, particularly, but not limited to, a company called Yellowstone Capital, LLC ("Yellowstone"), with whom it had an exclusive referral relationship. Said another way, AKF referred <u>all</u> transactions (particularly, those transactions referred to AKF, first, by Rose) that it could not fund itself to Yellowstone for a commission.

Sixty-three (63) merchant cash advance transactions are at issue in this case, including, *at least*, fifteen (15) for which AKF actively offered funding. Fifteen (15) offers had been produced in discovery exchanged in this matter, yet most such offers had been produced by Rose from his personnel Gmail account, not AKF, and therefore, the extent of the offers, and results thereof are far from certain and will be explored, in detail, during the trial. LQD seeks disgorgement of those monies received by AKF because AKF stole LQD customer intelligence; LQD seeks disgorgement of those monies received by Rose in commissions because Rose stole LQD customer intelligence; LQD seeks punitive damages against all parties in an amount sufficient to deter the abhorrent

misdeeds by Defendants; and LQD seeks an award of counsel fees, pre-judgement interest, and post-judgment interest to the extent permitted by law.

**<u>Defendants' Objection to LQD's Proposed Statement & Its Proposed Statement</u>**

<u>Objection</u>:  Defendants object to LQD's proposed statement.  It does not remotely comply with this Court's instructions in its standing order on pre-trial orders.  This 11-paragraph, almost five page, biased statement is not "[a] concise statement (1 or 2 short paragraphs) of the claim(s) of the plaintiff(s), defense(s) of defendant(s), and all counterclaims and cross claims. In a jury trial, this statement will be read to the jury during voir dire."  (Court standing order on Preparation of Final Pretrial Order § 2.)   Reading this non-neutral statement to the jury would be highly prejudicial to Defendants.

**<u>LQD Response</u>: LQD, in good faith, has prepared the pre-trial order, and all attendant papers, related to this matter. LQD, in so doing, has acted in accordance, as best it can, with the Court's standing order. Nonetheless, LQD believes, reasonably, that its statement, as prepared, will be useful to the jury, and the court, in framing and understanding the issues, in a complex case such as this one, and will streamline the process for the court, and the jury. In the event Defendants wish to expand upon their statement, or can identify, with some degree of specificity, prejudice to them, or disturbance to the court or jury, LQD can consider that. Of course, should the Court agree that its statement of the case should be truncated, LQD will do so immediately.**

<u>Defendants' Proposed Statement</u>:  LQD, a lender, has brought claims against its former employee Azizzudin Rose (Dean Rose) and a third-party, AKF, relating to LQD's claims that Mr. Rose wrongfully took or used certain information.  With respect to Mr. Rose, LQD has asserted claims for (1) misappropriation of trade secrets; (2) a breach of fiduciary duty; and (3) a violation

of the Computer Fraud and Abuse Act; and (4) breach of contract. With respect to AKF, LQD has a claim that AKF wrongfully induced Mr. Rose to submit certain applications for funding to AKF. LQD seeks disgorgement of any amounts that Mr. Rose and AKF made off of two deals that AKF funded. LQD also seeks punitive damages.

Mr. Rose has asserted a counterclaim against LQD, claiming that LQD wrongfully interfered in his receipt of a commission from AKF. Mr. Rose seeks to have LQD be required to pay him those amounts.

3. **RELIEF SOUGHT**

LQD's Request: Disgorgement of **all** revenues made by AKF and Rose, as well as **punitive damages**, pre-judgement interest at the statutory rate, and post-judgment interest at the statutory rate. LQD further seeks damages against Rose available under the Defense of Trade Secrets Act and Illinois Trade Secrets Act, as well as the Federal Computer Fraud and Abuse Act.

AKF's Request: AKF intends to seek its attorneys' fees via post-trial motion pursuant to the fee-shifting provisions of the federal Defense of Trade Secrets Act and the Illinois Trade Secrets Act and any other appropriate fee-shifting laws, such as 28 U.S.C. § 1927.

Rose's Request: Mr. Rose requests that he be awarded the amounts of the commissions with which LQD interfered and for which he has not been paid and for punitive damages.

4. **WITNESSES**

a. **LQD'S Witnesses Who Will Be Called**

i. Anna Andreyeva (c/o Quinn Emanuel 191 N. Wacker Drive, Suite 2700, Chicago, Illinois 60606 Attn: Bevin Brennan)

Objection: Ms. Andreyeva is not subject to a trial subpoena in this District. AKF will not produce her at trial.

ii. Egor Gagarin (c/o Quinn Emanuel 191 N. Wacker Drive, Suite 2700, Chicago, Illinois 60606 Attn: Bevin Brennan)

Objection: Mr. Gagarin is not subject to a trial subpoena in this District. AKF will not produce him at trial.

iii. Steven Kahmi (c/o Quinn Emanuel 191 N. Wacker Drive, Suite 2700, Chicago, Illinois 60606 Attn: Bevin Brennan)

Objection: Mr. Kahmi is not subject to a trial subpoena in this District. AKF will not produce him at trial.

iv. George Souri (c/o Graff Silverstein, LLP, 3 Middle Patent Road, Armonk, New York 10504).

v. Alex Shvarts (c/o Quinn Emanuel 191 N. Wacker Drive, Suite 2700, Chicago, Illinois 60606 Attn: Bevin Brennan)

vi. Azizzudin Rose (2005 South Allport, Unit 1F, Chicago, Illinois 60608)

vii. Michael Jesse Carlson (c/o Graff Silverstein, LLP, 3 Middle Patent Road, Armonk, New York 10504).

Objection: AKF will renew its objections in a motion *in limine* to Mr. Carlson's testimony as included in its prior *Daubert* motion.

viii. AKF's Expert Rebuttal Witness, Steven Sheinbaum (c/o Quinn Emanuel 191 N. Wacker Drive, Suite 2700, Chicago, Illinois 60606 Attn: Bevin Brennan)

Objection: Mr. Sheinbaum is not subject to a trial subpoena in this District. AKF has not determined whether Mr. Sheinbaum will appear

at trial, as this is dependent on AKF's motion *in limine* regarding Mr. Carlson as well as the presentation of LQD's case-in-chief.

    ix. John Bouskila (c/o Quinn Emanuel 191 N. Wacker Drive, Suite 2700, Chicago, Illinois 60606 Attn: Bevin Brennan)

        <u>Objection:</u>    Mr. Bouskila, who works at Yellowstone, has no relevance to this case. AKF objects to any testimony from him in its entirety. In addition, Mr. Bouskila is not subject to a trial subpoena in this District.

    x. Leah Zelazny, the Corporate Designee presented by Yellowstone.

        <u>Objection:</u>    Mr. Zelazny, who worked at Yellowstone, has no relevance to this case. AKF objects to any testimony from her in its entirety. In addition, Ms. Zelazny is not subject to a trial subpoena in this District.

**b.  <u>LQD'S WITNESSES WHO MAY BE CALLED</u>**

    i. Vadim Serebro (c/o Quinn Emanuel 191 N. Wacker Drive, Suite 2700, Chicago, Illinois 60606 Attn: Bevin Brennan).

        <u>Objection:</u>    Mr. Serebro, who works at Yellowstone, has no relevance to this case. AKF objects to any testimony from him in its entirety. In addition, Mr. Serebro is not subject to a trial subpoena in this District.

    ii. Any party who appears on the will-call or may-call list for another party.

**c.  <u>Depositions LQD May Use</u>**

    i. John Bouskila

Objection: Mr. Bouskila, who works at Yellowstone, has no relevance to this case. AKF objects to any testimony from him in its entirety and will file a motion *in limine* on this issue.

LQD Response: Please see Deposition Designations, Statement of Admissibility.

ii. Leah Zelazny, the Corporate Designee presented by Yellowstone.

Objection: Ms. Zelazny, who worked at Yellowstone, has no relevance to this case. AKF objects to any testimony from her in its entirety, and will file a motion *in limine* on this issue.

LQD Response: Please see Deposition Designations, Statement of Admissibility.

iii. Orasio Becerra (c/o Graff Silverstein, LLP, 3 Middle Patent Road, Armonk, New York 10504).

Objection: Mr. Becerra is the Chief Information Officer of LQD and was at the time of his deposition. He is also located in Chicago. LQD has no basis to use the deposition of its own officer.

iv. All witnesses on the "will call" list that are not produced at trial.[2]

LQD's listing of the deposition testimony that it seeks to present is attached as **Exhibit A** to this Order. LQD reserves the right to call any of the will-call or may-call witnesses by deposition should any of those witnesses unexpectedly become unavailable for trial. In addition, LQD reserves the right to call such rebuttal witnesses (who are not presently identifiable) as may be necessary, and use any evidence, whether documentary, or deposition, for impeachment purposes.

---

[2] Nothing herein should be construed as a waiver of LQD rights to compel the attendance of any witness at trial, including Defendants' Expert.

d. **Defendants' Witnesses Who Will Be Called**

   i. George Souri (c/o Graff Silverstein, LLP, 3 Middle Patent Road, Armonk, New York 10504).

   ii. Alex Shvarts (c/o Quinn Emanuel 191 N. Wacker Drive, Suite 2700, Chicago, Illinois 60606 Attn: Bevin Brennan)

   iii. Azizzudin Rose (2005 South Allport, Unit 1F, Chicago, Illinois 60608)

**Defendants' Witnesses Who May Be Called**

   i. Michael Jesse Carlson (c/o Graff Silverstein, LLP, 3 Middle Patent Road, Armonk, New York 10504). (Depending upon forthcoming motion *in limine*.)

   ii. Steven Sheinbaum (c/o Quinn Emanuel 191 N. Wacker Drive, Suite 2700, Chicago, Illinois 60606 Attn: Bevin Brennan). (Depending upon forthcoming motion *in limine*.)

   iii. Orasio Becerra (address TBD).

      <u>LQD's Objection:</u> LQD does not maintain custody, or control, over Robert Pellegrini.

   iv. Robert Pellegrini (address TBD).

      <u>LQD's Objection:</u> LQD does not maintain custody, or control, over Robert Pellegrini.

   iv. Any party who appears on the will-call or may-call list for another party.

   v. Defendants have a pending motion to add three additional witnesses, Ashley James, Shillona Avery and Ryan Heckman. Should the Court grant that motion, Defendants will supplement this list accordingly.

e. **Depositions Defendants Will Use**

    i. Orasio Becerra

    ii. George Souri

    iii. Anna Andreyeva

    iv. Steve Kamhi

    v. Egor Gagarin

    vi. All witnesses on the "will call" or "may call" list that are not produced at trial.

f. **Depositions Defendants May Use**

    i. Michael Jesse Carlson (subject to forthcoming motion *in limine*)

    ii. Stephen Sheinbaum (depending on forthcoming motion *in limine*)

Defendants' listing of the deposition testimony that it seeks to present is attached as **Exhibit B** to this Order. Defendants reserve the right to call any of the will-call or may-call witnesses by deposition should any of those witnesses unexpectedly become unavailable for trial, at which time Defendants will supplement these designations. In addition, Defendants reserve the right to call such rebuttal witnesses (who are not presently identifiable) as may be necessary, and use any evidence, whether documentary or by deposition, for impeachment or any other appropriate purposes.

5. **EXHIBITS**

LQD's proposed exhibits are attached as **Exhibit C**, with Defendants' objections. Defendants' proposed additional exhibits are attached as **Exhibit D** with LQD's objections.

The parties are submitted electronic copies of exhibits to the Court on the same date as the filing of this Pre-Trial Order.

6. **TYPE AND LENGTH OF TRIAL**

The trial will be a jury trial. The parties expect the trial to last five to seven days.

7. **PROPOSED VOIR DIRE QUESTIONS**

In addition to the Court's standard voir dire questions as published online, LQD submits the following questions specific to the case:

a.   Do you, or have you ever worked, in the financial services industry?

b.   Have you ever been sent a notice of default, or sued, by a financial services institution?

Defendants' Objection to Proposed Question (b):  This question is unlikely to garner any meaningful information.

c.   Do you own your business?

d.   If so, does your business maintain any debt?

e.   If so, what is the type of debt that your business maintains?

f.   Do you, or have you ever, had personal debt?

Defendants' Objection to Proposed Question (f):  This question is unlikely to garner any meaningful information.

LQD Response: An experience with a lender, good or bad, is salient to this case, as the case is about lending, and the debts involved in this case are personally guaranteed by small business owners.

g.   If so, what is the type of personal debt that you have had, or have?

Defendants' Objection to Proposed Question (g):  This question is unlikely to garner any meaningful information.

LQD Response: An experience with a lender, good or bad, is salient to this case, as the case is about lending, and the debts involved in this case are personally guaranteed by small business owners.

h.   Have you ever personally guaranteed a corporate debt?

Defendants' Objection to Proposed Question (h):  This question is unlikely to garner any meaningful information.

LQD Response: An experience with a lender, good or bad, is salient to this case, as the case is about lending, and the debts involved in this case are personally guaranteed by small business owners.

i.   Have you ever purchased any product from a merchant cash advance company? If so, please explain your experience.

j.   Have you ever purchased a payday loan? If so, please explain your experience.

k.   Have you ever worked as a broker, or sales agent, in any field? If so, please describe that position.

l.   Have you ever been sued?

m.  Have you ever had someone sign, or signed, yourself, a confession of judgment? If so, was that confession of judgment ever used.

Defendants' Objection to Proposed Question (m):  Confessions of judgment have no relevance this to this case.

LQD Response: This will be addressed within motion in limine by AKF, forthcoming and LQD response. Confessions of Judgment are part of the salient contracts which will be introduced into evidence between the merchants and the

Funders in this case. To deprive the jury of an understanding of that, would be to deprive them of a complete understanding of the evidence. Because confessions of judgment will be evidence in the case, prior experiences with it are salient to jury selection.

n.   Are you concerned by the current mortgage rates in the United States? If so, please describe the reasons.

Defendants' Objection to Proposed Question (n):  Current mortgage rates have no relevance this to this case, and this question is unlikely to garner any meaningful information.

LQD Response: LQD, and particularly, AKF, are in the alternative finance industry, and sell certain financial products with certain terms that provide higher rates than certain jurors might be comfortable with. That might prejudice the jury against LQD, and/or AKF, and therefore, a particular concern about interest rates is salient.

o.   Have you ever worked in marketing? If so, please explain your position.

Defendants' Objection to Proposed Question (o):  There is no relevance to this question

LQD Response: LQD is confounded by this objection. ISOs are, in essence, marketing institutions and therefore, experience in marketing and understanding about the way marketing works, commissions received from marketing, and the way marketing and commissions received therefrom should (and should not be done) is important to jury selection.

p.   Do you have a present understanding of the term trade secret? If so, what is that understanding?

q.   Do you have a present understanding of the term proprietary business information? If so, what is that understanding?

r.   Do you have a present understanding of the term confidential business information? If so, what is that understanding?

s.   Do you have a present understanding of customer relationship management software? If so, what is that understanding?

Defendants' Objection to Proposed Question (s):  This question is unlikely to garner any meaningful information.

LQD Response:  CRM systems are at issue in the case. AKF lists LQD as the "account specialist" in its CRM system. AKF and Rose converted information from LQD's confidential CRM systems. Therefore, it is salient to jury selection.

t.   Do you have a present understanding of the term Independent Sales Organization, or ISO for short? If so, what is that understanding?

u.   Have you ever had the authority in relation to any job to hire, fire, demote, or promote someone else? If so, please explain that position and the scope of authority.

v.   Have you ever been terminated or demoted? If so, please describe the reasons provided, if any, for your termination or demotion.

w.   Have you ever been denied compensation by an employer or person that contracted with you for any reason, or no reason?

x.   Have you, or a business you owned, ever been party to a contract that has been breached by the other party to that contract? If so, can you explain the contract and the circumstances of the breach?

Defendants' Objection to Proposed Question (x):  This question is unlikely to garner any meaningful information.

LQD Response: Rose is accused of breaching a contract in this case, and AKF, by extension, is accused of inducing him to do so. Whether a juror has experienced a similar situation is salient and relevant to jury selection.

y.   Has any person or entity ***not*** party to a professional, or personal, contract to which you had been a party ever interfered with a professional, or personal, contract that you had with any person, or entity, such that you believe you did not receive the benefits of that contract? If so, can you explain the contract and the circumstances of the interference?

Defendants' Objection to Proposed Question (y):  This question is too confusing to garner any meaningful response.

LQD Response: Disagree. The question is clear, and for the reasons stated in response to objections to x, salient to jury selection.

z.   Have you ever been an independent contractor?

Defendants' Objection to Proposed Question (z):  This question is unlikely to garner any meaningful information.

aa. Have you ever had an employment position where you were paid only in commission?

bb. Have you ever worked at a company where an employee, agent or independent contractor used the company's property or information on behalf of a competitor?

Defendants' Objection to Proposed Question (bb): This question is not neutral and prejudicial to defendants.

LQD Response: This objection is inappropriate. The question is intended to elicit information about whether a potential juror on this case experienced, directly, or indirectly, that which LQD alleges is at issue in this case. If the question is asked and AKF/Rose does not "like" the response, it can strike the juror.

cc. Have you ever worked at a company where an employee, agent or independent contractor used the company information or property for his/her own financial gain to the detriment of the company

Defendants' Objection to Proposed Question (cc): This question is not neutral and prejudicial to defendants.

LQD Response: This objection is inappropriate. The question is intended to elicit information about whether a potential juror on this case experienced, directly, or indirectly, that which LQD alleges is at issue in this case. If the question is asked and AKF/Rose does not "like" the response, it can strike the juror.

dd. Have you ever used a customer relationship management software or other database that stored customer, client, or prospective client information for a company.

<u>Defendants' Objection to Proposed Question (dd)</u>:  This question is too vague to garner any meaningful information.

<u>LQD Response:</u> CRM systems are at issue in the case. AKF lists LQD as the "account specialist" in its CRM system. AKF and Rose converted information from LQD's confidential CRM systems. Therefore, it is salient to jury selection.

ee. Have you ever held a management or director position for a company.

<u>Defendants' Objection to Proposed Question (ee)</u>:  This question is unlikely to garner any meaningful information.

<u>LQD Response:</u> Rose contends certain actions by management provided him authority to use corporate information for his own benefit to the exclusion of the corporation. Accordingly, whether a juror had been involved in management is salient to jury selection because it will inform whether a person is educated in the manner in which management ordinarily operates in relation to profits derived from corporate property.

ff.  Have you ever maintained company property or information after you were terminated or resigned.

<u>Defendants' Objection to Proposed Question (ff)</u>:  This question is unlikely to garner any meaningful information.

<u>LQD Response</u>: Rose maintained corporate property after he had been terminated in violation of various contracts, and handbooks. Accordingly, whether a juror believes maintaining such property post-employment is salient to jury selection.

gg. Have you ever worked for a company that issued an employee handbook.

Defendants' Objection to Proposed Question (gg): This question is unlikely to garner any meaningful information.

LQD Response: Rose maintained corporate property after he had been terminated in violation of various contracts, and handbooks. Rose, similarly, violated myriad components of a handbook, and claims, incredibly, that he received it, but did not read it. Accordingly, whether a juror has experience with handbooks are relevant.

hh. Have you ever worked for multiple companies at the same time in any capacity?

Defendants' Objection to Proposed Question (hh): This question is unlikely to garner any meaningful information.

LQD Response: Rose maintains he had the right to contract with AKF at the same time he had purportedly been an employee of LQD, in violation of various contracts, fiduciary obligations, and handbooks. Accordingly, whether a juror has worked with multiple companies at the same time, and the circumstances under which that occurred, is salient to jury selection.

ii.  Have you ever been in a dispute with a company or person that you worked with over a commission?

jj.  Have you ever been in a dispute with an employer or person over any form of compensation?

kk. Do you have an opinion on the current war regarding Ukraine and Russia? If so, what is that opinion.

Defendants' Modification: This question may disconcert jurors, when asked to weigh in on political view. If necessary, any bias for or against Ukrainians?

LQD Position: LQD does not object to this modification.

ll.  Do you have a degree in finance, accounting, or other advanced degrees? If so, please explain.

Defendants' Objection to Proposed Question (gg): This question is unlikely to garner any meaningful information.

LQD Position: An understanding, and experience with finance, has obvious salience as this is a sophisticated case about marketing, and sales, of financial products, and incentives for doing so.

mm.    Have you ever worked in underwriting, accounting, bookkeeping, or broker for any transaction, whether it be real estate, financial transactions, or other things? If so, please explain.

Defendants' Objection to Proposed Question (mm): This question is overly broad and unlikely to garner any meaningful information. For instance, real estate has no relevance to this case.

LQD Position: An understanding, and experience with finance, has obvious salience as this is a sophisticated case about marketing, and sales, of financial products, and incentives for doing so.

nn. Have you participated in a protest of any kind in the last five years? If so, explain.

Defendants' Objection to Proposed Question (gg): This question is unlikely to garner any meaningful information and may disconcert jurors.

<u>LQD Position:</u> LQD maintains that this question is salient to understand jurors positions in relation to managerial authority, as well as attitudes towards rules, regulations, contracts, and constraints.

8. **PROPOSED JURY INSTRUCTIONS**

The parties' agreed and disputed proposed jury instructions, including objections, are attached as **Exhibits E and F** to this Order, respectively. Pursuant to the Court's Final Pretrial Order requirements, the parties will deliver to the Court a flash drive with a copy of the proposed jury instructions in Microsoft Word format.

Dated: February 6, 2022                          Respectfully submitted,

                                                 LQD BUSINESS FINANCE, LLC
                                                 and GEORGE SOURI

                                                 By:    */s/ Zane D. Smith*

                                                        Zane D. Smith
                                                        ZANE D. SMITH & ASSOCIATES, LTD.
                                                        221 North LaSalle Street – Suite 1320
                                                        Chicago, Illinois 60601
                                                        Tel.:   (312) 245-0031
                                                        zane@zanesmith.com

                                                        David Graff, Esq.-Admitted *Pro Hac Vice*
                                                        GRAFF SILVERSTEIN LLP
                                                        60 Hawthorne Way
                                                        Hartsdale, New York 10530
                                                        Tel.:   (212) 381-6055
                                                        dgraff@graffsilversteinllp.com

                                                        *Attorneys for Plaintiff/Counter-Defendant LQD*
                                                        *Business Finance, LLC and Counter-Defendant*
                                                        *George Souri*

AKF, Inc.

By:     */s/ Bevin Brennan*

Bevin Brennan
QUINN EMANUEL URQUHART &
SULLIVAN,  LLP
191 N. Wacker Dr., Suite 2700
Chicago, Illinois 60606
Tel.:  (312) 705-7459
bevinbrennan@quinnemanuel.com

*Attorneys for Defendant AKF, Inc.*

AZIZUDDIN ROSE

By:     */s/ Azizuddin Rose*

2005 S. Allport, 1F
Chicago, Illinois, 60608
Tel.: (773) 971-6425
dean.rose@pm.me

*Pro Se Defendant and Counter-Plaintiff*