IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LQD BUSINESS FINANCE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 19 C 4416 |
| ) | |
| AZIZUDDIN ROSE and AKF, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Each party has moved to exclude parts of the opposing party's expert's testimony on various grounds. And at the final pretrial conference, the Court questioned the relevance and admissibility of the anticipated expert testimony generally and ordered further briefing on that point. The Court addresses these matters in the present order.

The remaining claims in this case are claims involving breach of fiduciary duty and inducement of/participation in breach of fiduciary duty against defendants Rose and AKF, respectively, and claims involving misappropriation of trade secrets against Rose only. As described in plaintiff's post-hearing submission (dkt. no. 431), LQD's expert Michael Jesse Carlson is offered to testify about certain alleged common or standard industry practices for funders that rely on independent sales organizations (ISOs) to refer customers, regarding verification of the ISO's affiliations, *see* dkt. no. 431 at 4, and about whether certain information alleged to have been provided by defendant Rose to others is considered by funders and ISOs as confidential and as having value, *see id.* at

7. In the course of its ruling on summary judgment, the Court overruled defendants' objections to Carlson in which they contended he is unqualified and that his opinions are unreliable due to the absence of a specific methodology. See dkt. no. 388 at 29-30.

The case involves claims of intentional or knowing conduct, and thus defendants' noncompliance with purported industry standards does not establish liability. But the Court is persuaded that, within appropriate limits, testimony about industry standards regarding relevant issues in the case is relevant and admissible. Though Carlson—and, for that matter, defendants' expert Stephen Sheinbaum—may not testify regarding the knowledge or intent of any party, the Court concludes that deviation from an industry standard is relevant evidence that a factfinder may consider in determining whether the party acted knowingly or intentionally. See, e.g., RWJ Mgmt. Co. v. BP Prods. N. Am., Inc., No. 09 C 6141, 2011 WL 87444, at *2 (N.D. Ill. Jan. 10, 2011); Needham v. Innerpac, Inc, No. 1:04CV393, 2006 WL 2710617, at *9 n.11 (N.D. Ind. Sept. 19, 2006). The cases relied upon by defendants, see dkt. no. 429 at 2-4, largely, if not entirely, concern the *sufficiency* of such testimony to establish liability, not its relevance or admissibility. The two are not the same.

The relatively modest probative value of this "custom and practice" testimony will, however, require its presentation at trial to be focused and narrow. In particular, the report prepared by Carlson strays significantly beyond what is appropriate under Rules 402, 403, and 702(a). First of all, Carlson's extremely detailed description of the nature and history of the industry (it's nearly nine pages in his report!) goes far beyond what is reasonably needed to lay the foundation for his opinions. To the extent LQD actually needs to have Carlson address these points, its counsel's questions and Carlson's

answers must be focused, non-repetitive, and descriptive rather than evaluative, and *far* more succinct than the discussion in his report.

Secondly, and consistent with a motion *in limine* filed by defendants, it is inappropriate for Carlson to attempt to sum up the evidence or resolve conflicting evidence. That strays beyond the appropriate role of an expert witness. *See, e.g., Fields v. City of Chicago*, No. 12 C 1306, 2018 WL 1652093, at *6 (N.D. Ill. Apr. 5, 2018); *Hostetler v. Johnson Controls, Inc.*, No. 3:15-cv-226, 2020 WL 4915668, at *5 (N.D. Ind. Aug. 21, 2020) ("An expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." (internal quotation marks and citation omitted)). Rather, to the extent LQD wishes to elicit from Carlson opinions regarding claimed deviations by the defendants from industry standards, LQD must do this by using hypotheticals in which counsel, not the witness, offers a summary of the factual basis counsel wishes to have Carlson use as a basis for his opinions. (The same is, of course, true for defendants' expert Sheinbaum.)

Third, neither Carlson nor defendants' expert Sheinbaum may render an opinion regarding any party's knowledge or intent. *See, e.g., Fisher v. Ethicon, Inc.*, No. 1:20-cv-1365, 2022 WL 4001009, at *4 (C.D. Ill. Aug. 31, 2022). This includes opinions that a party had to know, should have known, should have figured out, or was on notice of a particular point, as well as similar opinions. These are appropriately matters for argument, not expert witness testimony.

Finally with respect to Carlson, defendants also challenge a separate opinion LQD intends to present at trial, regarding whether (and why) certain types of information is considered in the industry to be confidential. The Court concludes this opinion is

3

relevant, in particular on the trade secret-related claims asserted by LQD. The probative value of what is *typically* regarded as confidential is, however, relatively modest, as trade secret status primarily involves the nature of the information itself and how the information's owner or holder treated it. Carlson may not testify whether the specific information at issue in this case is confidential or was treated as such—he's not a fact witness—but rather may testify on this point only with regard to information *of the type* at issue in this case. LQD must tailor its examination of Carlson accordingly.

On a related point, the Court has already ruled, in connection with summary judgment, that applications from prospective borrowers that LQD possessed do not constitute trade secrets. *See* dkt. no. 388 at 8. Thus Carlson may not offer any opinion to the contrary, as this topic is no longer the subject of appropriate dispute or testimony at trial given the Court's ruling. (The Court also notes that it has ruled that testimony and evidence about "confessions of judgment" is inadmissible, so Carlson may not testify on that topic either.)

The same restrictions and limitations that the Court has applied to Carlson also apply, of course, to defendants' expert Sheinbaum. Beyond that, LQD has moved to exclude or limit Sheinbaum's testimony on various grounds. The Court deals with each as follows.

First, as part of its summary judgment ruling, the Court ruled on various challenges by LQD to Sheinbaum's testimony and overruled all of them. Specifically, the Court overruled LQD's contentions that Sheinbaum lacked appropriate qualifications to render his opinions and that his opinions did not fit the evidence in the case. *See* dkt. no. 388 at 26-28. LQD has repeated and, to some extent, elaborated on those

contentions in its motions *in limine*. The points LQD has made may be addressed during cross examination, by presentation of contrary evidence, or in argument, but they are not a basis to exclude or limit Sheinbaum's testimony.

Second, Sheinbaum's opinions regarding the practices of ISOs in "onboarding," their practices in using multiple brands and e-mail addresses, and whether ISOs and funders regard certain information as confidential, are relevant for the same reasons as the Court has discussed regarding LQD expert Carlson's testimony. The proposition offered by LQD that Sheinbaum "abandoned" some or all of his opinions on these points during his deposition is a point for cross-examination, not a basis for exclusion. On the other hand, Sheinbaum's opinion on whether *merchants* (i.e. applicants) regard such information as confidential is not relevant and is therefore inadmissible. That's not an issue in this case; what's relevant here is how entities like LQD and (perhaps) AKF regard it as confidential.

Third, Sheinbaum may not testify in words or substance that Rose would not have used his LQD e-mail account if he were engaged in misappropriation or a breach of fiduciary duty. That is the same sort of testimony—a disguised opinion regarding intent, and/or an attempt to sum up and evaluate evidence—that the Court has excluded from LQD expert Carlson.

Fourth, the same is true of Sheinbaum's apparent opinion that the use of multiple e-mail addresses does not reflect an intent to deceive and/or "is not an indication of wrongdoing." What does or does not constitute "wrongdoing" is a matter for inference and argument, not expert witness testimony. This also applies, of course to Carlson's testimony. The closest the experts will be able to get to this is to render an opinion

(assuming they provide the necessary foundational support) that the use of multiple e-mail addresses—or, for that matter, other practices potentially at issue in the case—either does or does not raise a red flag, and why that is so.

## Conclusion

For these reasons, the Court declines to exclude the testimony of LQD expert Carlson and defendants' expert Sheinbaum in their entirety but has excluded certain opinions and topics as explained in the body of this opinion. Plaintiff's motions *in limine* 2, 3, and 4 and defendants' motion *in limine* 1 have now been ruled upon and are therefore terminated as pending motions.

Date: March 1, 2023

_____
MATTHEW F. KENNELLY
United States District Judge