**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LQD BUSINESS FINANCE, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19 C 4416** |
| | ) | |
| **AZIZUDDIN ROSE; FUNDKITE, LLC; AKF, INC.; WORLD GLOBAL CAPITAL, LLC; and YELLOWSTONE CAPITAL, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Following a combined jury/advisory jury/bench trial in this lawsuit by LQD Business Finance, LLC against Azizuddin (Dean) Rose and AKF, Inc., and previously against other entities related to AKF,[1] the Court issued findings of fact and conclusions of law on the claims tried via bench trial and directed the entry of judgment. *See LQD Bus. Fin., LLC v. Rose*, No. 19 C 4416, dkt. no. 444 (N.D. Ill. June 21, 2023) ("*Trial Decision*"). AKF has moved to alter the judgment in one respect; it has moved for an award of attorney's fees; and it has filed a bill of costs. The Court will review the background in summary fashion here. A more complete explanation is found in the

[1] The other entities are Fundkite, LLC, World Global Capital, LLC and Yellowstone Capital, LLC. The Court will refer to those defendants and AKF, Inc. collectively as "the corporate defendants" (which the Court acknowledges is a slight misnomer given that three of the four are limited liability companies). The claims against the defendants other than AKF were dismissed at the summary judgment stage.

Court's findings and conclusions.

LQD asserted claims against its former employee Rose and against AKF, which like LQD is in the business of providing alternative financing to commercial businesses, as follows. LQD asserted claims against Rose alone for breach of fiduciary duty, breach of contract, breach of good faith and fair dealing, and violation of the federal Computer Fraud and Abuse Act; against the corporate defendants for aiding and abetting Rose's fiduciary breach and for injunctive relief; and against both Rose and the corporate defendants for violation of federal and Illinois trade secrets statutes and for unjust enrichment. Rose asserted counterclaims against LQD and its principal, largely involving the claimed denial of appropriate compensation. Some of these claims were disposed of on summary judgment. Among other things, the Court granted summary judgment in favor of the corporate defendants other than AKF and granted summary judgment for LQD on all but one of Rose's counterclaims. *See LQD Bus. Fin., Inc. v. Rose*, No. 19 C 4416, 2022 WL 4109715 (N.D. Ill. Sept. 8, 2022) ("*Summary Judgment Decision"*).

Following the conclusion of the trial, the jury found in LQD's favor on Rose's remaining counterclaim, and it also answered three special interrogatories relating to that claim that overlapped with factual issues underlying some of LQD's claims against the defendant. The Court adopted and applied the jury's answers in deciding the remaining claims, on which the Court had previously ruled there was no right to a jury trial given the nature of the relief sought and available. The following is a summary of the Court's decision on the bench trial claims:

- In favor of LQD against Rose on the claim for breach of fiduciary duty (Count 5).

The Court found a breach arising from Rose's unilateral retention of commissions—on deals he shopped to the corporate defendants—that he should have disclosed to and shared with LQD.

- In favor of AKF against LQD on the claim for aiding and abetting Rose's breach of fiduciary duty (Count 9). The Court found that LQD had not established by a preponderance of the evidence that AKF knew Rose owed a duty to LQD not to keep for himself commissions on deals he referred to AKF.
- In favor of LQD against Rose on the claim for unjust enrichment (Count 3), regarding his retention of the same commissions. In favor of AKF against LQD on this claim, stating that AKF's liability was tied to its liability on other claims (on which the Court found it not liable).
- In favor of Rose against LQD on the claim for breach of contract (Count 7). The Court found that the LQD employee handbook did not create a binding contract.
- In favor of both defendants on LQD's statutory trade secrets claims (Counts 1 and 2). The Court found there were protectable trade secrets but found that LQD had not proven they were shared outside of LQD.
- In favor of Rose on LQD's Computer Fraud and Abuse Act claim (Count 6). The Court found LQD had failed to show Rose had exceeded his authorized access.

On the question of relief, the Court ordered disgorgement of Rose's LQD-paid compensation during the period of his fiduciary breach and forfeiture of certain commissions he retained. The Court also found that AKF had retained and held the $78,000 commission owed on a financing deal for a company called TGC that was the subject of Rose's fiduciary breach. The Court determined to impose a constructive trust

over this sum and directed AKF to pay it to LQD, the party rightfully entitled to the commission.

**1.      Motion to alter or amend judgment**

The Court addresses first AKF's motion to alter or amend the judgment. AKF argues that there was no appropriate basis for imposition of a constructive trust in LQD's favor over the $78,000. AKF argues:

- LQD did not plead or request imposition of a constructive trust. *See* AKF Opening Mem. at 6-7.
- Illinois law allows imposition of a constructive trust only where the party has engaged in wrongful or unconscionable conduct—which AKF says it did not—or where the funds were obtained from the plaintiff—which is not the case. *See id.* at 7-8.
- The Court found in AKF's favor on the unjust enrichment claim and all other claims LQD asserted against it, and thus there is no basis to order any relief against AKF at all. *See id.* at 8-9.
- There is no "identifiable fund" as required to impose a constructive trust. *See id.* at 9-10.

The Court will address each of these points, though not in the exact order AKF argues them.

First, there absolutely is an "identifiable fund" over which a constructive trust may be imposed. AKF's CEO Alex Shvarts admitted *exactly that* in his trial testimony. Specifically, he testified that "we decided to hold on to the commission until we knew who does this commission belong to. So we held the commission. *We still hold the*

*commission until somebody tells us whose money this really is.*" *See* Pl.'s Resp., Ex. F at 96-97 (rough trial transcript, Mar. 8, 2023) (emphasis added). In short, the contention by AKF's attorneys in their post-trial submission that there is no identifiable fund is directly contrary to their client's sworn testimony at trial. The Court found Shvarts's testimony credible in this regard. That testimony was sufficient to establish by a preponderance of the evidence the existence of an identifiable fund.

Second, under Illinois law imposition of a constructive trust does not invariably require wrongdoing on the part of the holder of the *res*. As the Illinois Supreme Court has stated, "[f]or example, a constructive trust may be imposed in the case of mistake, although no wrongdoing is involved." *Smithberg v. Ill. Mun. Retirement Fund*, 192 Ill. 2d 291, 299, 735 N.E.2d 560, 566 (2000). And indeed, "a constructive trust may be imposed even though the person wrongfully receiving the benefit is innocent of collusion." *Id.* at 300, 735 N.E.2d at 566. The general rule, also stated in *Smithberg*, is that a constructive trust "can be imposed to avoid unjust enrichment" in a situation where "a person has obtained money to which he is not entitled, under such circumstances that in equity and good conscience he ought not retain it . . . ." *Id.* at 299, 735 N.E.2d at 566. *See also, e.g., Frederickson v. Blumenthal*, 271 Ill. App. 3d 738, 648 N.E.2d 1060 (1995) (affirming imposition of a constructive trust over a bank account despite the absence of any wrongdoing by the defendant). That is exactly the case here.

The Court also disagrees with contention that the funds have to have been paid to the defendant *by the plaintiff* before a constructive trust may be imposed. That was not, for example, the case in *Smithfield*, in which the money over which a constructive

trust was imposed was an amount the defendant was prepared to pay out as a pension death benefit (there was a question of who the rightful recipient of the benefit was). The requirements for imposition of a constructive trust were established by *at least* a preponderance of the evidence. *See Trial Decision* at 35.

AKF's main contention, as the Court sees it at least, involves the two related propositions that: (1) having found in AKF's favor on the remaining claims against it, the Court should not have ordered relief that imposed an obligation on AKF, and (2) LQD did not plead or request imposition of a constructive trust.

The Court addresses the second of these points first. In federal court at least, a party does not have to specifically seek particular relief to be entitled to it. That is what the plain language of Rule 54(c) provides. Although a *default judgment* may not differ in kind from (or exceed in amount) what is sought in the pleadings, "[e]very other final judgment should grant the relief to which each party is entitled, *even if the party has not demanded that relief in its pleadings*." Fed. R. Civ. P. 54(c). That language is clear.

Perhaps AKF's argument is that LQD did not seek a constructive trust *on this basis*. That's a legitimate argument, and one that merges with the first point noted by the Court: AKF's contention that, having ruled in its favor on the remaining claims, the Court should not have ordered relief that imposed a constructive trust upon funds held by AKF.

As LQD points out in its response to AKF's motion, however, the pleadings may be amended even after trial to conform to the proof, at least when there's implied consent regarding the trial of an issue. The question of LQD's entitlement to retain the benefits of the TGC deal—including the commission it had agreed to pay out—was

unquestionably on the table in this case, well before and at trial. In the third amended complaint, LQD alleged that Rose converted corporate opportunities belonging to LQD and that he and AKF benefitted, *see* 3rd Am. Compl. ¶ 55; Rose misappropriated the TGC loan application in particular and diverted it to AKF, *see id.* ¶ 61; and AKF provided TGC with funding on which there was a $78,000 commission ostensibly "earned" by Rose, *see id.* ¶ 62. LQD's claims against AKF incorporated all of these factual allegations. Its unjust enrichment claim, for example, alleged that the defendants (including AKF) had received significant benefits at LQD's expense through the use of LQD's assets (which included the aforementioned opportunity), *see id.* ¶ 116; the defendants had not compensated LQD for this, *see id.* ¶ 117; and it would be unjust for the defendants—which included AKF, of course—to retain the benefit of LQD's opportunities without compensating LQD, *see id.* Furthermore, in the final pretrial order, LQD made it clear that it was seeking at trial the disgorgement of LQD's and Rose's revenues from the alleged misappropriation and fiduciary breach, a description unquestionably broad enough to include the commission on the TGC deal. *See* Final Pretrial Order at 8 (dkt. no. 511). Finally, at trial, LQD argued in its closing argument that it, and not Rose, was entitled to the commission on the TGC deal, stating, among other things, "[t]hat does not mean that AKF could pay Rose and contract with Rose to pay him when they had assigned the deals to LQD[,] which means LQD is entitled to commissions."[2]

[2] As of this writing, the final transcript has not been filed on the docket. The page references in the rough transcript, which the Court has used, will not correspond to those in the final transcript. The point quoted here was made during LQD's counsel's closing argument on March 10, 2023 at approximately 10:38 AM and appears on page 58 of the rough transcript for that day's morning session.

AKF did not object to any of this.  In particular, it did not object to the request made by LQD's counsel during closing argument.  The concepts of "constructive amendment" of the pleadings and trial of unpleaded issues by "implied consent" as contemplated under Federal Rule of Civil Procedure 15(b) are quite broad.  *See Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 877-79 (7th Cir. 2005); *Dominguez v. Hensley*, 545 F.3d 585, 590-91 (7th Cir. 2008).  Given the circumstances just recited, those concepts are certainly broad enough to include a claim for imposition of a constructive trust based on AKF's retention of the $78,000 commission on the TGC deal.  Allowing AKF to retain that money—which its own CEO *expressly testified the company was holding to pay to the rightful party*—would be the very definition of unjust enrichment as described by the Illinois courts in *Smithberg* and elsewhere.  And as the Court has discussed, there is no requirement of wrongdoing on AKF's part in order for a constructive trust to be imposed under Illinois law.

For these reasons, the Court denies AKF's motion to alter or amend the judgment.

**2.     AKF's bill of costs**

The Court entered an order partially reducing the corporate defendants' bill of costs, and it directed LQD to respond to the remainder.  Specifically, AKF and its affiliated entities sought recovery of $14,596.67.  The Court found certain of the claimed costs to be unrecoverable and reduced the amount claimed by $2,403.50.  The net amount now claimed is therefore $12,193.17.  In response, LQD makes two arguments: the defendants committed misconduct during the litigation of the case, which warrants disallowing their request for costs; and the corporate defendants did not fully prevail

given the Court's imposition of a constructive trust.

Starting with the first of these points, there is a presumption that a prevailing party is entitled to costs. *See, e.g., City of San Antonio v. Hotels.com, L.P.*, 593 U.S. 330, 336 (2021). But "misconduct by the prevailing party worthy of a penalty" may be a basis to deny costs. *Lange v. City of Oconto*, 28 F.4th 825, 845 (7th Cir. 2022). Examples of the sort of misconduct that may suffice include "calling unnecessary witnesses, raising unnecessary issues, or otherwise unnecessarily prolonging the proceedings." *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 845 F.2d 219, 222 (7th Cir. 1988).

The claimed misconduct that LQD cites does not fit this bill, nor is it sufficiently analogous to warrant denial of costs. LQD cites three points: the corporate defendants failed to retain certain relevant records; their CEO, Shvarts, gave evasive testimony during the trial; and AKF wrongfully contended in its post-trial motion that it did not receive or retain the funds constituting the commission on the TGC deal. On the first point, LQD does not support a contention that any non-retention of records on the corporate defendants' part was the result of a deliberate, knowing, or even reckless effort to hide information. Second, the Court dealt with Shvarts's evasive responses by sustaining appropriate objections and, at a particular point, admonishing Shvarts outside the jury's presence. What Shvarts did, though inappropriate, is a relatively common occurrence at trials; it's not a basis to deny costs. And finally, though AKF's post-trial argument on the particular point in question was demonstrably wrong, as the Court has pointed out, AKF's request to alter or amend the judgment was certainly colorable, and this argument was just one of several points that AKF it cited in support.

LQD cites no authority supporting the denial of costs for what is best characterized as overly zealous advocacy.

LQD's other point fares somewhat better. The corporate defendants did not *fully* prevail: the imposition of a constructive trust will require AKF to turn over $78,000 to LQD. As the defendants argue, a party is deemed to have prevailed within the meaning of Rule 54 "if it prevails as to a substantial part of the litigation." *Baker v. Lindgren*, 856 F.3d 498, 502 (7th Cir. 2017). But *Baker* also makes it clear that "[i]n a case with mixed results, the district court has the discretion to determine whether a party meets that standard." *Id.*; *see also Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1075 (7th Cir. 1999). Given the mixed result here, the Court exercises its discretion to reduce the corporate defendants' taxable costs by one third.

The Court taxes costs in favor of the corporate defendants and against LQD in the amount of $8,128.78.

**3. Attorney's fees**

The corporate defendants seek an award of their attorney's fees under the operative provisions of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(D), and the Illinois Trade Secrets Act, 765 ILCS 1065/5, both of which authorize an award of attorney's fees to a prevailing defendant if the claim of trade secret misappropriation was made "in bad faith." The defendants have failed to make a showing of bad faith.

The Court concluded, at the summary judgment stage, that LQD had offered evidence sufficient to permit a finding that its "client output files" qualified as trade secrets. *See Summary Judgment Decision*, 2022 WL 4109715, at *4. And LQD had a good faith basis, throughout the litigation, to believe that Rose had used these files in

offering to pursue, for AKF and the other corporate defendants, deals that had been solicited for LQD to fund. Among other things, there was evidence supporting the proposition that Rose offered to the corporate defendants over 60 deals that had come in to LQD. LQD also had information indicating that Rose had downloaded LQD's client output files to his laptop. It was no stretch for LQD to honestly and reasonably believe (whether that's viewed subjectively or objectively) that Rose had transmitted this information to the corporate defendants as part of his effort to get them to take on these same clients.

In addition, LQD pursued, in good faith, a theory that information regarding whether a potential customer was seeking alternative financing at a point in time amounted to a trade secret. This was supported by testimony from *both sides'* experts. Though the Court ruled against LQD on this theory of liability, lack of merit does not equate to bad faith. The Court finds based on the record that LQD in good faith believed—and from an objective standpoint was entitled to reasonably believe—that this sort of information amounted to a protectable trade secret. And there is no question at all that Rose provided this exact sort of information to the corporate defendants.

For these reasons, the Court concludes that the defendants have failed to show that LQD's allegations of trade secret misappropriation were made in bad faith.

**Conclusion**

For the reasons stated above, the Court denies defendant AKF, Inc.'s motion to amend or alter the judgment [455]; denies the defendants' motion for attorney's fees [500]; and taxes costs in favor of defendants AKF, Inc., Fundkite, LLC, World Global Capital, LLC, and Yellowstone Capital, LLC and against plaintiff LQD Business Finance,

Inc. in the amount of $8,128.78.

Date: December 31, 2023

MATTHEW F. KENNELLY
United States District Judge